IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

FILED
IN OPEN COURT

OCT 2 2 2019

CLERK, U.S.
ALEXA

UNITED STATES OF AMERICA

v.

Case No. 1:19CR309

SCOTT B. MACKENZIE,

Defendant.

## CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### GENERAL ALLEGATIONS

At all times material to this Information:

1.    The defendant, SCOTT B. MACKENZIE, was a resident of Arlington, Virginia.
MACKENZIE was the treasurer of multiple Political Action Committees (the "PACs"), including
Conservative StrikeForce, Conservative Majority Fund and Tea Party Majority Fund.  Documents
submitted to the Federal Election Commission ("FEC") identify MACKENZIE as the treasurer for
approximately fifty-two (52) separate PACs.

2.    A federal PAC refers to a political committee registered with and reporting to the
FEC.  Each PAC that seeks to influence a federal election is required to have a treasurer who is
required to file periodic reports with the FEC of contributions to and expenditures by the
committee, including the identity of all persons contributing over $200 in a calendar year.

3.    The FEC was an agency of the United States Government responsible for
regulating, among other things, political committees formed to support candidates for federal
elected office through contributions and expenditures.  The FEC maintains records related to

1

political committees and discloses campaign finance information to the public in order to fulfill its duty to accurately account financial transactions done for the purpose of influencing federal elections.

4.       Certain candidate committees, party committees and PACs are required by law to file periodic reports to the FEC disclosing the money they raise and spend. If an organization conducts both federal and nonfederal activity from one federal political committee account, contributions to the account must comply with federal limits and prohibitions, regardless of whether the funds are ultimately used for federal or nonfederal elections, and its receipts and disbursements, including those which pertain to nonfederal election activity, must be reported to the FEC.

5.       Federal campaign finance laws limit the size of contributions that "persons" (individuals, associations, and political committees) and "multi-candidate political committees" may contribute to federal candidates and political committees, prohibit contributions by corporations, unions and banks and impose strict disclosure requirements on those who participate in the federal campaign financing process. At all times relevant to the Information, the limits on contributions by "persons" to federal candidates was $2,500 in 2011-2012; $2,600 in 2013-2014; $2,700 for 2015-2016 and contributions from "multi-candidate political committees" could not exceed $5,000 in a calendar year to any other non-connected political committee.

6.       Federal campaign laws make it unlawful for any person to make a contribution in the name of another, or for any person to permit his or her name to be used to make such a contribution, i.e., to use a "conduit" to make illegal campaign contributions.

2

7.    In addition to managing the financial accounts of the various PACs, MACKENZIE was responsible for, among other things, familiarity with the FEC filing requirements and filing accurate FEC reports on behalf of the PACs that detailed their income and expenditures.

8.    New political committees, including new PACs, are required to file a Statement of Organization, also known as an "FEC Form 1," once they exceed certain applicable thresholds. MACKENZIE filed multiple FEC Form 1 documents with the FEC dating back to 2008.   In these Form 1 filings, MACKENZIE identified himself as the Treasurer and Custodian of Records for Conservative StrikeForce, Conservative Majority Fund and Tea Party Majority Fund.   The treasurer of the political committee is personally responsible for the timely and complete filing of the Statement and for the accuracy of any information contained in it.   After the initial FEC Form 1 was filed by mail, MACKENZIE signed and filed all subsequent FEC forms electronically. MACKENZIE represented on the FEC Form 1s that he filed on behalf of these PACS that the PACs were not connected or affiliated with one another or with any other PAC.

9.    MACKENZIE also owned and operated an entity called Mackenzie & Company, which was purportedly a political consulting company.

10.    During the period beginning in or about 2011 and continuing to the present, Mackenzie & Company received hundreds of thousands of dollars from Conservative StrikeForce, Conservative Majority Fund, Tea Party Majority Fund, other PACs and purported political consulting groups, such as Strategic Campaign Group.

11.    Conservative StrikeForce was a PAC that purported to "organize, motivate and mobilize the conservative voters of America to help elect and support candidates" who shared Conservative StrikeForce's values.   Conservative StrikeForce and Conservative Majority Fund

3

have solicited and received donations from individuals by e-mail, the U.S. mail, and telephone calls.

12.     Person A has a personal relationship with MACKENZIE, including having gone to high school with MACKENZIE. Person A is employed as a seamstress and umbrella retailer - and does not work in the business of political or other fundraising.

13.     "Caging" is a term in the fundraising industry for a practice that includes collecting, receiving, recording, and/or processing mail and donations from donors on behalf of the organization for which the donations were solicited.

14.     MACKENZIE listed Person A in FEC filings as a recipient of payments from Conservative StrikeForce and Conservative Majority Fund. In FEC filings submitted by MACKENZIE, MACKENZIE falsely represented that Person A engaged in caging and other administrative services for Conservative StrikeForce, Conservative Majority Fund, and other PACs.

15.     Between on or about October 1, 2011 through on or about June 30, 2014, MACKENZIE caused Conservative StrikeForce to make multiple payments to Person A from Conservative StrikeForce and Conservative Majority Fund by wire or check. Person A purportedly received these payments on behalf of Company A for caging and data entry services that Person A provided to Conservative StrikeForce and Conservative Majority Fund. Person A deposited these payments into bank accounts held jointly by MACKENZIE and Person A. In truth and in fact, Person A did not provide caging or data entry services to Conservative StrikeForce or Conservative Majority Fund.

4

16.    MACKENZIE filed numerous false reports with the FEC about these payments. These false reports were material to the FEC, meaning that they had the natural tendency to influence the FEC in the performance of its official duties.

## COUNT ONE
### False Statements
### (Violation of 18 U.S.C. § 1001)

17.    On or about February 13, 2016, in the Eastern District of Virginia and elsewhere, the defendant, SCOTT B. MACKENZIE, knowingly and willfully caused the submission of a material false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the government of the United States, to wit, that on FEC Schedule B (Form 3X) (Itemized Disbursements) MACKENZIE reported that on June 16, 2014, Conservative Majority Fund wired $650.00 to Person A for "caging and data entry" on June 15, 2014, when as MACKENZIE well knew, Person A did not provide "caging and data entry" services to Conservative Majority Fund on June 15, 2014.

(All in violation of 18 U.S.C. §§ 1001 and 2.)

5

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

Date: October 11, 2019          By: _Kimberly R. Pedersen_

Kimberly R. Pedersen
Assistant United States Attorney

Corey R. Amundson
Chief
Public Integrity Section

By: _____

William J. Gullotta
John P. Taddei
Trial Attorneys
Public Integrity Section