IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:19CR309 |
| SCOTT B. MACKENZIE, | |
| Defendant. | |

STATEMENT OF FACTS

The United States and the defendant, SCOTT B. MACKENZIE ("MACKENZIE"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. From at least in or about 2011 through at least in or about 2018, in the Eastern District of Virginia and elsewhere, MACKENZIE knowingly and willfully caused the submission of a number of materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the government of the United States, to wit, the filing of false reports with the Federal Election Commission ("FEC") on behalf of Political Action Committees ("PACs"), namely Conservative StrikeForce and Conservative Majority Fund. These false statements concerned matters within the jurisdiction of the FEC, that is, the false statements related to facts that the FEC required to be accurately reported and the false statements were material to the FEC, that is, they had the natural tendency to influence the FEC in the performance of its official duties. MACKENZIE intended to record these false statements and knew that making such false statements was unlawful, all in violation of 18 U.S.C. § 1001.

2. MACKENZIE was a resident of Arlington, Virginia and the treasurer of multiple PACs, including Conservative StrikeForce, Conservative Majority Fund and Tea Party Majority

Fund. Documents submitted to the FEC identify MACKENZIE as the treasurer for approximately fifty-two (52) separate PACs.

3. As the treasurer of many PACs over the years, MACKENZIE was familiar with and responsible for complying with FEC laws and regulations, including those that limit the amount of campaign contributions, prohibit contributions by corporations and report the raising and spending of campaign funds. MACKENZIE was responsible for, among other things, filing accurate disclosure reports with the FEC on behalf of these PACs that detailed the true income and expenditures of the PACs.

4. MACKENZIE opened the operational bank accounts for Conservative StrikeForce, Conservative Majority Fund and Tea Party Majority Fund and was the only authorized signer on the accounts. MACKENZIE received regular consulting payments from these PACs and others, and deposited funds into various personal accounts under his control.

5. New political committees, including new PACs, are required to file a Statement of Organization, also known as an "FEC Form 1," once they exceed certain applicable thresholds. MACKENZIE filed multiple FEC Form 1 documents with the FEC dating back to 2008. In these Form 1 filings, MACKENZIE identified himself as the Treasurer and Custodian of Records for Conservative StrikeForce, Conservative Majority Fund and Tea Party Majority Fund. After filing the initial FEC Form 1 by mail, MACKENZIE signed and filed all subsequent FEC forms electronically. MACKENZIE represented on the FEC Form 1s that he filed on behalf of these PACs that the PACs were not connected or affiliated with one another or with any other PAC.

6. Conservative StrikeForce, Conservative Majority Fund and Tea Party Majority Fund solicited and received monetary donations from individuals by email, U.S. mail and telephone calls in the form of cash, checks and credit card payments.

7. Strategic Campaign Group was a political consulting firm that managed and operated Conservative StrikeForce, Conservative Majority Fund, Tea Party Majority Fund and other PACS, including those purportedly formed to help candidates for federal public office raise funds.

8. MACKENZIE owned and operated an entity called Mackenzie & Company, which was purportedly a political consulting company.

9. As Treasurer, MACKENZIE communicated regularly with the President and Vice-President of Strategic Campaign Group about the PACs they controlled and kept them abreast of the financial status of the various PACs.

10. Person A was a resident of Winchester, Virginia, who had a personal relationship with MACKENZIE, including having gone to school with him. Person A is self-employed as a seamstress and umbrella retailer - and does not work in the business of political or other fundraising.

11. MACKENZIE and Person A had a joint bank account at Wells Fargo into which MACKENZIE directed payments from Conservative StrikeForce and Conservative Majority Fund. These payments were primarily made up of donations made to the PACs by individual, small donors.

12. During the period beginning in or about 2011 and continuing to the present, Mackenzie & Company received hundreds of thousands of dollars from Conservative StrikeForce, Conservative Majority Fund, Tea Party Majority Fund, other PACs and purported political consulting groups, such as Strategic Campaign Group.

13. Between on or about October 1, 2011 through on or about June 30, 2014, MACKENZIE caused multiple payments to Person A from bank accounts belonging to

Conservative StrikeForce, Conservative Majority Fund and Conservative Majority SuperFund by wire or check. According to false FEC reports MACKENZIE filed, Person A purportedly received these payments for "consulting-administration," "clerical services" and "caging and data entry & list maintenance" that Person A allegedly provided to Conservative StrikeForce and Conservative Majority Fund. Person A deposited these payments into bank accounts held jointly by MACKENZIE and Person A. In truth and in fact, as MACKENZIE well knew, Person A did not provide any such services to Conservative StrikeForce, Conservative Majority Fund or Consevative Majority SuperFund.

14. MACKENZIE listed Person A in FEC reports as the recipient of approximately $32,500 in payments from Conservative StrikeForce, Conservative Majority Fund and Conservative Majority SuperFund.

### FALSE FEC REPORTS TO CONCEAL "CONDUIT" CAMPAIGN CONTRIBUTIONS

15. On or about March 20, 2012, MACKENZIE wrote a check from his personal bank account for $2,500 to a candidate committee that purported to support a candidate for federal public office from Utah (UT-CC). This candidate committee (UT-CC) was a client of Strategic Campaign Group. Approximately six days later, MACKENZIE transferred $2,700 from the Conservative StrikeForce's operating account into his personal account and noted on the memo line: "Special Project."

16. On or about May 4, 2012, MACKENZIE wired $3,000 from a Conservative StrikeForce bank account to Person A and filed a false report with the FEC claiming that the payment was for "consulting-administration." MACKENZIE knew this report was false because Person A did not do any consulting work and he intended to re-imburse Person A for making a political contribution to the UT-CC as a conduit.

17. On or about May 5, 2012, MACKENZIE, caused a personal check in the amount of $2,500 to be written from Person A's bank account to the UT-CC.

18. MACKENZIE caused the filing of another false FEC report (Form 3) on or about May 15, 2012, which identified Person A as contributing $2,500 to the UT-CC. MACKENZIE knew this report was false because he intended to make it appear as if Person A was the original source of this campaign contribution instead of Conservative StrikeForce.

19. On or about September 10, 2015, MACKENZIE issued a personal check for $2,700 to a candidate committee purportedly supporting a candidate for federal office from Indiana (IN-CC). MACKENZIE agreed to issue this check in order to conceal the fact that this campaign contribution was actually coming from a corporation, a prohibited source. The day before, MACKENZIE received a $3,000 check made payable to Mackenzie & Company purportedly for "consulting." This check came from an account held in the name of C.C., a corporation, and was signed by the Vice President of Strategic Campaign Group who was the sole signatory to C.C.'s account. The check was issued in this manner to conceal the true source of the funds.

20. On or about December 9, 2015, MACKENZIE received and deposited a check made payable to him from Strategic Campaign Group for $2,025. The following day, MACKENZIE issued a check to a PAC purportedly formed to assist a candidate for federal public office from Maryland, which was a client of Strategic Campaign Group.

21. MACKENZIE filed numerous false FEC reports to conceal the true source of at least $8,750 worth of campaign contributions.

### FALSE FEC REPORTS CONCERNING PERSON A

22. On or about February 1, 2013, MACKENZIE caused a $1,500 wire to be sent from the Conservative StrikeForce bank account to a joint account he had with Person A. The previous

day, MACKENZIE had filed a false report with the FEC that this payment was for "caging, data entry & list maintenance" knowing that Person A did not perform such services.

23. On or about October 12, 2013, MACKENZIE wrote a $1,000 check to Person A from the Conservative Majority Fund bank account. That same day, MACKENZIE filed a false report with the FEC claiming that this payment was for "caging & data entry services" knowing that Person A did not perform such services.

24. On or about May 1, 2013, MACKENZIE wired $1,500 from the Conservative StrikeForce bank account to a joint account he had with Person A. The previous day, MACKENZIE had filed a false FEC report claiming that this payment was for "caging, data entry & list maintenance" knowing that Person A did not perform such services.

25. On or about November 6, 2013, MACKENZIE wired $1,500 to Person A and filed a false FEC report that same day claiming that this payment was for "caging & data entry services" knowing that Person A did not perform such services.

26. On or about April 14, 2014, MACKENZIE wired a $1,000 payment into a joint account he had with Person A from the Conservative Majority Fund bank account. In a report filed with the FEC that same day, MACKENZIE falsely described the purpose of the payment as "data processing" knowing that Person A did not perform such services.

27. MACKENZIE also created a false invoice for Conservative StrikeForce for these administrative services, purportedly provided by Person A, to make it appear as if Person A had, in fact, provided genuine services in exchange for the payments received.

28. On or about February 13, 2016, MACKENZIE filed a false FEC Schedule B (Form 3X) as Treasurer for Conservative Majority Fund to itemize a disbursement of $650 to Person A on June 16, 2014, for "caging and data entry" services provided on June 15, 2014. As

MACKENZIE well knew, Person A did not provide such services to Conservative Majority Fund on that date.

### FALSE FEC FILINGS TO CONCEAL
### THE UNLAWFUL PAYMENT OF PAC LEGAL FEES

29. On or about September 12, 2014, in the United States District Court for the Eastern District of Virginia, attorneys for a gubernatorial candidate for Virginia sued Conservative StrikeForce, Strategic Campaign Group, its principals, Mackenzie & Company and MACKENZIE relating to the online solicitation of funds by Conservative StrikeForce ("the civil lawsuit").

30. On or about May 20, 2015, the parties to the lawsuit agreed and stipulated that the civil lawsuit would be dismissed with prejudice.

31. From March of 2015 through 2018, MACKENZIE and Conservative StrikeForce directed that monetary donations to non-affiliated PACs Conservative StrikeForce, Conservative Majority Fund and Tea Party Majority Fund be used to pay the pre-existing legal bills of Conservative StrikeForce and Company A, one of its vendors, resulting from the civil lawsuit.

32. Under the Federal Election Campaign Act, contributions from a political committee, such as Conservative StrikeForce, may not exceed $5,000 in a calendar year to any other political committee, such as Conservative Majority Fund and Tea Party Majority Fund.

33. In order to conceal the true nature, source and amount of the legal fee payments, MACKENZIE and Strategic Campaign Group created false invoices and filed false FEC reports. For example, MACKENZIE falsely reported on Schedule B of FEC Form 3X (Itemized Disbursements) that these payments were for PAC email fundraising and PAC email solitications, respectively, which concealed the true nature of the payments.

34. On or about March 3, 2015, MACKENZIE wrote a check for $25,308 from the Conservative Majority Fund escrow account to the Conservative StrikeForce operating account.

MACKENZIE created a false invoice purportedly from Conservative StrikeForce in that amount to make it appear as if the payment from Conservative Majority Fund was for "StrikeForce names over 12 mo" and not for pre-existing legal fees.

35. On March 25, 2015, MACKENZIE caused the issuance of a check for $25,000 from Conservative StrikeForce to its law firm in order to pay some of its legal fees related to the civil lawsuit.

36. On or about October 9, 2015, MACKENZIE wrote a check from the Conservative StrikeForce operating account to Company A for $11,800, and a check from the Conservative Majority Fund operating account to Company A for $8,200, to pay for Company A's legal bills.

37. On or about December 29, 2015, MACKENZIE directed the payment of $10,000 from the Conservative Majority Fund to the owner of Company A to pay for its outstanding legal bills from the civil lawsuit. In a report filed with the FEC on behalf of Conservative Majority Fund, MACKENZIE falsely stated that the payment to Company A was for "PAC email solicitations" which concealed the true nature of the payment.

38. MACKENZIE filed numerous false reports with the FEC about these unlawful payments and disbursements for legal fees which were material to the FEC, that is, they had the natural tendency to influence the FEC in the performance of its official duties. The amount of the unlawful payments that MACKENZIE detailed in the false FEC reports was at least $172,200.

39. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

40. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

Date: October 15, 2019  By: *Kimberly R. Pedersen*
Kimberly R. Pedersen
Assistant United States Attorney

Corey R. Amundson
Chief
Public Integrity Section

By: _____
William J. Gullotta
John P. Taddei
Trial Attorneys
Public Integrity Section

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, SCOTT B. MACKENZIE, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
SCOTT B. MACKENZIE

I am the defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Andrea Moseley, Esq.
Attorney for SCOTT B. MACKENZIE

10