IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No: 1:19-cr-309 |
| | ) | |
| SCOTT BUCHANAN MACKENZIE, | ) | |
| | ) | Sentencing: February 21, 2020 |
| Defendant. | ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

In accordance with 18 U.S.C. § 3553(a), Rule 32 of the Federal Rules of Criminal Procedure, and Section 6A1.2 of the United States Sentencing Commission, Guidelines Manual ("U.S.S.G." or "Guidelines"), the United States of America files this Position with Respect to Sentencing Factors in the instant case and asks the Court to impose a sentence of **30 months**.

The defendant, Scott B. Buchanan, having pleaded guilty to a knowing and wilful violation of our nation's federal election campaign laws appears before the Court for Sentencing. As the treasurer of Conservative Majority Fund (CMF), Conservative StrikeForce (CSF) and Tea Party Majority Fund (TPM), the defendant was entrusted with the responsibility of making and keeping accurate and timely records of political contributions from donors and any expenditures for these political committees (PACs). The defendant's deliberate actions in filing numerous false reports with the Federal Election Commission (FEC[1]) concealed the misappropriation of hundreds of thousands of dollars in donations raised by these PACs in mass email solicitations – which falsely promised to support the candidacy of certain individuals for elective office. The defendant's

---

[1] The FEC is charged with civil enforcement of campaign finance laws.

conduct also impeded the ability of the FEC to properly monitor and regulate our nation's campaign finance laws prohibiting campaign contributions in the names of others ("conduits") and corporate campaign contributions by concealing and disguising the true source or recipient of PAC expenditures.

Because the defendant is an experienced treasurer of over 50 different PACs during a career spanning more than 40 years, and has a checkered history of complying with FEC laws and regulations about accurate recordkeeping, a sentence of 30 months should be sufficient but not greater than necessary to deter the defendant from offenses in the future. Equally important, it would also serve as a beacon to other PAC treasurers about the seriousness of making false reports to the FEC about its political donations and disbursements and the necessity of keeping accurate records.

## I.  Background and Offense Conduct

*Overview*

The defendant is a 66 year old, college graduate with a degree in accounting. Since 1985, the defendant has owned and operated his own small business, Mackenzie & Company, a political consulting company which is based out of his residence in Arlington, Virginia. The defendant has experience as an auditor but for the bulk of his professional career has been employed as a Treasurer for various political campaigns or PACs beginning with his stint as the deputy treasurer for the Reagan for President presidential campaign in 1979. PSR, ¶ 119-125.

As a consultant with Mackenzie & Company, the defendant was paid by various PACs controlled by Kelley Rogers, including CMF, CSF, TPM and Rogers' political consulting firm known as Strategic Campaign Group (SCG). PSR, ¶ 39-44. Starting in 2011 through the present, the defendant received hundreds of thousands of dollars from these PACs and SCG for his role as

a PAC treasurer/consultant with Mackenzie & Company. PSR, ¶ 44.  The defendant admitted as much and his bank statements confirm these amounts (SOF, ¶ 12; PSR ¶ 44); however, the defendant failed to report any income to the IRS in 2012-2013 and reported substantially less income in years 2015-2018.  See PSR, ¶ 120.

*The Legal Duties of a PAC Treasurer*

The Federal Election Campaign Act of 1971 (FECA) and FEC rules and regulations require that treasurers for political committees have a duty to "ensure committee reports and statements are complete, accurate and timely."  The specific duties of a treasurer include various administrative functions, including:

(a) signing and filing all committee reports and statements;
(b) depositing receipts in the committee's designated bank with 10 days of receipt;
(c) authorizing expenditures or appointing someone else (orally or in writing) to authorize expenditures;
(d) monitoring contributions, ensuring they comply with the legal limits and prohibitions; and
(e) keeping records of receipts and disbursements for three years from the filing date of the report to which they relate.

See FEC website; 52 U.S.C. §§ 30101-30106 (FECA); and 11 CFR § 102.9(c), 11 CFR § 101.14(a), (b), and (d).

*False FEC Reports to Conceal the Scam PACs Criminal Conduct*

As part of his guilty plea, the defendant admitted that as Treasurer for CMF, CSF and TPM, he intentionally filed numerous false FEC reports in connection with three separate categories.  For example, in order to conceal the illegal use of PAC funds by Kelley Rogers, such as by reimbursing "conduit" campaign contributions or paying legal fees of one PAC with the funds of another, the defendant filed false reports with the FEC to conceal the true source of the funds.  The defendant's deliberate actions were done to protect the PACs and their illegal activity from scrutiny over its financial transactions and to make it more difficult for the public, the

press, the FEC, or law enforcement to figure out whether there were, in fact, any violations of the federal election laws[2].

*False FEC Reports to Conceal The Defendant's Own Criminal Conduct Against the Scam PACs*

In addition, the defendant filed numerous false reports with the FEC over the course of three years to conceal his own illegality – embezzling funds from the very PACs for which he was the treasurer - for his own personal benefit or to benefit his very close friend, Person A.

The defendant does not dispute that from 2011-2014, he filed numerous fake FEC reports showing disbursements from CMF and CSF to Person A for various administrative duties associated with the processing and reporting of political contributions: caging[3] and data entry services, data processing, consulting-administration, clerical services or list maintenance. However, the defendant flatly denies his true purpose in listing Person A as the recipient of those funds for those recordkeeping functions, for which he responsible as PAC treasurer, was to conceal and disguise the fact that he was stealing PAC funds for his own personal purposes. That position – quite frankly – simply does not ring true nor is it supported by any of the facts of this case.

As treasurer, the defendant opened and was the sole signatory on the PACs bank accounts.  PSR, ¶36.  The defendant had exclusive access to these bank accounts, received the monthly statements, was responsible for knowing the account balances, transferred funds between and among the accounts and had authority to write checks and make deposits into the PAC accounts.  The defendant was paid a consulting fee and earned a living as a treasurer for

---

[2] The FEC maintains a public database of financial transactions in a manner that permits it to be searched and sorted by contributor, date of contribution, amount of contribution, occupation and employer of contributor and identity of done, among other things.  This data is based on periodic reports filed by PAC treasurers like the defendant.  See www.fec.gov.

[3] Caging is a term in the fundraising industry to describe the process of opening mail containing contributions, sorting the contents, counting the funds, and depositing the funds in the organization's bank account.

exercising this financial authority over the PACs and for ensuring the PACs followed the FEC rules for timely and accurate recordkeeping.  However, because there was no one directly overseeing or supervising the defendant's daily activities, the defendant capitalized on a golden opportunity to help himself to PAC funds.  Then, by filing fake reports to the FEC, the defendant concealed and disguised his own embezzlement of PAC funds from Kelley Rogers, the FEC and the public at large by claiming they were payments to Person A for administrative and recordkeeping services.  The defendant was the proverbial fox guarding the henhouse and, in this case, was able to skim off excess funds on top of his consulting fee without detection.  Because of his position, the defendant had the discretion and the authority to issue checks to Person A, with whom he had a close personal relationship, without the attention of Kelley Rogers or the PACs, and deposited the embezzled funds into a joint personal bank account for the defendant and Person A.

Unlike the false reports about the conduit campaign donations or even the source of the legal bills - the defendant's false reports about the purported disbursements to Person A (or fake companies like Electronic Reporting Systems, Inc. using Person A's address) were <u>not</u> to protect Kelley Rogers or the PACs illegality from detection but to conceal the fact that he himself was the ultimate recipient of the PAC funds under his control.

*Defendant's Claim That He Did The Recordkeeping But Was Too Embarrassed to Report It Is Simply Not Credible*

Now that he appears before the Court at sentencing, the defendant says he actually did the administrative work of recording and depositing the political donations but he falsely reported to the FEC that Person A did it because of his own "hubris and self-serving motives."  In other words, he claims he actually performed this work but his pride prevented from doing the "right thing" and disclosing that it was he who performed the clerical services for the PACs.  This

recently-constructed explanation is not only false, but it is inconsistent with the defendant's own prior statements.

*The Defendant Lied to the FBI*

First of all, when the FBI came to the defendant's house in Arlington in May of 2017 to execute a search warrant, the defendant told agents during a voluntary interview that Person A did the caging work. Most likely because the defendant knew that Person A's name, address and variations on her business name were listed in the actual FEC reports. However, even when confronted by law enforcement, the defendant did not come clean.

In contrast, during a separate interview, Person A told the FBI she had been a seamstress for 30 years, had never heard the term "caging" or understand fully what a PAC was and never performed any bookkeeping or administrative services for anyone. Person A did admit that the defendant helped her financially over the years and they had a joint bank account which was used to help her build her current home but they did not have a "work" relationship.

*The Defendant's Home Office Showed His Lack of Compliance*

During the search of his residence, the FBI found a basement office area with multiple large, blue bins stuffed full of cash, stacks of checks dating back to 2011, 2013 and 2014, bank statements and correspondence[4] from donors who identified themselves as elderly, sick and on fixed incomes.[5] See Exhibit C. These photos do not depict the office of a well-organized PAC treasurer who is complying with FEC regulations requiring accurate and timely records and the deposit of funds within 10 days. While required to do the administrative and clerical functions of a treasurer, the defendant did not do the work in compliance with the FEC rules. Nor did the

---

[4] The FBI photographed but did not seize any cash or checks or correspondence from the defendant's residence during the search.
[5] One donor, J.K., identified herself as a "100 year-old half-blind widow" from New York who had "exhausted her resources" and asked for her name to be removed from CSF's mailing list.

defendant file any federal income tax returns for years 2012-2013, which covers the time period in which he claimed that he did the caging work.

### *The PACs Also Hired Other Caging and Administrative Service Companies*

Public records on the FEC website show the defendant reported disbursements for CMF and CSF for 2011-2014 to other caging and escrow companies and the defendant's consulting company, Mackenzie & Company. According to an Amended Year End Report for 2014, the defendant reported paying $476.61 to W.I.B. for "caging & escrow services" and $3,500 to Mackenzie & Company for "consulting-compliance."[6] An Amended Year End Report for 2013 similarly reveals payments to escrow companies, caging companies and data processing companies and $3,500 to Mackenzie & Company.

### *The Defendant Created Fake Invoices After Being Sued*

While the FEC requires PAC treasurers to report disbursements over $200, the rules do not require the production of any supporting invoices with the periodic reports. Based on his many years of experience, the defendant knew he was free to report falsely these purported PAC expenditures as having gone to Person A without the necessity of creating any back-up documentation. That is, not until late 2014, when Candidate A sued the defendant and his business partners from CSF and CMF and demanded discovery relating to the PACs' receipts and expenses. Then, the defendant endeavored to cover up his tracks even further by creating 15 fake invoices.

### *The Defendant Has a Long and Checkered History of Non-Compliance with the FEC*

The defendant has a long and documented history with the FEC in his capacity as treasurer of over 50 PACs over the course of many decades. On the FEC website, there are over

---

[6] The defendant filed an Amended Year End Report for 2014 on October 24, 2019, two days after the defendant's guilty plea.

7

17 complaints against the defendant, many of which involved repeated violations of federal campaign finance laws.  See 52 U.S.C. § 30104(b) or its predecessor (failure to file accurate reports of receipts and disbursements).  Exhibit A.

FEC records show that there was a finding of probable cause for a number of those complaints.  For example, the defendant entered into a number of Conciliation Agreements for his role as treasurer with the following: Reagan-Bush '84 Committee (MUR 2415) in 1990; the Victory '88 and the Kemp/Dannemeyer Committee (MUR 3360) in 1994; and more recently, in 2019 with the Tea Party Majority Fund (MUR 7545).  There were other resolutions entered into between the FEC and the defendant, including a negotiated settlement in 2016 involving CMF and himself as its treasurer concerning deficient reports from the 2013-2014 election cycle resulting in a $3,500 civil penalty.

After an audit and a hearing, the FEC imposed a $100,000 civil penalty on the defendant in August of 2019, for various violations of the law while acting as CMF's treasurer in 2012, including that:

(1)   CMF misstated its disbursements by $2.1 million;

(2)   CMF failed to disclose occupation and name of employer information for 527 contributions from individuals totaling $86,745;

(3)   CMF did not properly disclose independent expenditures totaling $273,297 on Schedule E and failed to correct the vendor name for independent expenditures totaling $185,663 disclosed on Schedule E; CMF failed to file 24/48 hour reports for apparent independent expenditures totaling $273,297; and that 24-hour reports totaling $90,260 were filed untimely;

(4)   CMF failed to disclose debts and obligations totaling $67,800; and

(5)   CMF did not provide the necessary records pertaining to disbursements totaling $117,933.

See Exhibit B.

In support of his claim that he did, in fact, do the caging services for the scam PACs, the defendant has produced 30 pages of handwritten notes on the face of envelopes (totaling $475). These paltry records do not constitute evidence of caging or proper recordkeeping for millions of dollars' worth of annual receipts that CMF, CSF and TPM received from its small donors.

The defendant's embezzlement from a scam PAC was a crime of opportunity – pure and simple. His belated effort to show a lack of criminal intent and to suggest that his pride got in the way of accurate recordkeeping misses the mark completely. Because there was no meaningful oversight of his activities by Kelley Rogers who ran the scam PACs, and because he concealed his improper access to PAC funds by filing false reports to the FEC, the defendant was able to conceal his unlawful activities, and that of the scam PACs, for so long.

## II. Guidelines Calculation

As this Court is well aware, although the Supreme Court rendered the federal Sentencing Guidelines advisory in *United States v. Booker*, 543 U.S. 220 (2005), "a sentencing court is still required to 'consult [the] Guidelines and take them into account when sentencing.'" *United States v. Clark*, 434 F.3d 684, 685 (4th Cir. 2006) (quoting *Booker*, 543 U.S. at 264). The Supreme Court has directed that district courts "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007).

A sentencing court should first calculate the range prescribed by the Sentencing guidelines after making the appropriate findings of fact. *See United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). However, the sentencing court "may not presume that the Guidelines range is reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009). The "[g]uidelines should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49; *see also Clark*, 434 F.3d at 685.

The United States has reviewed the Presentence Investigation Report ("PSR") and the computations of the United States Probation Officer ("USPO"). The United States has no objections to the PSR and agrees that the computations and calculations were correctly made. Defendant is a criminal history category I. The total offense level was properly calculated at 19 (after acceptance of responsibility), resulting in an advisory sentencing guidelines range of **30 to 37 months**. The United States believes that **a sentence at the low end of the guidelines** is appropriate in this case in order to reflect the seriousness of the defendant's offense which involved the corruption of our nation's federal election laws. At the same time, it would avoid an unwarranted disparity with the sentence previously imposed on the related case of Kelley Rogers, who was sentenced to 36 months, who was stole from these scam PACs and who relied on the defendant to file false FEC reports to cover up the fraud scheme.

    *A.*     *Acceptance of Responsibility*

The United States agrees that the defendant has timely accepted responsibility for the offense, meriting a two point reduction pursuant to § 3E1.1(a). The defendant assisted authorities in the prosecution of his own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the United States hereby moves for the additional one point reduction, pursuant to U.S.S.G § 3E1.1(b).

    *B.*     *The Defendant's Objections to the Sentencing Enhancements Should Be Overruled*

        1.     <u>The Abuse of Position of Trust Enhancement Is Appropriate</u>

The defendant, as Treasurer of CMF, CSF and TPM, occupied a position of trust with the general public that he would fulfil his legal obligations to ensure the PACs for whom he worked would comply with federal laws and regulations governing campaign finance. The defendant abused his position of trust when he filed false reports with the FEC to cover up crimes committed

by the scam PACs for which he worked and to cover up his own theft of funds from the PACs over which he exercised exclusive financial control.

The defendant's failure to follow the laws regarding the accurate recordkeeping of donor funds and his deliberate filing of false FEC reports allowed CMF and CSF to continue to rip off unsuspecting donors and permitted him to rip off those same scam PACs in return. The defendant clearly abused his position of trust upon which the FEC and the public rely for accurate information in determining whether the federal election campaign laws are being followed. The enhancement under U.S.S.G. § 3B1.3 was properly applied here and the defendant's objection should be overruled.

### 2. There Were 10 or More Victims of the Scam PACs Massive E-Mail Solicitation Scheme

The defendant played a crucial role in Kelley Rogers' scam PAC scheme which targeted thousands of small donors interested in supporting political candidates for public office via mass-marketing. The Court found this enhancement appropriate for Rogers and it should be applied here even though the defendant pleaded guilty to a false statements charge. Rogers and the defendant both stole money donated to the PACs and used the funds in whatever way suited them. The defendant's role as treasurer and his systematic filing of fake FEC reports was part of the same criminal scheme and conducted in concert with Rogers and others to cover up the PACs illegal activity. It is entirely appropriate to include the enhancement for U.S.S.G. § 2B1.1(b)(2)(A) for the defendant as relevant conduct under U.S.S.G. § 1B1.3(a)(1) and U.S.S.G. § 1B1.3(a)(2). The objection should be overruled.

      3.      The Defendant's Execution and Concealment of the Offense Conduct Was <u>Especially Complex and Sophisticated</u>

Without a doubt, this scam PAC scheme was complicated, complex and sophisticated. Its success relied on the special skills of the defendant who had 40 years of experience as a PAC treasurer and knowledge of the applicable rules and regulations governing PACs. The defendant's knowledge and experience with the FEC enabled him to appear to comply with its rules – albeit with false information – to conceal the illegal conduct of the PACs and himself. The defendant created names for two fake caging companies ostensibly linked to Person A that he listed on disbursement forms to hide conceal his own embezzlement from the PACs. The defendant created a fake invoice for $25,000 to make it appear as if the transfer of money from CMF's bank account to CSF's bank account was for a legitimate service and not for the improper purpose of paying its pre-existing legal fees resulting from a lawsuit filed by Candidate A. PSR, ¶ 66. The defendant also created 15 fake invoices from Person A to CSF to cover up his own criminal involvement.

The defendant and Kelley Rogers worked hand-in-hand in perpetrating this fraudulent scheme using the scam PACs as their personal piggy banks and using fake companies, fake invoices and false statements to line their own pockets. Rogers needed the defendant's special skills and expertise as a treasurer to paper over the theft of donor funds from the PACs. The sophisticated means enhancement under U.S.S.G. § 2B1.1 was properly awarded to Rogers and should similarly be awarded to the defendant, not only as relevant conduct, but for his own conduct.

**III.    The Imposition of Sentence**

After calculating the applicable Guidelines, a sentencing court must then consider that Guidelines range, as well as the sentencing factors set forth in § 3553(a), and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also*

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). With respect to § 3553(a)'s enumerated factors, of particular relevance here are the nature and circumstances of the offense, the history and characteristics of the defendant, the need to promote respect for the law and afford adequate general deterrence to similar criminal conduct, and the need to avoid unwarranted sentencing disparities with other similarly situated defendants. *See* § 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(6). Based on those factors, and because the government views the defendant's conduct as similar to that of defendant Kelley Rogers, the United States recommends that the Court sentence the defendant at the bottom end of the guidelines range of **30-37** months.

The defendant's crime was serious in that it was an intentional interference with the legitimate function of the FEC in monitoring and regulating campaign contributions in our political campaigns. It goes to the heart of our democratic system of government. The defendant intentionally caused false information to be provided to the FEC to conceal ongoing and fraudulent criminal activity by Kelley Rogers and two PACs he controlled. These PACS, for which the defendant served as treasurer, scammed small donors out of their money with false statements. To make matters worse, the defendant himself stole donor funds from these same scam PACs because he had access to it and no one watching over him. The defendant's crime was even more egregious because it was not a one-time lapse in judgment. Instead, it was a part of a larger, ongoing criminal scheme that perpetuated itself by his special skills and knowledge of FEC rules and regulations.

The defendant committed his crimes in the public arena over a sustained period of time and with little regard for the authority of the FEC or its regulations. The defendant concealed his illegal conduct behind his false reports. Prior civil sanctions for failure to keep accurate records did not chill his desire to participate in these scam PAC schemes because they lined his pockets.

Scam PACs that raise most of their money from small-dollar donors before churning most of it back into more fundraising, salaries and administrative costs have proliferated in recent years at the expense of the small donors.  These small-donors, who are often elderly and of modest means, see their financial contributions as a way to express strongly held political beliefs and is often their only way of direct political participation.

The defendant's willingness to engage in extensive efforts to conceal and disguise the existence of these fraud schemes disguised as political action committees by falsifying records and filing false reports, even after repeated FEC intervention for violation of federal campaign finance laws, demands a meaningful period of incarceration to deter future criminal conduct by this defendant and other PAC treasurers.

### IV.    Conclusion

For all of the above reasons, the government respectfully requests that this Court impose a period of incarceration at the low end of the relevant guidelines range of **30-37 months**, which is a sentence that is sufficient but not greater than necessary and also avoids any unwarranted sentencing disparity with the sentence of 36 months imposed previously in the related case of *United States v. Kelley Rogers*.

The government also seeks an order of restitution in the amount of $172,200.00 and will submit an order at or before sentencing.

                                                          Respectfully submitted,

                                                          G. Zachary Terwilliger
                                                          United States Attorney

                                                          _____/s/_____
                                                          Kimberly R. Pedersen
                                                          Counsel for the United States
                                                          United States Attorney's Office

        2100 Jamieson Avenue
        Alexandria, VA 22314
        Telephone:  703-299-3700
        Email: Kimberly.Riley.Pedersen@usdoj.gov


        Corey R. Amundson
        Chief, Public Integrity Section

By:    /s/ *William J. Gullotta*
        William J. Gullotta
        John P. Taddei
        Trial Attorneys
        U.S. Department of Justice
        Public Integrity Section
        1331 F Street NW
        Washington, DC 20004
        Phone: 202-514-1412
        Email: William.Gullotta2@usdoj.gov
            John.Taddei@usdoj.gov


**CERTIFICATE OF SERVICE**


     I certify that on this 14th day of February, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to counsel of record.


        /s/
        Kimberly R. Pedersen
        Assistant United States Attorney
        United States Attorney's Office
        Justin W. Williams U.S. Attorney's Building
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Phone:  (703) 299-3700
        Fax:  (703) 299-3982
        Kimberly.riley.pedersen@usdoj.gov