

**FEDERAL ELECTION COMMISSION**
WASHINGTON, D.C. 20463

**CERTIFIED MAIL AND ELECTRONIC MAIL**
**RETURN RECEIPT REQUESTED**

Scott B. Mackenzie, Treasurer
Tea Party Majority Fund
2776 S. Arlington Mill Drive, # 806
Arlington, VA 22206

**AUG 2 9 2019**

RE:  MUR 7545
Tea Party Majority Fund

Dear Mr. Mackenzie:

On August 26, 2019, the Federal Election Commission accepted the signed conciliation agreement submitted on your behalf in settlement of a violation of 52 U.S.C. § 30104(f) of the Federal Election Campaign Act of 1971, as amended ("the Act").  Accordingly, the file has been closed in this matter.

Documents related to the case will be placed on the public record within 30 days.  *See* Disclosure of Certain Documents in Enforcement and Other Matters, 81 Fed. Reg. 50,702 (Aug. 2, 2016).  Information derived in connection with any conciliation attempt will not become public without the written consent of the respondent and the Commission.  *See* 52 U.S.C. § 30109(a)(4)(B).

Enclosed you will find a copy of the fully executed conciliation agreement for your files.  Please note that the first installment of the civil penalty is due within 30 days of the conciliation agreement's effective date.  If you have any questions, please contact me at (202) 694-1507 or cjacksonjones@fec.gov.

Sincerely,

Camilla Jackson Jones.
Attorney

Enclosure
 Conciliation Agreement

GOVERNMENT
EXHIBIT
A
1:19-CR-309

19044476685

...AL COUNSEL

# BEFORE THE FEDERAL ELECTION COMMISSION

2019 AUG 12  AM 10: 40

In the Matter of Tea Party Majority Fund )
and Scott B. Mackenzie in his )     MUR 7545
official capacity as treasurer )

## CONCILIATION AGREEMENT

This matter was initiated by the Federal Election Commission ("Commission"), pursuant

to information ascertained in the normal course of carrying out its supervisory responsibilities.

The Commission found reason to believe that Tea Party Majority Fund and Scott B. Mackenzie

in his official capacity as treasurer ("Respondent" or the "Committee") violated 52 U.S.C.

§§ 30104(b)(4)(H)(iii), 30104(b)(8) and 11 C.F.R. §§ 104.3(d), 104.4, 104.11(a).

NOW, THEREFORE, the Commission and Respondent, having participated in informal

methods of conciliation, prior to a finding of probable cause to believe, do hereby agree as

follows:

I.      The Commission has jurisdiction over Respondent and the subject matter of this

proceeding, and this agreement has the effect of an agreement entered pursuant to 52 U.S.C.

§ 30109(a)(4)(A)(i).

II.      Respondent has had a reasonable opportunity to demonstrate that no action should

be taken in this matter.

III.     Respondent enters voluntarily into this agreement with the Commission.

IV.     The pertinent facts in this matter are as follows

        1.      Tea Party Majority Fund is a non-connected political action

committee and Scott B. Mackenzie is its treasurer.

MUR 7545 (Tea Party Majority Fund)
Conciliation Agreement

1         2.      The Federal Election Campaign Act of 1971, as amended (the "Act"),

2  requires each treasurer of a political committee to file accurate reports of receipts and

3  disbursements in accordance with the provisions of 52 U.S.C. § 30104(b). This requirement

4  includes reporting independent expenditures ("IEs") made by political committees other than

5  authorized committees. Every political committee that makes IEs must report them in its

6  regularly scheduled disclosure reports in accordance with 11 C.F.R. § 104.3(b)(3)(vii).

7         3.      The Act and Commission regulations also require political committees to

8  disclose the amount and nature of its outstanding debts and obligations until those obligations are

9  extinguished. A political committee must file separate schedules for debts owed by and to the

10  committee with a statement explaining the circumstances and conditions under which each debt

11  and obligation was incurred and extinguished. A similar statement is required where such debts

12  and obligations are settled for less than their reported amount or value. A debt of $500 or less

13  must be reported at the time that payment was made or within 60 days of the date the political

14  committee incurs the debts, whichever comes first, and a debt exceeding $500 must be disclosed

15  in the report that covers the date on which the debt was incurred.

16         4.      In its 2016 April Quarterly Report, Respondent listed IEs totaling

17  $753,273.16, of which, in reality, $400,000 was a debt and $353,273.16 were actual payments on

18  that debt. Because Respondent failed to explain these distinctions in the report, however, it

19  appears that the Committee made $753,273.16 in IEs.

20         5.      Furthermore, the 2016 April Quarterly Report fails to list $46,726.84 in

21  debts for that reporting period.

22         6.    On the 2016 October Quarterly, Respondent listed IEs totaling

23  $843,569.24, of which, in reality, $450,000 was a debt and $393,569.24 were actual payments on

MUR 7545 (Tea Party Majority Fund)
Conciliation Agreement

1   that debt. Because Respondent failed to explain these distinctions in the report, however, it

2   appears that the Committee made $843,569.24 in IEs.

3           7.   In its 2016 Amended 12 Day Pre-General Report, Respondent listed

4   $212,943.72 as an IE that was distributed prior to payment with no accompanying information,

5   and did not list a debt for that period.

6      V.   Respondent violated 52 U.S.C. § 30104(b)(4)(H)(iii) and 11 C.F.R. § 104.4 by

7   failing to accurately report independent expenditures, and 52 U.S.C. § 30104(b)(8) and 11 C.F.R.

8   §§ 104.3(d), 104.11(a) by not properly disclosing its debts and obligations.

9      VI.   Respondent will take the following actions:

10          1.   Respondent will cease and desist from violating 52 U.S.C.

11   §§ 30104(b)(4)(H)(iii), 30104(b)(8) and 11 C.F.R. §§ 104.3(d), 104.4, 104.11(a).

12          2.   Respondent will amend its reports to ensure they accurately reflect its IEs

13   and debts at all times.

14          3.   Respondent will pay a civil penalty to the Federal Election Commission in

15   the amount of One Hundred Thousand Dollars ($100,000) pursuant to 2 U.S.C. § 437g(a)(5)(A).

16   The $100,000 will be paid as follows:

17              a.   A payment of Twenty Five Thousand Dollars ($25,000) is due no

18   more than thirty (30) days from the date this Agreement becomes effective;

19              b.   Thereafter, three quarterly installments of Twenty Five Thousand

20   Dollars ($25,000) each;

21              c.   The second and third installments shall be paid within one hundred

22   twenty (120) and one hundred and eighty (180) days of the due date of the previous installment and

23   the final installment shall be paid within ninety (90) days after the third installment;

MUR 7545 (Tea Party Majority Fund)
Conciliation Agreement

1         d.     In the event that any payment is not received by the Commission

2 by the fifth day after it becomes due, the Commission may, at its discretion, accelerate the

3 remaining payments and cause the entire amount to become due upon ten days written notice to

4 the Respondent. Failure by the Commission to accelerate the payments with regard to any

5 overdue payment shall not be construed as a waiver of its right to do so with regard to further

6 overdue payments.

7      VII.     The Commission, on request of anyone filing a complaint under 52 U.S.C.

8 § 30109(a)(1) concerning the matters at issue herein or on its own motion, may review

9 compliance with this agreement. If the Commission believes that this agreement or any

10 requirement thereof has been violated, it may institute a civil action for relief in the United States

11 District Court for the District of Columbia.

12      VIII.     This agreement shall become effective as of the date that all parties hereto have

13 executed same and the Commission has approved the entire agreement.

14      IX.     Respondent shall have no more than 30 days from the date this agreement

15 becomes effective to comply with and implement the requirement contained in this agreement

16 and to so notify the Commission.

17

MUR 7545 (Tea Party Majority Fund)
Conciliation Agreement

1      X.    This Conciliation Agreement constitutes the entire agreement between the parties

2    on the matters raised herein, and no other statement, promise, or agreement, either written or

3    oral, made by either party or by agents of either party, that is not contained in this written

4    agreement shall be enforceable.

5    FOR THE COMMISSION:

6    Lisa J. Stevenson
7    Acting General Counsel

8    BY:    _____        8-29. 2019
9          Charles Kitcher                 Date
10       Acting Associate General Counsel
11         for Enforcement

12    FOR THE RESPONDENT:

13    _____        August 7, 2019
14    Scott B. Mackenzie              Date
15    Treasurer

BEFORE THE FEDERAL ELECTION COMMISSION

In the Matter of                                              )
                                                             )
2015-2016 RAD Audit Referrals -                              )
Unauthorized Committees                                      )

## CERTIFICATION

I, Dayna C. Brown, Secretary and Clerk of the Federal Election

Commission, do hereby certify that on November 08, 2017, the Commission

decided by a vote of 5-0 to take the following actions in the above-captioned

matter, subject to the edits circulated via email on October 11, 2017 at 4:13 p.m.

by the office of Vice Chair Hunter:

1. The AD transfer the RAD audit referrals for


        Tea Party Majority Fund                              to the
    OGC for further processing.

2.


3.


4.

Federal Election Commission
2015-2016 RAD Audit Referrals –
Unauthorized Committees
November 08, 2017

Commissioners Goodman, Hunter, Petersen, Walther, and Weintraub voted

affirmatively for the decision.

Attest:

_November 9, 2017_
Date

Dayna C. Brown
Secretary and Clerk of the Commission

Administratively
Closed

BEFORE THE FEDERAL ELECTION COMMISSION 2019 AUG 29  AM 1: 11

CELA

In the Matter of                                    )
                                                    )   MUR 7545
Tea Party Majority Fund and Scott B.                )
Mackenzie in his official capacity as               )
treasurer: Pre-Probable Cause                       )
Conciliation                                        )

## CERTIFICATION

I, Laura E. Sinram, Acting Secretary and Clerk of the Federal Election

Commission, do hereby certify that on August 26, 2019, the Commission

decided by a vote of 4-0 to take the following actions in MUR 7545:

1. Accept the conciliation agreement with Tea Party Majority Fund
   and Scott B. Mackenzie in his official capacity as treasurer, as
   recommended in the Memorandum from the Acting General
   Counsel dated August 9, 2019.

2. Approve the appropriate letters.

3. Close the file.

Commissioners Hunter, Petersen, Walther, and Weintraub voted

affirmatively for the decision.

Attest:

8/29/19                            Laura E. Sinram
————————————                       ————————————————
Date                               Laura E. Sinram
                                   Acting Secretary and Clerk of the
                                   Commission

**FEDERAL ELECTION COMMISSION**

**FIRST GENERAL COUNSEL'S REPORT**

AUDIT REFERRAL: 17-07R
DATE REFERRED: November 13, 2017
DATE OF NOTIFICATION: November 17, 2017
RESPONSE RECEIVED: December 21, 2017
DATE ACTIVATED: January 29, 2018

EXPIRATION OF SOL: 7/31/2020-10/27/2021
ELECTION CYCLE: 2016

**COMPLAINANT:** Internally Generated

**RESPONDENTS:** Tea Party Majority Fund and Scott B. Mackenzie in his official capacity as treasurer

**RELEVANT STATUTES AND REGULATIONS:**
52 U.S.C. § 30104(b)(4)(H)(iii)
52 U.S.C. § 30104(b)(8)
52 U.S.C. § 30104(g)
11 C.F.R. § 104.3(b), (d)
11 C.F.R. § 104.4
11 C.F.R. § 104.11

**INTERNAL REPORTS CHECKED:** Disclosure Reports

**FEDERAL AGENCIES CHECKED:** None

**I.    INTRODUCTION**

The Commission's Reports Analysis Division ("RAD") originally referred Tea Party

Majority Fund and Scott B. Mackenzie in his official capacity as treasurer ("TPMF") to the

Audit Division based on a number of apparent reporting violations. The Commission

subsequently transferred this matter to the Office of the General Counsel ("OGC").[1] The

Referral concerns TPMF's failure to provide supporting schedules for independent expenditures

totaling $1,809,786.12 made during the 2016 election cycle. Specifically, RAD referred TPMF's

---

[1]    Certification, 2015-2016 RAD Audit Referrals – Unauthorized Committees (Nov. 9, 2017).

1   apparent failure to file two 48-Hour Reports and disclose debts in three reporting periods. TPMF

2   contends that it properly reported its debts and filed all necessary 48-Hour Reports.[2]

3        As set forth below, TPMF failed to properly report independent expenditures that were

4   disseminated prior to payment and disclose debts. We therefore recommend that the

5   Commission find reason to believe that TPMF violated 52 U.S.C. § 30104(b)(4)(H)(iii) and

6   11 C.F.R. § 104.4 by failing to accurately report its independent expenditures and 52 U.S.C.

7   § 30104(b)(8) and 11 C.F.R. §§ 104.3(d), 104.11(a) by not properly disclosing its debts and

8   obligations, but take no action at this time regarding TPMF's alleged failure to file 48-Hour

9   Reports. We also recommend that the Commission enter into pre-probable cause conciliation

10   with TPMF.

11  **II.**    **FACTUAL AND LEGAL ANALYSIS**

12     **A. Factual Background**

13       TPMF is an independent-expenditure-only political committee that registered with the

14   Commission on July 21, 2014.[3] In 2015 and 2016, TPMF reported making hundreds of

15   thousands of dollars in independent expenditures to a vendor for "voter contact calls" in

16   opposition to presidential candidate Hillary Clinton.[4] Based on a number of questionable

17   reporting entries, RAD sent TPMF Requests for Additional Information ("RFAIs") regarding

---

[2]     Resp.at 4 (Dec. 21, 2017).

[3]     *See* TPMF, Statement of Organization (July 21, 2014).

[4]     *See* TPMF, 2015 Mid-Year Report (July 27, 2015); 2016 April Quarterly Report (Apr. 15, 2016); 2016 July Quarterly Report (July 11, 2016); 2016 October Quarterly Report (Oct. 8, 2016); and 2016 Pre-General Report (Oct. 26, 2016).

AR 17-07R (Tea Party Majority Fund)
First General Counsel's Report
Page 3 of 11

1    TPMF's 2015 Mid-Year Report,[5] 2016 April Quarterly Report,[6] 2016 July Quarterly Report,[7]

2    2016 October Quarterly Report,[8] and 2016 Pre-General Report.[9] TPMF submitted two amended

3    2015 Mid-Year Reports[10] along with a response to the RFAI for that period.[11] TPMF did not

4    address RAD's concerns for any of its 2016 reports.

5

6

7

8

9

10

11    A breakdown of the apparent violations per report is listed in the following chart.

| REPORT | REFERRED ISSUE |
| --- | --- |
| 2016 April Quarterly | • Failure to disclose a debt on Schedule D where TPMF disclosed $400,000 in IEs that were publicly disseminated prior to payment<br>• Failure to file a 48-Hour Report for $353,273.16 in independent expenditures disclosed on Schedule E |
| 2016 October Quarterly | • Failure to disclose a debt on Schedule D where TPMF disclosed $450,000 in IEs that were publicly disseminated prior to payment<br>• Failure to file a 48-Hour Report for $393,569.24 in independent expenditures disclosed on Schedule E |

---

5    RFAI: Mid-Year Report 2015 (Sept. 22, 2015).

6    RFAI: April Quarterly 2016 (Jan. 19, 2017).

7    RFAI: July Quarterly 2016 (Oct. 11, 2016).

8    RFAI: October Quarterly 2016 (Dec. 5, 2016).

9    RFAI: Pre-General 2016 (Feb. 23, 2017).

10    TPMF, 2015 Mid-Year Report: Amendment 1 (Oct. 30, 2015); 2015 Mid-Year Report: Amendment 2 (Jan. 17, 2016).

11    TPMF, Misc. Report to FEC 2015 (Oct. 30, 2015).

AR 17-07R (Tea Party Majority Fund)
First General Counsel's Report
Page 4 of 11

| REPORT | REFERRED ISSUE |
|--------|----------------|
| Amended 2016 12-Day Pre-General | • Failure to disclose a debt on Schedule D where TPMF disclosed $212,943.72 in IEs that were publicly disseminated prior to payment |

1    On November 17, 2017, the Commission sent a Notification Letter to TPMF stating that

2    TPMF had been referred to OGC for possible enforcement action.[12]  TPMF responded that it

3    acted in good faith and used best efforts, and the Commission should take no further action.[13]

4    **B.    Legal Analysis**

5    The Federal Election Campaign Act of 1971, as amended (the "Act"), requires each

6    treasurer of a political committee to file reports of receipts and disbursements in accordance with

7    the provisions of 52 U.S.C. § 30104(b).[14]  This requirement includes reporting independent

8    expenditures ("IEs") made by political committees other than authorized committees.[15]  Every

9    political committee that makes IEs must report them in its regularly scheduled disclosure reports

10   in accordance with 11 C.F.R. § 104.3(b)(3)(vii).[16]  In addition, a political committee that makes

11   or contracts to make IEs aggregating $10,000 or more for an election in any calendar year, up to

12   and including the 20th day before an election, must report these expenditures within 48 hours.[17]

---

[12]   Notification Letter from Jeff Jordan to Scott Mackenzie, Tea Party Majority Fund (Nov. 17, 2017).

[13]   Resp. at 4.

[14]   52 U.S.C. § 30104(a)(1).

[15]   52 U.S.C. § 30104(b)(4)(H)(iii); 11 C.F.R. § 104.3(b)(1)(vii).

[16]   11 C.F.R. § 104.4(a).  Such a political committee must disclose on Schedule E the name of a person who receives any disbursement during the reporting period in an aggregate amount or value in excess of $200 within the calendar year in connection with an IE by the reporting committee.  The report also must disclose the date, amount, and purpose of any such IE and include a statement that indicates whether such IE is in support of or in opposition to a candidate, as well as the name and office sought by such candidate.  IEs of $200 or less do not need to be itemized, though the committee must report the total of those expenditures on line (b) of Schedule E.  *Id.*; *see also* 11 C.F.R. § 104.3(b)(3)(vii).

[17]   52 U.S.C. § 30104(g)(2); 11 C.F.R. § 104.4(b)(2).

1    These reports, known as 48-Hour Reports, must be filed by the end of the second day "following

2    the date on which a communication that constitutes an independent expenditure is publicly

3    distributed or otherwise publicly disseminated."[18] Additionally, "[e]very person must include in

4    the aggregate total all disbursements during the calendar year for independent expenditures, and

5    all enforceable contracts, either oral or written, obligating funds for disbursements during the

6    calendar year for independents expenditures, where those independent expenditures are made

7    with respect to the same election for Federal office."[19]

8         The Act and Commission regulations also require political committees to disclose the

9    amount and nature of its outstanding debts and obligations until those obligations are

10   extinguished.[20] A political committee must file separate schedules for debts owed by and to the

11   committee with a statement explaining the circumstances and conditions under which each debt

12   and obligation was incurred and extinguished.[21] A similar statement is required where such

13   debts and obligations are settled for less than their reported amount or value.[22] A debt of $500 or

14   less must be reported at the time that payment was made or within 60 days of the date the

15   political committee incurs the debts, whichever comes first, and a debt exceeding $500 must be

16   disclosed in the report that covers the date on which the debt was incurred.[23] Where the exact

17   amount of a debt is unknown, the report shall state that the amount reported is an estimate and

---

[18]    11 C.F.R. § 104.4(b)(2).

[19]    *Id.* § 104.4(f).

[20]    52 U.S.C. § 30104(b)(8); 11 C.F.R. §§ 104.3(d), 104.11(a).

[21]    *See* 11 C.F.R. § 104.11(a).

[22]    52 U.S.C. § 30104(b)(8); 11 C.F.R. §§ 104.3(d), 104.11(a).

[23]    11 C.F.R. § 104.11(b).

AR 17-07R (Tea Party Majority Fund)
First General Counsel's Report
Page 6 of 11

1   the exact amount is to be disclosed in an amended report or on the report for a reporting period in

2   which such amount is determined.[24] Debts and obligations that remain outstanding shall be

3   continuously reported until extinguished.[25] Independent expenditures made (i.e., publicly

4   disseminated) prior to payment should be disclosed as memo entries on Schedule E and as

5   reportable debt on Schedule D.[26]

          1.   There is Reason to Believe that TPMF Failed to Properly Disclose
6                 Independent Expenditures that were Publicly Disseminated Prior to
7                 Payment
8

9       In the first quarter of 2016, TPMF listed IEs totaling $753,273.16: of those,

10   $400,000 were marked as memo entries, and the remaining $353,273.16 were not,[27]

11   suggesting that TPMF aired and paid for $353,273.16 in IEs but also aired and had *not*

12   yet paid for $400,000 in IEs. In addition, TPMF filed a 48-Hour Report disclosing

13   $400,000 in IEs for this period, but RAD questioned why TPMF did not file an additional

14   48-Hour Report for the remaining $353,273.16.[28] TPMF did not respond to RAD, but

15   explained in its response to the Notification Letter that the $353,273.16 was "related to"

16   the $400,000 in expenses already incurred during the same reporting period[29]—in effect,

17   TPMF appears to have listed both a debt ($400,000) and its repayment ($353,273.16) as

---

[24]   *Id.*

[25]   *Id.* § 104.11(a).

[26]   *See* 11 C.F.R. §§ 104.4(f), 104.11; Bipartisan Campaign Reform Act of 2002 Reporting; Coordinated and Independent Expenditures; Final Rules, 68 Fed. Reg. 404, 407 (Jan. 3, 2003) (Explanation and Justification); Factual and Legal Analysis at 9, MUR 6587 (UAEPC); Factual and Legal Analysis at 2, MUR 6266 (National Right to Life PAC); Campaign Guide for Nonconnected Committees at 72 (2008).

[27]   *See* TPMF, 2016 April Quarterly Report (Apr. 15, 2016) Schedule E; Attach. 3.

[28]   *See* TPMF, 48-Hour Report (Jan. 14, 2016); RFAI: April Quarterly 2016 (Jan. 19, 2017).

[29]   Resp. at 3.

1    **BEFORE THE FEDERAL ELECTION COMMISSION**

2

3    In the Matter of              )

4                               )      DISMISSAL AND

5    MUR 7329                )      CASE CLOSURE UNDER THE

6    VIGOP (Virgin Islands Republican Party)  )      ENFORCEMENT PRIORITY

7    and Scott B. Mackenzie, as treasurer    )      SYSTEM

8                               )

9

10   **GENERAL COUNSEL'S REPORT**

11         Under the Enforcement Priority System, the Commission uses formal scoring criteria as a

12   basis to allocate its resources and decide which matters to pursue. These criteria include, without

13   limitation, an assessment of the following factors: (1) the gravity of the alleged violation, taking into

14   account both the type of activity and the amount in violation; (2) the apparent impact the alleged

15   violation may have had on the electoral process; (3) the complexity of the legal issues raised in the

16   matter; and (4) recent trends in potential violations of the Federal Election Campaign Act of 1971, as

17   amended (the "Act"), and developments of the law. It is the Commission's policy that pursuing

18   relatively low-rated matters on the Enforcement docket warrants the exercise of its prosecutorial

19   discretion to dismiss cases under certain circumstances and where appropriate, to find no reason to

20   believe that a violation occurred.

21         The Office of General Counsel has scored MUR 7329 as a low-rated matter and has

22   determined that it should not be referred to the Alternative Dispute Resolution Office.[1] For the

23   reasons set forth below, we recommend that the Commission dismiss the allegations that VIGOP

24   (Virgin Island Republican Party) and Scott B. Mackenzie, in his official capacity as treasurer (the

25   "Committee"),[2] violated the Act or Commission regulations.

---

[1]    The EPS rating information is as follows:       . Complaint Filed: February 23, 2018. Response Filed: March 16, 2018.

[2]    For purposes of this Report, the term "Committee" refers to VIGOP's federal reporting account, while the state account is referred to as the "Territorial Committee."

1    The Complaint notes that on March 30, 2017, Secretary of the U.S. Department of the Interior

2    Ryan Zinke appeared at a fundraiser hosted by the Committee.[3] The Complaint alleges that although

3    the Committee disclosed disbursements for expenses related to the event, its reports have not

4    disclosed any related contributions.[4]

5    Respondents assert that the fundraiser did not violate the Act or Commission regulations

6    because it was a nonfederal event for the benefit of the Territorial Committee, the contributions were

7    deposited into a Territorial Committee bank account, and they were disclosed to the Virgin Islands

8    Election System.[5] Respondents also state that the Committee made disbursements related to the

9    fundraiser in the amount of $1,982.69, which were in accordance with Commission regulations.[6]

10    Political committees are required to file reports of receipts and disbursements with the

11    Commission, including itemizing contributions to the reporting committee from persons whose

12    contribution or contributions have an aggregate amount or value in excess of $200 within the

---

[3]    Compl. at 1 (Feb. 23, 2018). According to the Complaint, tickets to the event ranged between $75 for an individual to $5,000 for a couple, and attendees who contributed a minimum of $1,500 would receive a picture with Zinke. *Id.* at 2-3.

[4]    *Id.* at 3. The Complaint also alleges that the VIGOP Territorial Committee has not reported any contributions for the March 30, 2017, event to the Virgin Islands Election System, nor has it ever filed any reports with the Virgin Islands Election System. *Id.* at 2, 6. Respondents deny these allegations and assert that they disclosed the contributions to the event as required to the Virgin Islands Election System. Resp. at 1 (Mar. 14, 2018). Available information indicates that VIGOP reported some financial information to the Virgin Islands Election System, including two May 26, 2017, deposits to a bank account that totaled $10,115.96, but we cannot tell if these deposits relate to the March 30, 2017, fundraiser. The allegations concerning Territorial campaign finance reporting fall outside the Commission's jurisdiction, so we do not address them here. We note that the Complaint is also addressed to the Supervisor of the Virgin Islands Election System and the U.S. Attorney General for the Virgin Islands.

[5]    Resp. at 1-2. Respondents state that the contributions received at the event were deposited to a Territorial bank account, not in the VIGOP's federal bank accounts, therefore the Committee did not report any contributions from the event to the Commission on its disclosure reports. *Id.* at 1.

[6]    *See* 11 C.F.R. § 106.6(d) (direct fundraising costs may be paid by a combination of federal and nonfederal funds). The Response cites 11 C.F.R. § 106.7(d)(4), which applies to fundraising costs paid by state party committees using a combination of federal and nonfederal funds. Resp. at 2. We note, however, the Commission has not recognized VIGOP as a state party committee. The Complaint does not allege the Committee violated 11 C.F.R. §§ 106.6(d) or 106.7(d)(4).

Dismissal and Case Closure Under EPS — MUR 7329 (VIGOP (Virgin Islands Republican Party)
General Counsel's Report
Page 3

1   calendar year.[7]  Political committees are also required to report and itemize expenditures in an

2   aggregate amount or value in excess of $200 within the calendar year made to meet the committee's

3   operating expenses.[8]

4         In light of the Respondents' statements and the lack of contrary information, and in

5   furtherance of the Commission's priorities relative to other matters pending on the Enforcement

6   docket, the Office of General Counsel recommends that the Commission exercise its prosecutorial

7   discretion and dismiss the allegations against VIGOP (Virgin Island Republican Party) and Scott B.

8   Mackenzie, in his official capacity as treasurer, pursuant to *Heckler v. Chaney*, 470 U.S. 821, 831-32

9   (1985).  Finally, we recommend that the Commission approve the attached Factual and Legal

10  Analysis, close the file as to all Respondents, and send the appropriate letters.

11

---

[7]   52 U.S.C. § 30104(a), (b)(2)(A), (b)(3)(A), (b)(4)(A), (b)(5)(A); 11 C.F.R. § 104.3(2)(i)(A), (4)(i).

[8]   52 U.S.C. § 30104(b)(4)(A), (b)(5)(A); 11 C.F.R. § 104.3(3)(i).



**FEDERAL ELECTION COMMISSION**
WASHINGTON, D.C. 20463

## VIA CERTIFIED MAIL
## RETURN RECEIPT REQUESTED

Brendan M. Fischer
Campaign Legal Center
1411 K Street, NW, Suite 1400
Washington, DC 20005

**NOV 2 1 2018**

RE:   MUR 7329

Dear Mr. Fischer:

The Federal Election Commission has considered the allegations in your complaint dated February 22, 2018, but there was an insufficient number of votes to find reason to believe the Virgin Island Republican Party-Federal and Scott Mackenzie, in his official capacity as treasurer, violated the Federal Election Campaign Act of 1971, as amended, and an insufficient number of votes to exercise its prosecutorial discretion to dismiss the allegations as to the Virgin Island Republican Party-Federal and Scott Mackenzie, in his official capacity as treasurer. Accordingly, on November 14, 2018, the Commission closed the file in this matter.

Documents related to the case will be placed on the public record within 30 days. *See* Disclosure of Certain Documents in Enforcement and Other Matters, 81 Fed. Reg. 50,702 (Aug. 2, 2016), effective September 1, 2016.

The Federal Election Campaign Act of 1971, as amended, allows a complainant to seek judicial review of the Commission's dismissal of this action. *See* 52 U.S.C. § 30109(a)(8). If you have any questions, please contact the attorney assigned to this matter, Don Campbell, at (202) 694-1650.

Sincerely,

Lisa J. Stevenson
Acting General Counsel

BY:   Jeff S. Jordan
Assistant General Counsel

Enclosure
General Counsel's Report

Dismissal and Case Closure Under EPS — MUR 7329 (VIGOP (Virgin Islands Republican Party)
General Counsel's Report
Page 4

1 ## RECOMMENDATIONS

2  1. Dismiss the allegations that VIGOP (Virgin Island Republican Party) and Scott B.
3     Mackenzie, in his official capacity as treasurer, violated the Act and Commission
4     regulations, pursuant to the Commission's prosecutorial discretion under *Heckler*
5     *v. Chaney*, 470 U.S. 821, 831-32 (1985);
6
7  2. Approve the attached Factual and Legal Analysis and the appropriate letter; and
8
9  3. Close the file as to all Respondents.
10
11
12                                    Lisa J. Stevenson
13                                    Acting General Counsel
14
15
16                                    Kathleen M. Guith
17                                    Associate General Counsel
18
19
20   _7.12.18_          BY:   _Stephen Gura_
21   Date                     Stephen Gura
22                            Deputy Associate General Counsel
23
24
25
26                            Jeff S. Jordan
27                            Assistant General Counsel
28
29
30
31                            Donald E. Campbell
32                            Attorney
33

35



**Federal Election Commission**
**Washington, DC 20463**

July 21, 2016

Scott B. MacKenzie, Treasurer
Conservative Majority Fund
2776 S. Arlington Mill Dr. #806
Arlington, VA 22206

Re:    ADR 787 (RAD 15L-44)
       Conservative Majority Fund and Scott B. MacKenzie, Treasurer

Dear Mr. MacKenzie:

Enclosed is the signed copy of the Negotiated Settlement resolving the referral
initiated on December 3, 2015, by the Federal Election Commission
("FEC/Commission") involving above-shown Respondents. The Negotiated Settlement
was approved by the Commission on July 12, 2016 – the effective date of the
agreement.

Note the specific time frames for compliance in Paragraph 6 of the agreement.
**Please forward to this office, a statement confirming Respondent's compliance
with the terms listed in the aforementioned agreement.** The letter should note the
dates on which Respondents satisfied each of the terms listed in **Paragraph 6**, and
contain the ADR caption and case number. **The civil penalty payment should be sent
to the attention of the Accounting/Finance Office of the FEC.  The civil penalty
under the agreement is due on or before August 11, 2016.**[1]  **Please put the ADR
case number on the civil penalty check as well, to ensure crediting to the correct
case.**

As you are aware, the Negotiated Settlement will be made part of the record that
is released to the public. The Commission will also place on the record copies of the
complaint/referral, correspondence exchanged between your office and this office prior
to our negotiations, and reports prepared for the Commission by this office to assist in
its consideration of this matter. The Commission is obliged by Federal statute to place
on the public record documents in closed enforcement and alternative dispute resolution
cases; accordingly, copies of documents relative to this matter will be forwarded shortly
to the FEC's Public Information Office.

---

[1] Please note, if the Commission refers an unpaid civil penalty to the US Treasury or third party collection
agent, additional costs and fees will be assessed.

FEDERAL ELECTION COMMISSION -- ALTERNATIVE DISPUTE RESOLUTION OFFICE
999 E STREET, N.W., WASHINGTON, D.C. 20463
TELEPHONE: 202.694.1661 FAX: 202.219.0613

 

This agreement resolves the matter that was initiated by the Commission pursuant to information ascertained in the normal course of carrying out its supervisory responsibilities regarding violations of federal election campaign laws. I appreciate your assistance in effectively resolving this matter and bringing the case to a mutually acceptable conclusion.

Sincerely,

Krista J. Roche
Assistant Director
Alternative Dispute Resolution Office

Enc: Negotiated Settlement

cc: Gwendolyn Holmes, Finance and Accounting Office



**Federal Election Commission**
**Washington, DC 20463**

Case Number: ADR 787
Source: RAD 15L-44
Case Name: Conservative Majority Fund

### NEGOTIATED SETTLEMENT

This matter was initiated by the Federal Election Commission (Commission) pursuant to information ascertained in the normal course of carrying out its supervisory responsibilities. Following review of the matter, and in an effort to promote compliance with the Federal Election Campaign Act of 1971, as amended, (FECA) and resolve this matter, the Commission entered into negotiations with Scott Mackenzie representing the Conservative Majority Fund and Scott Mackenzie, in his official capacity as Treasurer (the Committee or Respondents). It is understood that this agreement will have no precedential value relative to any other matters coming before the Commission.

Negotiations between the Commission and Respondents addressed the issues raised in this referral. The parties agree to resolve the matter according to the following terms:

1. The Commission entered into this agreement as part of its responsibility for administering the FECA, and in an effort to promote compliance on the part of Respondents. The Commission's use of alternative dispute resolution procedures (ADR) is guided by "The Administrative Dispute Resolution Act of 1996," 5 U.S.C. § 572 and is an extension of 52 U.S.C. § 30109.

2. Respondents voluntarily enter into this agreement with the Commission.

3. The Reports Analysis Division (RAD) referred the Respondents for the cumulative nature of deficiencies on reports filed with the Commission in the 2013-2014 election cycle which disclosed the Committee was not in substantial compliance with the FECA.

4. A political committee may be referred if, after an internal review of reports filed by the committee, the Commission determines the reports do not meet the threshold requirements for substantial compliance with the FECA. 52 U.S.C. § 30109.

5. Respondents contend there were reporting challenges during the 2014 election cycle. Respondents further contend that the Committee made significant procedural changes to ensure future compliance, including retaining additional personnel to assist in filing reports and responding to RFAI's.

ADR 787 (RAD 15L-44)
Page 1

6. Respondents, in an effort to avoid similar errors in the future, agree to: (a) certify that a representative of the Committee participated in an FEC conference, webinar, or other program developed in consultation with the FEC's Information Division within twelve (12) months of the effective date of this agreement; (b) amend relevant 2013-2014 reports to address any inadequate responses to requests for additional information from RAD within thirty (30) days of the effective date of this agreement; and (c) pay a civil penalty of $3,500 within thirty (30) days of the effective date of this agreement.

7. Respondents agree that all information provided to resolve this matter is true and accurate to the best of their knowledge and that they sign this agreement under penalty of perjury pursuant to 28 U.S.C. § 1746.

8. The parties agree that if Respondents fail to comply with the terms of this settlement, the Commission may submit any unpaid civil penalty to the U.S. Treasury for collection or undertake civil action in the U.S. District Court for the District of Columbia to secure compliance.

9. This agreement shall become effective on the date signed by all parties and approved by the Commission. Respondents shall comply with the terms of this agreement as set out in paragraph 6 above, and shall certify compliance with the above settlement terms in writing to the Alternative Dispute Resolution Office on or before the date each term becomes due.

10. This Negotiated Settlement constitutes the entire agreement between the parties on ADR 787 (RAD 15L-44), and resolves those issues identified in paragraph 3 above. No other statement, promise or agreement, either written or oral, made by either party, not included herein, shall be enforceable.

FOR THE COMMISSION:

Krista J. Roche, Assistant Director
Alternative Dispute Resolution Office

7/12/16
Date Signed

FOR THE RESPONDENTS:

April 20, 2016
Date Signed

Scott Mackenzie
Representing Conservative Majority Fund and
Scott Mackenzie, Treasurer

ADR 787 (RAD 15L-44)
Page 2

 FEDERAL ELECTION COMMISSION
WASHINGTON, D.C. 20463

Scott B. MacKenzie, Treasurer
Afghanistan & Iraq Veterans for Congress PAC
2776 South Arlington Mill Drive #806
Arlington, VA 22206

**SEP 2 9 2015**

Re:    MUR 6964

Dear Mr. MacKenzie:

In the normal course of carrying out its supervisory responsibilities, the Federal Election
Commission (the "Commission") became aware of information suggesting that Afghanistan and
Iraq Veterans for Congress PAC (the "Committee") and you, in your official capacity as
treasurer, may have violated the Federal Election Campaign Act of 1971, as amended (the
"Act"). On September 15, 2015, the Commission found reason to believe that the Committee
and you, in your official capacity as treasurer, violated 52 U.S.C. § 30104(b) (formerly 2 U.S.C.
§ 434(b)), a provision of the Act. Enclosed is the Factual and Legal Analysis that sets forth the
basis for the Commission's determination.

We have also enclosed a brief description of the Commission's procedures for handling
possible violations of the Act. In addition, please note that you have a legal obligation to
preserve all documents, records and materials relating to this matter until such time as you are
notified that the Commission has closed its file in this matter. *See* 18 U.S.C. § 1519. This matter
will remain confidential in accordance with 52 U.S.C. § 30109(a)(4)(B) and § 30109(a)(12)(A),
unless you notify the Commission in writing that you wish the matter to be made public. Please
be advised that, although the Commission cannot disclose information regarding an investigation
to the public, it may share information on a confidential basis with other law enforcement
agencies.[1]

---

[1]      The Commission has the statutory authority to refer knowing and willful violations of the Act to the
Department of Justice for potential criminal prosecution, 52 U.S.C. § 30109(a)(5)(C), and to report information
regarding violations of law not within its jurisdiction to appropriate law enforcement authorities. *Id.* § 30107(a)(9).

MUR 6964 (Afghanistan & Iraq Veterans for Congress PAC)
Page 2

If you are interested in engaging in pre-probable cause conciliation, please contact Kamau Philbert, the attorney assigned to this matter, at (202) 694-1650 or (800) 424-9530, within seven days of receipt of this letter. During conciliation, you may submit any factual or legal materials that you believe are relevant to the resolution of this matter. Because the Commission only enters into pre-probable cause conciliation in matters that it believes have a reasonable opportunity for settlement, we may proceed to the next step in the enforcement process if a mutually acceptable conciliation agreement cannot be reached within sixty days. *See* 52 U.S.C. § 30109(a), 11 C.F.R. Part 111 (Subpart A). Conversely, if you are not interested in pre-probable cause conciliation, the Commission may conduct formal discovery in this matter or proceed to the next step in the enforcement process. Please note that once the Commission enters the next step in the enforcement process, it may decline to engage in further settlement discussions until after making a probable cause finding.

If you intend to be represented by counsel in this matter, please advise the Commission by completing the enclosed Designation of Counsel form stating the name, address, and telephone number of such counsel, and authorizing such counsel to receive any notifications and other communications from the Commission.

We look forward to your response.

On behalf of the Commission,

Ann M. Ravel
Chair

Enclosures
Factual and Legal Analysis

1          **FEDERAL ELECTION COMMISSION**

2          **FACTUAL AND LEGAL ANALYSIS**

3                                                                   MUR 6964
4
5     RESPONDENTS:            Afghanistan and Iraq Veterans
6                             for Congress PAC and Scott B. Mackenzie
7                             in his official capacity as treasurer
8
9     **I.     INTRODUCTION**

10          This matter was generated based on information ascertained by the Federal Election

11    Commission (the "Commission") in the normal course of carrying out its supervisory

12    responsibilities, *see* 52 U.S.C. § 30109(a). The Alternative Dispute Resolution Office

13    ("ADRO") referred Afghanistan and Iraq Veterans for Congress PAC and Scott B. Mackenzie in

14    his official capacity as treasurer (the "Committee") to the Office of General Counsel ("OGC")

15    for failing to disclose receipts totaling $109,566.25 and disbursements totaling $132,979.21 on

16    its original 2012 30-Day Post-General Report. The Committee has not responded to the referral.

17    Based on the available information, the Commission has determined to open a matter under

18    review ("MUR") and find reason to believe that the Committee violated 52 U.S.C. § 30104(b)

19    (formerly 2 U.S.C. § 434(b)) by failing to accurately disclose receipts and disbursements.

20    **II.    FACTS**

21          The Committee is a multicandidate political committee registered with the Commission.

22    *See* Statement of Organization (Apr. 5, 2014). On December 6, 2012, the Committee timely

23    filed its 2012 30-Day Post-General Report covering the period from October 18, 2012, through

24    November 26, 2012. The report disclosed no receipts and total disbursements of $25,000.00.

25    *See* Committee 2012 30-Day Post-General Report (Dec. 6, 2012).[1]  On July 9, 2013, the

---

[1]      http://docquery.fec.gov/pdf/356/12962896356/12962896356.pdf.

MUR 6964 (Afghanistan and Iraq Veterans for Congress PAC)
Factual and Legal Analysis
Page 2 of 3

1  Committee filed an Amended 2012 30-Day Post-General Report that disclosed an additional

2  $109,566.25 in receipts and $132,979.21 in disbursements. *See* Committee 2012 Amended

3  30-Day Post-General Report (July 9, 2013).[2]

4      On October 29, 2013, the Reports Analysis Division ("RAD") sent the Committee a

5  Request for Additional Information ("RFAI") regarding the additional receipts and

6  disbursements disclosed on the Amended 2012 30-Day Post-General Report.[3] In a follow-up

7  telephone call on November 18, 2013, a RAD Analyst spoke with a Committee representative

8  who handled the Committee's filings regarding the RFAI. During the conversation, the Analyst

9  told the representative that the increased activity could be referred to the Commission for further

10  action. The Committee did not respond to the RFAI.

11      RAD referred the Committee to ADRO for failing to disclose receipts totaling

12  $109,566.25 and disbursements totaling $132,979.21 on its original 2012 30-Day Post-General

13  Report. The Committee did not respond to ADRO's offer to participate in the ADR process, and

14  ADRO referred the matter to OGC. *See Guidebook for Complainants and Respondents on the*

15  *FEC Enforcement Process* at 23 (May 2012) (matter may be referred to OGC where respondent

16  fails to respond to ADRO's invitation). OGC notified the Committee of the referral on October

17  15, 2014. The Committee did not respond to the referral.

---

[2]   http://docquery.fec.gov/pdf/658/13964009658/13964009658.pdf.

[3]   http://docquery.fec.gov/pdf/986/13330038986/13330038986.pdf. RAD originally sent the RFAI to the
Committee on September 19, 2013, but it was removed from the public record due to the October 2013 government
shutdown. RAD resent the RFAI to the Committee on October 29, 2013. The revised response date was
December 3, 2013. *Id.*

MUR 6964 (Afghanistan and Iraq Veterans for Congress PAC)
Factual and Legal Analysis
Page 3 of 3

1   **III.   LEGAL ANALYSIS**

2        The Federal Election Campaign Act of 1971, as amended (the "Act") requires committee

3   treasurers to file reports of receipts and disbursements in accordance with the provisions of

4   52 U.S.C. § 30104 (formerly 2 U.S.C. § 434). *See* 52 U.S.C. § 30104(a)(1); 11 C.F.R.

5   § 104.1(a). These reports must include, *inter alia,* the total amount of receipts and

6   disbursements, including the appropriate itemizations, where required. *See* 52 U.S.C.

7   § 30104(b); 11 C.F.R. § 104.3(a)-(b).

8        Here, the Committee did not comply with the Act's reporting requirements when it failed

9   to disclose receipts totaling $109,566.25 and disbursements totaling $132,979.21 on its original

10  2012 30-Day Post-General Report. Therefore, the Commission has determined to find reason to

11  believe that Afghanistan and Iraq Veterans for Congress PAC and Scott B. Mackenzie in his

12  official capacity as treasurer violated 52 U.S.C. § 30104(b) (formerly 2 U.S.C. § 434(b)).



RQ-2

FEDERAL ELECTION COMMISSION
WASHINGTON, D.C. 20463

April 19, 2015

SCOTT B. MACKENZIE, TREASURER
FREEDOM'S DEFENSE FUND
2776 S ARLINGTON MILL DR, #806
ARLINGTON, VA 22206

**Response Due Date**
**05/26/2015**

IDENTIFICATION NUMBER: C00401786

REFERENCE: 30 DAY POST-GENERAL REPORT (10/16/2014 - 11/24/2014)

Dear Treasurer:

This letter is prompted by the Commission's preliminary review of the report referenced above. This notice requests information essential to full public disclosure of your federal election campaign finances. **Failure to adequately respond by the response date noted above could result in an audit or enforcement action**. Additional information is needed for the following **2** item(s):

**1.** Schedule A of your report (see attached) discloses one or more contributions which appear to exceed the limits set forth in the Act. Please be advised that 52 U.S.C. §30116(f) (formerly 2 U.S.C. §441a(f)) and 11 CFR §§110.1(d) and 110.2(d) prohibit a committee and its affiliates from receiving any contribution from another political committee or person in excess of $5,000 per calendar year.

If any apparently excessive contribution in question was incompletely or incorrectly disclosed, you must amend your original report with the clarifying information.

If any contribution you received exceeds the limits, you may have to refund the excessive amount. The funds can be retained if within 60 days of receipt, (1) the excessive amount was properly reattributed to another person, such as a joint account holder, by obtaining signed written authorizations from each person making the contribution pursuant to 11 CFR 110.1(k)(3), and (2) the treasurer informs the person making the contribution that he or she may request the return of the excessive portion of the contribution if it is not intended to be a joint contribution. Any request from a donor for a refund must be honored.

Alternatively, the funds can be retained if within 60 days of receipt you (1) transferred the excessive amount to an account not used to influence federal

FREEDOM'S DEFENSE FUND

Page 2 of 3

elections, and (2) provided written notice to the person making the contribution of the option of receiving a refund. Any request from a donor for a refund must be honored.

If the foregoing conditions for reattributions or transfers to a non-federal account were not met within 60 days of receipt, the excessive amount must be refunded.

Please inform the Commission of your corrective action promptly in writing and provide a photocopy of your check for any transfer-out or refund. In addition, any reattributions should be reported as memo entries on Schedule A of the report covering the period during which the authorization for the reattribution is received. Any transfers-out or refunds should be disclosed on Schedule B supporting Line 22 or 28 of the report during which the transaction was made.

Although the Commission may take further legal action regarding the acceptance of an excessive contribution(s), prompt action by your committee to seek reattribution, transfer-out or refund the excessive amount will be taken into consideration.

**2.** Schedule B of your report (see attached) discloses one or more contributions which appear to exceed the limits set forth in the Act. Please be advised that 52 U.S.C. §30116(a) (formerly 2 U.S.C. §441a(a)) prohibits a multicandidate committee and its affiliates from making a contribution to a candidate for federal office in excess of $5,000 per election.

If any apparently excessive contribution in question was incompletely or incorrectly disclosed, you should amend your original report with clarifying information.

If any contribution you made exceeds the limits, you must request a refund of the excessive amount or provide a written authorization for a redesignation of the contribution pursuant to 11 CFR §110.2(b) within 60 days of the treasurer's receipt.

If the foregoing conditions for redesignations were not met within 60 days of the treasurer's receipt, your committee must obtain a refund of the excessive amount.

Please inform the Commission of your corrective action promptly in writing

FREEDOM'S DEFENSE FUND

Page 3 of 3

and provide a photocopy of the refund or redesignation request sent to the recipient committee(s). In addition, any refunds should be disclosed on Schedule A supporting Line 16 of the report covering the period during which they are received. Any redesignations should be disclosed as memo entries on Schedule B supporting Line 23 of the report covering the period during which the redesignation is made. (11 CFR §110.1(b))

Although the Commission may take further legal action regarding the excessive contribution(s), your prompt action in obtaining a refund and/or redesignating the contribution(s) will be taken into consideration. (11 CFR §103.3(b)(1) and (3))

**Please note, you will not receive an additional notice from the Commission on this matter.** Adequate responses must be received by the Commission on or before the due date noted above to be taken into consideration in determining whether audit action will be initiated. Failure to comply with the provisions of the Act may also result in an enforcement action against the committee. Any response submitted by your committee will be placed on the public record and will be considered by the Commission prior to taking enforcement action. **Requests for extensions of time in which to respond will not be considered**.

Electronic filers must file amendments (to include statements, designations and reports) in an electronic format and must submit an amended report in its entirety, rather than just those portions of the report that are being amended. If you should have any questions regarding this matter or wish to verify the adequacy of your response, please contact me on our toll-free number (800) 424-9530 (at the prompt press 5 to reach the Reports Analysis Division) or my local number (202) 694-1393.

Sincerely,

*Paul R. Stoetzer*

Paul Stoetzer
Senior Campaign Finance Analyst
Reports Analysis Division

320

**Excessive, Prohibited, and Impermissible Contributions**
**Freedom's Defense Fund (C00401786)**

**Excessive Contributions from Individuals**

| Contributor Name | Date | Amount | Report |
|---|---|---|---|
| CAPT TATNALL LEA HILLMAN 816 | 3/17/14 | $5,000.00 | 2014 April Quarterly Report |
| CAPT TATNALL LEA HILLMAN 816 USNR (RET. | 10/23/14 | $5,000.00 | 2014 30 Day Post-General Report |

**Excessive Contributions to a Committee/Candidate Committee**

| Recipient Name | Date | Amount | Election | Report |
|---|---|---|---|---|
| DR CHARLES 'TREY' THOMAS III FOR CONGRESS | 8/1/14 | $3,500.00 | G2014 | 2014 October Quarterly |
| DR CHARLES 'TREY' THOMAS III FOR CONGRESS | 9/1/14 | $2,500.00 | G2014 | 2014 October Quarterly |
| DR CHARLES 'TREY' THOMAS III FOR CONGRESS | 10/16/14 | $2,500.00 | G2014 | 2014 30 Day Post-General Report |
| | | | | |
| CLINT DIDIER FOR CONGRESS | 7/30/14 | $2,500.00 | G2014 | 2014 October Quarterly Report |
| CLINT DIDIER FOR CONGRESS | 9/1/14 | $2,500.00 | G2014 | 2014 October Quarterly Report |
| CLINT DIDIER FOR CONGRESS | 10/22/14 | $2,500.00 | G2014 | 2014 October Quarterly Report |
| | | | | |
| MARILINDA GARCIA FOR CONGRESS | 8/19/14 | $5,000.00 | G2014 | 2014 October Quarterly Report |
| MARLINDA GARCIA | 10/22/14 | $5,000.00 | G2014 | 2014 30 Day Post-General Report |



RQ-2

FEDERAL ELECTION COMMISSION
WASHINGTON, D.C. 20463

May 23, 2013

SCOTT B. MACKENZIE, TREASURER
CONSERVATIVE MAJORITY FUND
2776 S ARLINGTON MILL DR #806 ATTN: SCOTT B MACKENZIE
ARLINGTON, VA  22206

**Response Due Date**

IDENTIFICATION NUMBER: C00524454

**06/27/2013**

REFERENCE: 12 DAY PRE-GENERAL REPORT (10/01/2012 - 10/17/2012)

Dear Treasurer:

This letter is prompted by the Commission's preliminary review of the report(s) referenced above. This notice requests information essential to full public disclosure of your federal election campaign finances. **Failure to adequately respond by the response date noted above could result in an audit or enforcement action.** Additional information is needed for the following **4** item(s):

**1.** Commission Regulations require that a committee discloses the identification of all individuals who contribute in excess of $200 in a calendar year. (11 CFR § 104.3(a)(4)(i)) Identification for an individual is defined as the full name (initials for first or last name are not acceptable), complete mailing address, occupation, and name of employer. (11 CFR § 100.12) Your report discloses contributions from individuals for which the identification is not complete.

The following employer and occupation entries appear on your report and are not considered acceptable: "NONE / SELF EMPLOYED."

You must provide the missing information, or if you are unable to do so, you must demonstrate that "best efforts" have been used to obtain the information. To establish "best efforts," you must provide the Commission with a detailed description of your procedures for requesting the information. Establishing "best efforts" is a three-fold process.

First, your original solicitation must include a clear and conspicuous request for the contributor information and must inform the contributor of the requirements of federal law for the reporting of such information. (11 CFR § 104.7(b)(1)) See 11 CFR § 104.7(b)(1)(B) for examples of acceptable statements regarding the requirements of federal law.

Case 1:19-cr-00309-LO Document 16 Filed 02/18/20 Page 35 of 88 PageID# 311
Image# 13330032215

Second, if the information is not provided, you must make one follow-up, stand alone effort to obtain this information, regardless of whether the contribution(s) was solicited or not. This effort must occur no later than 30 days after receipt of the contribution and may be in the form of a written request or an oral request documented in writing. (11 CFR § 104.7(b)(2)) The requests must:

• clearly ask for the missing information, without soliciting a contribution,
• inform the contributor of the requirements of federal law for the reporting of such information, and
• if the request is written, include a pre-addressed post card or return envelope.

Third, if you receive contributor information after the contribution(s) has been reported, you should either a) file with your next regularly scheduled report, an amended memo Schedule A listing all the contributions for which additional information was received; or b) file on or before your next regularly scheduled reporting date, amendments to the report(s) originally disclosing the contribution(s). (11 CFR § 104.7(b)(4))

Please amend your report to provide the missing information or a detailed description of your procedures for requesting the information. For more information on demonstrating "best efforts," please refer to the Campaign Guide.

**2.** Schedule A of your report (see attached) discloses one or more contributions which appear to exceed the limits set forth in the Act. 2 U.S.C. §441a(f) and 11 CFR §§110.1(d) and 110.2(d) prohibit a committee and its affiliates from receiving any contribution from another political committee or person in excess of $5,000 per calendar year.

If any apparently excessive contribution in question was incompletely or incorrectly disclosed, you must amend your original report with the clarifying information.

If any contribution you received exceeds the limits, you may have to refund the excessive amount. The funds can be retained if within 60 days of receipt, (1) the excessive amount was properly reattributed to another person, such as a joint account holder, by obtaining signed written authorizations from each person making the contribution pursuant to 11 CFR 110.1(k)(3), and (2) the treasurer informs the person making the contribution that he or she may request the return of the excessive portion of the contribution if it is not intended to be

a joint contribution. Any request from a donor for a refund must be honored.

Alternatively, the funds can be retained if within 60 days of receipt you (1) transferred the excessive amount to an account not used to influence federal elections, and (2) provided written notice to the person making the contribution of the option of receiving a refund. Any request from a donor for a refund must be honored.

If the foregoing conditions for reattributions or transfers to a non-federal account were not met within 60 days of receipt, the excessive amount must be refunded.

Please inform the Commission of your corrective action immediately in writing and provide a photocopy of your check for any transfer-out or refund. In addition, any reattributions should be reported as memo entries on Schedule A of the report covering the period during which the authorization for the reattribution is received. Any transfers-out or refunds should be disclosed on Schedule B supporting Line 22 or 28 of the report during which the transaction was made.

Although the Commission may take further legal action regarding the acceptance of an excessive contribution(s), prompt action by your committee to seek reattribution, transfer-out or refund the excessive amount will be taken into consideration.

**3.** Schedule E for Line 24 of your report discloses MEMO entries for apparent independent expenditures made in opposition to "BARAK HUSSEIN OBAMA" during this reporting period. However, a Schedule D supporting Line 10 has not been provided. Please be advised that if a communication is aired in one reporting period and the payment is made in a later reporting period, the independent expenditure should be reported as a memo entry on Schedule E when the communication is publicly disseminated or distributed, and on a Schedule D if it is a reportable debt under 11 CFR §104.11. Subsequently, when the payment for the independent expenditure is made, the report should show a payment on Schedule E and the same payment on Schedule D, if applicable. Please amend your report to clarify this apparent discrepancy. (11 CFR §104.4)

**4.** Schedule E of your report indicates that your committee may have failed to file one or more of the required 48 hour report(s) for independent expenditures (see attached). A political committee must file a 48 hour report with the Federal



RQ-2

FEDERAL ELECTION COMMISSION
WASHINGTON, D.C. 20463

May 23, 2013

SCOTT B. MACKENZIE, TREASURER
CONSERVATIVE MAJORITY FUND
2776 S ARLINGTON MILL DR #806 ATTN: SCOTT B MACKENZIE
ARLINGTON, VA 22206

**Response Due Date**

IDENTIFICATION NUMBER: C00524454

**06/27/2013**

REFERENCE: 12 DAY PRE-GENERAL REPORT (10/01/2012 - 10/17/2012)

Dear Treasurer:

This letter is prompted by the Commission's preliminary review of the report(s) referenced above. This notice requests information essential to full public disclosure of your federal election campaign finances. **Failure to adequately respond by the response date noted above could result in an audit or enforcement action**. Additional information is needed for the following **4** item(s):

**1.** Commission Regulations require that a committee discloses the identification of all individuals who contribute in excess of $200 in a calendar year. (11 CFR § 104.3(a)(4)(i)) Identification for an individual is defined as the full name (initials for first or last name are not acceptable), complete mailing address, occupation, and name of employer. (11 CFR § 100.12) Your report discloses contributions from individuals for which the identification is not complete.

The following employer and occupation entries appear on your report and are not considered acceptable: "NONE / SELF EMPLOYED."

You must provide the missing information, or if you are unable to do so, you must demonstrate that "best efforts" have been used to obtain the information. To establish "best efforts," you must provide the Commission with a detailed description of your procedures for requesting the information. Establishing "best efforts" is a three-fold process.

First, your original solicitation must include a clear and conspicuous request for the contributor information and must inform the contributor of the requirements of federal law for the reporting of such information. (11 CFR § 104.7(b)(1)) See 11 CFR § 104.7(b)(1)(B) for examples of acceptable statements regarding the requirements of federal law.

Case 1:19-cr-00309-LO   Document 16   Filed 02/18/20   Page 38 of 88 PageID# 314

CONSERVATIVE MAJORITY FUND

Page 4 of 5

Election Commission as specified in 11 CFR §104.4(b), within 48 hours of any independent expenditures aggregating $10,000 or more with respect to a given election, made any time during the calendar year up to and including the 20th day before an election. The report must be received by the Commission by 11:59 p.m. on the second day following the date on which independent expenditures that aggregate $10,000 or more are publicly distributed or disseminated. These expenditures must then be fully itemized on Schedule E, or as memo entries on Schedule E and reflected on Schedule D if distributed or disseminated prior to payment, of the next report required to be filed by the committee. Although the Commission may take further action concerning this matter, your prompt response will be taken into consideration. (11 CFR §104.3(b))

-   Schedule B of your report discloses an expenditure(s) for "TELEMARKETING SERVICES." For your information and consideration when preparing future filings,if a portion or all of these expenditures were for public communications (as defined by 11 CFR §100.26) or voter drive activity (under 11 CFR §106.6(b)(2)(i)) containing express advocacy as defined under 11 CFR §100.22, this would constitute an in-kind contribution or an independent expenditure and would be disclosed on a Schedule B or E supporting Line 23 or 24 as appropriate. Public communications and voter drive activity that refer to a clearly identified Federal candidate, but that do not expressly advocate the election or defeat of that candidate would be reported on Schedule B for Line 21(b) of the Detailed Summary Page.

**Please note, you will not receive an additional notice from the Commission on this matter.** Adequate responses must be received by the Commission on or before the due date noted above to be taken into consideration in determining whether audit action will be initiated. Failure to comply with the provisions of the Act may also result in an enforcement action against the committee. Any response submitted by your committee will be placed on the public record and will be considered by the Commission prior to taking enforcement action. **Requests for extensions of time in which to respond will not be considered**.

Electronic filers must file amendments (to include statements, designations and reports) in an electronic format and must submit an amended report in its entirety, rather than just those portions of the report that are being amended. If you should have any questions regarding this matter or wish to verify the adequacy of your response, please contact me on our toll-free number (800) 424-9530 (at the prompt press 5 to reach the Reports Analysis Division) or my local number (202) 694-1147.

CONSERVATIVE MAJORITY FUND

Page 5 of 5

Sincerely,

Maureen Benitz
Sr. Campaign Finance & Reviewing Analyst
Reports Analysis Division

294



**FEDERAL ELECTION COMMISSION**
WASHINGTON, D.C. 20463

**JUL - 9 2012**

Scott B. Mackenzie, Treasurer
Freedom's Defense Fund
2776 S. Arlington Mill Dr., #806
Arlington, VA 22206

　　　　　　　　　RE:　　MUR 6555
　　　　　　　　　　　　Freedom's Defense Fund

Dear Mr. Mackenzie:

　　　　On June 29, 2012, the Federal Election Commission ("Commission") accepted the signed conciliation agreement submitted on behalf of Freedom's Defense Fund and you, in your official capacity as treasurer, in settlement of violations of 2 U.S.C. § 434(b)(6)(6)(B)(iii) and (g), and 11 C.F.R. § 104.4(b) and (c), provisions of the Federal Election Campaign Act of 1971, as amended, and the Commission's regulations. Accordingly, the file has been closed in this matter.

　　　　Documents related to the case will be placed on the public record within 30 days. *See* Statement of Policy Regarding Disclosure of Closed Enforcement and Related Files, 68 Fed. Reg. 70,426 (Dec. 18, 2003) and Statement of Policy Regarding Placing First General Counsel's Reports on the Public Record, 74 Fed. Reg. 66132 (Dec. 14, 2009). Information derived in connection with any conciliation attempt will not become public without the written consent of the respondent and the Commission. *See* 2 U.S.C. § 437g(a)(4)(B).

　　　　Enclosed you will find a copy of the fully executed conciliation agreement for your files. Please note that the civil penalty is due within 30 days of the conciliation agreement's effective date. If you have any questions, please contact me at (202) 694-1650.

　　　　　　　　　　　　　　　Sincerely,

　　　　　　　　　　　　　　　Ana J. Peña-Wallace
　　　　　　　　　　　　　　　Attorney

Enclosure
　Conciliation Agreement

## BEFORE THE FEDERAL ELECTION COMMISSION

FEDERAL ELECTION COMMISSION

2012 JUL -5 PH 1: 25

OFFICE OF GENERAL COUNSEL

In the Matter of )
)
Freedom's Defense Fund and )     MUR 6555
Scott B. Mackenzie, in his official capacity )
as treasurer )

### CONCILIATION AGREEMENT

This matter was initiated by the Federal Election Commission ("Commission"), pursuant to information ascertained in the normal course of carrying out its supervisory responsibilities. The Commission found reason to believe that Freedom's Defense Fund and Scott B. Mackenzie, in his official capacity as treasurer, ("the Committee" or "Respondents") violated 2 U.S.C. § 434(b)(6)(B)(iii) and (g), provisions of the Federal Election Campaign Act of 1971, as amended, ("the Act") and 11 C.F.R. § 104.4(b) and (c), provisions of the Commission's regulations.

NOW, THEREFORE, the Commission and the Respondents, having participated in informal methods of conciliation, prior to a finding of probable cause to believe, do hereby agree as follows:

    I.      The Commission has jurisdiction over Respondents and the subject matter of this proceeding, and this agreement has the effect of an agreement entered pursuant to 2 U.S.C. § 437g(a)(4)(A)(i).

    II.      Respondents have had a reasonable opportunity to demonstrate that no action should be taken in this matter.

    III.      Respondents enter voluntarily into this agreement with the Commission.

    IV.      The pertinent facts in this matter are as follows:

        1.   Freedom's Defense Fund is a political committee within the meaning of

MUR 6555
Freedom's Defense Fund
Conciliation Agreement

2

2 U.S.C. § 431(4), and is not the authorized committee of any candidate.

    2.  Scott B. Mackenzie is the Committee's treasurer.

    3.  An independent expenditure is an expenditure that expressly advocates the election or defeat of a clearly identified Federal candidate and that is not made in concert or cooperation with, or at the request or suggestion of, the candidate or his or her committee or agent.  2 U.S.C. § 431(17).  An advertisement contains express advocacy if it uses phrases such as "vote for the President" or "defeat" accompanied by a picture of one or more candidates, or if it contains campaign slogans or individual words, "which in context can have no other reasonable meaning than to urge the election or defeat of one or more clearly identified candidate(s)."  11 C.F.R. § 100.22(a).

    4.  A political committee must disclose on a Schedule E the name of a person who receives any disbursement during the reporting period in an aggregate amount or value in excess of $200 within the calendar year in connection with an independent expenditure by the reporting committee, together with the date, amount, and purpose of any such independent expenditure and a statement which indicates whether such independent expenditure is in support of, or in opposition to, a candidate, as well as the name and office sought by such candidate.  2 U.S.C. § 434(b)(6)(B)(iii); 11 C.F.R. §§ 104.3(b)(3)(vii) and 104.4(a).

    5.  A political committee is also required to maintain records that provide information with sufficient detail so that the reports may be verified.  11 C.F.R. § 104.14(b)(1).

    6.  A political committee that makes or contracts to make independent expenditures aggregating $10,000 or more in connection with a given election at any time during a calendar year up to and including the 20th day before the date of an election shall file a report describing the expenditures within 48 hours.  2 U.S.C. § 434(g)(2)(A) and 11 C.F.R.

§ 104.4(b)(2). These reports, known as 48-Hour Notices, must be filed by the end of the second

day "following the date on which a communication that constitutes an independent expenditure

is publicly distributed or otherwise publicly disseminated." 11 C.F.R. § 104.4(b)(2). The

committee shall file additional reports within 48 hours after each time it makes or contracts to

make independent expenditures aggregating an additional $10,000. *Id.*; 2 U.S.C. § 434(g)(2)(B).

      7. A political committee that makes or contracts to make independent

expenditures aggregating $1,000 or more with a given election after the 20th day, but more than

24 hours before the date of an election, shall file a report describing the expenditures within 24

hours. 2 U.S.C. § 434(g)(1); 11 C.F.R. § 104.4(c). These reports, known as 24-Hour Notices,

must be filed within 24 hours "following the date on which a communication that constitutes an

independent expenditure is publicly distributed or otherwise publicly disseminated." 11 C.F.R.

§ 104.4(c). The committee shall file additional reports within 24 hours after each time it makes

or contracts to make independent expenditures aggregating an additional $1,000. *Id.*; 2 U.S.C.

§ 434(g)(1)(B).

      8. During the 2008 election cycle, the Committee disbursed $62,499 in

connection with a television advertisement entitled "What Murtha Says, Out of Touch" ("Murtha

ad"), which was broadcast in Pennsylvania from September 22, 2008 through November 3, 2008.

The advertisement regards the 2008 Congressional election in the 12th Congressional District of

Pennsylvania and the 2008 Presidential election. The ad contains audio clips of then Presidential

candidate Senator Barack Obama and Congressional candidate Rep. John Murtha making

negative statements about people from Western Pennsylvania and urges viewers, "On election

day, tell Jack Murtha and Barack Obama what we think of them." The ad ends with a verbal and

a printed statement to "Vote Republican," and displays a photograph of candidates John McCain and Sarah Palin.

9. The Murtha ad clearly identifies McCain and Palin by name and is accompanied by a photograph and by the exhortation to "Vote Republican Tuesday November 4th." The ad "provides in effect a specific directive: vote for these pictured candidates. The ad also identifies and advocates the defeat of Rep. John Murtha and then-Presidential candidate Barack Obama. Because the ad contains express advocacy, the Committee was required to report disbursements associated with it as independent expenditures

10. A Commission audit of the Committee's records determined that the Committee made $62,499 in disbursements for the Murtha ad. Of the $62,499 in costs for the ad, the Committee only disclosed $19,001 as independent expenditures. Specifically, the Committee disclosed $19,001 in disbursements on a 24-hour notice filed with the Commission on October 30, 2008 and later on a Schedule E (Itemized Independent Expenditure Form) attached to its 2008 Post-General Election Report filed with the Commission on December 4, 2008.

11. On January 11, 2011, the Committee amended its FEC reports by disclosing additional independent expenditures in the amount of $31,629 on the Schedule E forms included with its 2008 Amended Pre-General, Post-General, and Year-End Reports. Of the $43,498 identified as independent expenditures requiring reporting in amendments, the Committee still failed to disclose $11,869 in these amendments.

12. The Committee failed to file the appropriate 24- or 48-hour notices for any of the $43,498 in independent expenditures. In addition, because the Committee is unable to provide dissemination dates for all of these independent expenditures and failed to maintain

MUR 6555                                      5
Freedom's Defense Fund
Conciliation Agreement

sufficiently detailed documentation in order to associate the ad with the specific invoices, the

number of 24-hour or 48-hour notices that should have been filed is unknown.

   V.  Respondents violated 2 U.S.C. § 434(b)(6)(B)(iii) and (g) and 11 C.F.R.

§ 104.4(b) and (c), by failing to disclose all independent expenditures in reports filed with the

Commission and failing to file appropriate 24-Hour or 48-Hour Notices of Independent

Expenditures.

   VI.  Respondents will take the following actions:

    1. Respondents will pay a civil penalty to the Federal Election Commission in the

amount of Three Thousand Seven Hundred Dollars ($3,700), pursuant to 2 U.S.C.

§ 437g(a)(5)(A).

    2. Respondents will cease and desist from violating § 434(b)(6)(B)(iii) and (g)

and 11 C.F.R. § 104.4(b) and (c).

   VII.  The Commission, on request of anyone filing a complaint under 2 U.S.C.

§ 437g(a)(1) concerning the matters at issue herein or on its own motion, may review compliance

with this agreement.  If the Commission believes that this agreement or any requirement thereof

has been violated, it may institute a civil action for relief in the United States District Court for

the District of Columbia.

   VIII.  This agreement shall become effective as of the date that all parties hereto have

executed same and the Commission has approved the entire agreement.

   IX.  Respondents shall have no more than 30 days from the date this agreement

becomes effective to comply with and implement the requirements contained in this agreement

and to so notify the Commission.

MUR 6555                                      6
Freedom's Defense Fund
Conciliation Agreement

    X.    This Conciliation Agreement constitutes the entire agreement between the parties

on the matters raised herein, and no other statement, promise, or agreement, either written or

oral, made by either party or by agents of either party, that is not contained in this written

agreement shall be enforceable.

FOR THE COMMISSION:

Anthony Herman
General Counsel

BY:

    Daniel A. Petalas               7/9/12
    Associate General Counsel      Date
    for Enforcement

FOR THE RESPONDENTS:

Name: SCOTT B. MACKENZIE
Position: TREASURER             6/10/2012
                             Date

12044314501



FEDERAL ELECTION COMMISSION
WASHINGTON, D.C. 20463

**VIA FIRST CLASS MAIL**                          MAR 1 7 2009

Scott MacKenzie, Treasurer
William Russell for Congress
PO Box 630
Johnstown, PA 15907

                              RE:   MUR 6024

Dear Mr. MacKenzie:

On June 18, 2008, the Federal Election Commission notified, William Russell for
Congress ("Committee") and you, as treasurer, of a complaint alleging violations of certain
sections of the Federal Election Campaign Act of 1971, as amended ("Act"). On March 4, 2009,
based upon the information contained in the complaint, and information provided by the
respondent, the Commission decided to dismiss the complaint and closed its file in this matter.

Based on the information before the Commission, it appears that the Committee may
have violated the disclaimer provisions under 2 U.S.C. § 441d for its failure to affix appropriate
disclaimers. The Commission cautions the Committee and its treasurer to take steps to ensure
that its conduct is in compliance with the Act and Commission regulations.

Documents related to the case will be placed on the public record within 30 days. *See*
Statement of Policy Regarding Disclosure of Closed Enforcement and Related Files, 68 Fed.
Reg. 70,426 (Dec. 18, 2003). A copy of the dispositive General Counsel's Report is enclosed for
your information.

If you have any questions, please contact Frankie D. Hampton, the paralegal assigned to this matter, at (202) 694-1650.

Sincerely,

Thomasenia P. Duncan
General Counsel

BY:   Jeff S. Jordan
Supervisory Attorney
Complaints Examination and
   Legal Administration

Enclosure
  General Counsel's Report

cc:  Lt. Colonel William Russell
     PO Box 630
     Johnstown, PA  15907



**BEFORE THE FEDERAL ELECTION COMMISSION**

RECEIVED
FEDERAL ELECTION
COMMISSION
SECRETARIAT

In the Matter of      )
                       )
Patrick J. Buchanan; Buchanan    )
for President, Inc., and        )
Angela Buchanan, as Treasurer;    )
Matching Funds, Inc., and      )
Scott B. Mackenzie, as President   )

MUR 5045

2000 NOV 16 P 4: 42

**SENSITIVE**

### GENERAL COUNSEL'S REPORT # 2

**I.   ACTIONS RECOMMENDED:**   Take no further action against Matching Funds, Inc., and Scott B. Mackenzie, as President. Take no further action against Buchanan for President, Inc. and Angela Buchanan, as Treasurer, with respect to 2 U.S.C. § 441a(f). Approve pre-probable cause conciliation with Patrick J. Buchanan; Buchanan for President, Inc., and Angela Buchanan, as Treasurer.

**II.   BACKGROUND**

On July 11, 2000, the Commission found reason to believe that Patrick J. Buchanan violated 26 U.S.C. § 9035(a); and Buchanan for President, Inc. and Angela Buchanan, as Treasurer ("Committee"), violated 2 U.S.C. §§ 441a(f), 434(b)(8), and 434(b)(3)(A). The Commission also found reason to believe that Matching Funds, Inc. ("MFI"), and Scott B. Mackenzie, as President, violated 2 U.S.C. § 441a(a). In order to allow this Office the opportunity to analyze the impact of a lawsuit related to the extension of credit issue, filed by Scott Mackenzie against the Committee in Fairfax County, Virginia, the Commission declined at



that time to pursue conciliation with respondents prior to a finding of probable cause to believe in this matter.[1]

Mr. Buchanan and the Committee were notified of the Commission's reason to believe finding on July 21, 2000. On July 31, 2000, Counsel for Mr. Buchanan and the Committee requested an extension of time to respond to the Commission's findings, which was granted until the close of business on August 28, 2000. On August 28, 2000, Counsel requested pre-probable cause conciliation but did not provide a substantive response to the Commission's reason to believe finding. Attachment 1. No response to the Commission's finding has been submitted by Mr. Mackenzie or MFI.[2]

## III.    ANALYSIS

The Office of General Counsel has obtained and analyzed the filings of plaintiffs and defendants in *Scott B. Mackenzie v. Buchanan for President*, No. 185230 (Cir. Va. filed Jan. 6, 2000). A trial by jury is set for November 15, 2000.

In a Second Amended Motion for Judgment filed with the Fairfax County Circuit Court, MFI and Mr. Mackenzie reference the contract signed between MFI and the Committee on June 3, 1995 and the Commission recommendation contained in the Exit Conference Memorandum that the Committee "amend its debts and obligations schedule to show a debt owed to MFI of $193,835.00." *Second Amended Motion* at 2. MFI states that the Committee "subsequently

---

[1]      In *Scott B. Mackenzie v. Buchanan for President*, No. 185230 (Cir. Va. filed Jan. 6, 2000), plaintiff alleged, among other things, that the Committee breached its contract and failed to pay $150,835 to MFI for services rendered in processing the Committee's matching funds submissions.

[2]      Although the Commission mailed the reason to believe notification to Scott B. Mackenzie's last known mailing address, it was returned as unclaimed on August 17, 2000. Subsequently, on August 24, 2000, Commission investigators delivered the reason to believe notification to Mr. Mackenzie's residence where it was received by a female who identified herself as Mr. Mackenzie's daughter. MFI's response to the notification, due on September 8, 2000, has not been received.

 

accepted the FEC Audit staff's recommendation to show a debt owed to Mackenzie t/a MFI of

$193,835, and thereafter, BFP [the Committee] began reducing the $193,835 debt BFP owed to

Mackenzie t/a MFI by making payments." *Id.* at 3. According to MFI, it is currently owed

$150,835, the Committee having paid $43,000 of the $193,835 debt.[3] Therefore, MFI alleges

breach of contract and seeks to have a Constructive Trust imposed upon $150,835 of the funds of

Buchanan Fund. *Id.* at 4.

In its Answer and Grounds of Defense, the Committee admits it has paid Mr. Mackenzie

but denies it owes him additional monies. *Answer and Grounds of Defense* at para. 8. The

Committee also makes counter-allegations of incompetence, negligence, misappropriation, and

fraud. *Id.* at paras. 7, 29, 31, 35.

That Mr. Mackenzie and MFI filed a lawsuit to collect the debt the Committee owed

suggests that Mr. Mackenzie and MFI did not intend to make a contribution when MFI extended

credit to the Committee. Although there is no documentation available to the Commission, apart

from the MFI invoices,[4] that MFI had attempted to collect amounts due, the suit could indicate

that such attempts were made and that Mr. Mackenzie did not intend to make an unlawful

---

[3]     As of the 1999 Year-End disclosure report, the Committee reported an outstanding debt to MFI in the
amount of $165,835. In its court filings, MFI acknowledges receiving an additional $15,000, thus reducing the
amount of the indebtedness to $150,835. However, the Committee omits any mention of the indebtedness to MFI in
its April 15, 2000 and July 15, 2000 quarterly reports.

[4]     From January 1996 to July 1996, MFI had invoiced the Committee on a monthly basis consistent with the
contractual clause requiring monthly invoicing and payment. However, from August 1996 to April 1997, MFI
apparently did not invoice the Committee for services rendered totaling $183,009. Subsequent to the audit
fieldwork, the Committee provided copies of MFI invoices to the Commission on February 18, 1998, covering the
period from August 1996 to January 1997 in the total amount of $181,252.94. The Audit staff had calculated MFI's
fees for its services at $780,345.72. Prior to the conclusion of fieldwork, MFI had billed the Committee
$597,336.45. According to the auditors, the additional invoices amounting to $181,252.94 were not in the
possession of the Committee and therefore not available for review by Audit staff prior to the end of fieldwork. At
the end of fieldwork conference held on January 29, 1998, Scott Mackenzie told the Audit staff that he had the
invoices for the remaining submissions in his office, but he did not provide any reason why they were never
presented to the Committee.

4

extension of credit at the outset.  The suit constitutes a commercially reasonable attempt to collect a debt.  *See* 11 C.F.R. § 100.7(a)(4).

Accordingly, the Office of General Counsel recommends that the Commission take no further action against Matching Funds, Inc. and Scott B. Mackenzie, as President.  Likewise, the Office of General Counsel recommends that the Commission take no further action against Buchanan for President, Inc. and Angela Buchanan, as Treasurer, with respect to the debt owed to MFI.

## IV.    DISCUSSION OF CONCILIATION PROVISIONS AND CIVIL PENALTY

MUR 5045
General Counsel's Report #2

6

## V.    RECOMMENDATIONS

1.  Take no further action against Matching Funds, Inc. and Scott B. Mackenzie,
    as President.

2.  Take no further action against Buchanan for President, Inc. and Angela
    Buchanan, as Treasurer, with respect to 2 U.S.C. § 441a(f).

3.  Enter into conciliation with Mr. Patrick J. Buchanan prior to a finding of
    probable cause to believe.

4.  Enter into conciliation with Buchanan for President, Inc. and Angela
    Buchanan, as Treasurer, prior to a finding of probable cause to believe with
    respect to 2 U.S.C. §§ 434(b)(8), 434(b)(3)(A).

5.  Approve the attached proposed Conciliation Agreements.

6.  Approve the appropriate letters.

___11/16/00___

Date

Lawrence M. Noble
General Counsel



**FEDERAL ELECTION COMMISSION**
WASHINGTON, D.C. 20463

March 7, 1996

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Tom Hendrickson
Democratic Party of North Carolina
P.O. Box 12196
Raleigh, NC  27605

RE: MUR 4062

Dear Hendrickson:

On September 23, 1994, the Federal Election Commission received your complaint alleging certain violations of the Federal Election Campaign Act of 1971, as amended ("the Act").

After considering the circumstances of this matter, the Commission exercised its prosecutorial discretion to take no action in the matter. This case was evaluated objectively relative to other matters on the Commission's docket. In light of the information on the record, the relative significance of the case, and the amount of time that has elapsed, the Commission determined to close its file in this matter on March 5, 1996. This matter will become part of the public record within 30 days.

The Act allows a complainant to seek judicial review of the Commission's dismissal of this action. See 2 U.S.C. § 437(g)(a)(8).

Sincerely,

Mary L. Taksar

Mary L. Taksar, Attorney
Central Enforcement Docket

*Celebrating the Commission's 20th Anniversary*

YESTERDAY, TODAY AND TOMORROW
DEDICATED TO KEEPING THE PUBLIC INFORMED



**FEDERAL ELECTION COMMISSION**
WASHINGTON, D.C. 20463

February 5, 1991

Campaign for a New Majority (Federal)
Mr. Scott B. MacKenzie, Treasurer
1901 N. Moore St., Suite 900
Arlington, VA 22209

RE: MUR 3193

Dear Mr. MacKenzie:

On January 17, 1991, the Federal Election Commission found that there is reason to believe Campaign for a New Majority (Federal) ("Committee") and you, as treasurer, violated 2 U.S.C. § 441a(f), a provision of the Federal Election Campaign Act of 1971, as amended ("the Act"). The Factual and Legal Analysis, which formed a basis for the Commission's finding, is attached for your information.

Under the Act, you have an opportunity to demonstrate that no action should be taken against the Committee and you, as treasurer. You may submit any factual or legal materials that you believe are relevant to the Commission's consideration of this matter. Please submit such materials to the General Counsel's Office within 15 days of your receipt of this letter. Where appropriate, statements should be submitted under oath.

In the absence of any additional information demonstrating that no further action should be taken against the Committee and you, as treasurer, the Commission may find probable cause to believe that a violation has occurred and proceed with conciliation.

If you are interested in pursuing pre-probable cause conciliation, you should so request in writing. See 11 C.F.R. § 111.18(d). Upon receipt of the request, the Office of the General Counsel will make recommendations to the Commission either proposing an agreement in settlement of the matter or recommending declining that pre-probable cause conciliation be pursued. The Office of the General Counsel may recommend that pre-probable cause conciliation not be entered into at this time so that it may complete its investigation of the matter. Further, the Commission will not entertain requests for pre-probable cause conciliation after briefs on probable cause have been mailed to the respondent.

-2-

Mr. Mackenzie
Page 2

Requests for extensions of time will not be routinely
granted. Requests must be made in writing at least five days
prior to the due date of the response and specific good cause
must be demonstrated. In addition, the Office of the General
Counsel ordinarily will not give extensions beyond 20 days.

If you intend to be represented by counsel in this matter,
please advise the Commission by completing the enclosed form
stating the name, address, and telephone number of such counsel,
and authorizing such counsel to receive any notifications and
other communications from the Commission.

This matter will remain confidential in accordance with
2 U.S.C. §§ 437g(a)(4)(B) and 437g(a)(12)(A), unless you notify
the Commission in writing that you wish the investigation to be
made public.

For your information, we have attached a brief description
of the Commission's procedures for handling possible violations
of the Act. If you have any questions, please contact Todd
Hageman, the staff member assigned to this matter, at (202)
376-5690.

Sincerely,

John Warren McGarry
Chairman

Enclosures
  Factual and Legal Analysis
  Procedures
  Designation of Counsel Form



**FEDERAL ELECTION COMMISSION**
WASHINGTON, D.C 20463

December 12, 1991

John J. Duffy
Piper and Marbury
1200 Nineteenth Street, N.W.
Washington, D.C.  20036-2085

>                    Re: Re: <u>Federal Election Commission v. Campaign</u>
>                        <u>for a New Majority (Federal) et al.,</u> (Pre
>                        Litigation) (formerly MUR 3193)

Dear Mr. Duffy:

This is to notify you that on December 6, 1991, the
Commission voted to accept the signed conciliation agreement you
previously submitted in settlement of the above-captioned matter.
A copy of that agreement, which has now been executed on behalf
of the Commission, is enclosed for your files.

This concludes the Commission's consideration of this matter.
The original signed copy of the conciliation agreement will now
be forwarded, together with other portions of the Commission's
permanent file in MUR 3193, to the Commission's Public Disclosure
Division for placement on the public record.  <u>See</u> 11 C.F.R. §
4.4.  Should you wish to submit any additional legal or factual
materials to be place on the public record, please do so within
ten days.  Such materials should be sent to the Office of the
General Counsel.

Thank you again for your cooperation.  Should you have any
questions, please contact me immediately at 202-219-3400.

>                    Sincerely,

>                    Stephen E. Hershkowitz
>                    Assistant General Cousel

Enclosure.

BEFORE THE FEDERAL ELECTION COMMISSION

In the Matter of                    )
                                    )
Campaign for a New Majority         )          MUR 3193
(Federal) and Scott B.              )
Mackenzie, as treasurer             )

CONCILIATION AGREEMENT

This matter was initiated by the Federal Election
Commission ("Commission"), pursuant to information ascertained
in the normal course of carrying out its supervisory
responsibilities.  The Commission found probable cause to
believe that Campaign for a New Majority and Scott B.
Mackenzie, as treasurer ("Respondents"), violated 2 U.S.C.
§ 441a(f).

NOW, THEREFORE, the Commission and the Respondents,
having duly entered into conciliation pursuant to 2 U.S.C.
§ 437g(a)(4)(A)(i), do hereby agree as follows:

I.      The Commission has jurisdiction over the
Respondents and the subject matter of this proceeding.

II.     Respondents have had a reasonable opportunity to
demonstrate that no action should be taken in this matter.

III.    Respondents enter voluntarily into this agreement
with the Commission.

IV.     The pertinent facts in this matter are as follows:

1.      Campaign for a New Majority (Federal) is a
political committee within the meaning of 2 U.S.C. § 431(4).

2.     Scott B. Mackenzie is the current treasurer of Campaign for a New Majority (Federal). Ms. Bobbie Lake was the treasurer during the time certain of the events referenced herein occurred.

3.     Respondents received excessive contributions from four individuals between January 1987 and June 1988, the excessive portions of which total $18,500.

4.     Respondents received reattributions of $13,500 of the excessive contributions but have not demonstrated that they received reattributions within 60 days of the original receipt of the contributions as required by 11 C.F.R. § 110.1(k)(3).

V.     Respondents accepted excessive contributions from four individuals, the excessive portion of which totals $18,500, in violation of 2 U.S.C. § 441a(f).

VI.     1.     Respondents will pay a civil penalty to the Federal Election Commission in the amount of Four Thousand dollars ($4,000), pursuant to 2 U.S.C. § 437g(a)(5)(A).

2.     Respondents will refund the remaining excessive contributions, which total $5,000.

VIII.     The Commission, on request of anyone filing a complaint under 2 U.S.C. § 437g(a)(1) concerning the matters at issue herein or on its own motion, may review compliance with this agreement. If the Commission believes that this agreement or any requirement thereof has been violated, it may institute a civil action for relief in the United States District Court for the District of Columbia.

-2-

&C 3478

IX.    This agreement shall become effective as of the date that all parties hereto have executed same and the Commission has approved the entire agreement.

X.    Respondents shall have no more than thirty (30) days from the date this agreement becomes effective to comply with and implement the requirements contained in this agreement and to so notify the Commission.

XI.    This Conciliation Agreement constitutes the entire agreement between the parties on the matters raised herein, and no other statement, promise, or agreement, either written or oral, made by either party or by agents of either party, that is not contained in this written agreement shall be enforceable.

FOR THE COMMISSION:

Lawrence M. Noble
General Counsel

BY: _____          Date  12/13/91
Lois G. Lerner
Associate General Counsel

FOR THE RESPONDENTS:

_____          Date  11/15/91
Scott B. MacKenzie
Treasurer

91 NOV 20 AM II: 15
RECEIVED
FEDERAL ELECTION COMMISSION
OFFICE OF GENERAL COUNSEL

-3-

RECEIVED
FEDERAL ELECTION
COMMISSION
OFFICE OF GENERAL
COUNSEL

**BEFORE THE FEDERAL ELECTION COMMISSION** Mar 5  2 03 PM '94

In the Matter of          )
                          )
Jack Kemp for President   )     MUR 3360
and Scott B. Mackenzie,   )
as treasurer              )

### CONCILIATION AGREEMENT

This matter was initiated by the Federal Election
Commission ("Commission"), pursuant to information
ascertained in the normal course of carrying out its
supervisory responsibilities. The Commission found reason to
believe that Jack Kemp for President and Scott B. Mackenzie,
as treasurer ("Respondents") violated 2 U.S.C.
§ 441a(b)(1)(A), 2 U.S.C. § 441a(f), 2 U.S.C. 441b(a),
2 U.S.C. § 434(b), 26 U.S.C. § 9033(a), 26 U.S.C. § 9035(a),
and 11 C.F.R. § 9034.6(b).

NOW, THEREFORE, the Commission and the Respondents,
having participated in informal methods of conciliation,
prior to a finding of probable cause to believe, do hereby
agree as follows:

I. The Commission has jurisdiction over the Respondents and
the subject matter of this proceeding, and this agreement has the
effect of an agreement entered pursuant to 2 U.S.C.
§ 437g(a)(4)(A)(i).

II. Respondents have had a reasonable opportunity to
demonstrate that no action should be taken in this matter.

III. Respondents enter voluntarily into this agreement with the
Commission.

-2-

IV.  The pertinent facts in this matter are as follows:

1.  Jack Kemp for President is a political committee within the meaning of 2 U.S.C. § 431(4), and is the principal campaign committee of Jack Kemp for the 1988 Presidential primary elections.

2.  Scott B. Mackenzie is the treasurer of Jack Kemp for President.

3.  Pursuant to 2 U.S.C. § 441b(a), it is prohibited for political committees to knowingly accept contributions from corporate entities.

4.  Pursuant to 2 U.S.C. § 431(8)(A) and 11 C.F.R. § 100.7(a), 26 U.S.C. § 9032(4) and 11 C.F.R. § 9032.4, a contribution includes any gift, subscription, loan, advance, or deposit of money or anything of value made for purposes of influencing a federal election. "Anything of value" includes in-kind contributions.  11 C.F.R. § 100.7(a)(1)(iii).

5.  Pursuant to 11 C.F.R. § 103.3(b), the treasurer of a political committee is responsible for examining all contributions received for evidence of illegality.  Contributions that present genuine questions as to whether they were made by corporations may, within 10 days of receipt, either be deposited into a campaign depository or returned to the contributor.
11 C.F.R. § 103.3(b)(1).  Pursuant to Section 103.3(b)(1), if any such contribution is deposited, the treasurer shall make his or her best efforts to determine the legality of the contribution. The treasurer shall make at least one written or oral request for evidence of the legality of the contribution.  Such evidence

includes, but is not limited to, a written statement from the contributor explaining why the contribution is legal, or a written statement by the treasurer memorializing an oral communication explaining why the contribution is legal. If the contribution cannot be determined to be legal, the treasurer shall, within 30 days of receipt of the contribution, refund the contribution.

6. Respondents accepted contributions from corporations, totaling $9,685. Of that amount, $2,455 was timely refunded and $6,258 was refunded on an untimely basis.

7. Pursuant to 11 C.F.R. § 114.9(e), a candidate, a candidate's agent, or a person traveling on behalf of a candidate who uses, in connection with a Federal election, an airplane which is owned or leased by a corporation, other than a corporation licensed to offer commercial air services for travel, must reimburse the corporation in advance for the costs involved in such transportation.

8. Respondents used aircraft owned by Braman Management Company from January 4, 1988 to January 9, 1988. Braman Management Company is not licensed to offer commercial air services for travel. Respondents paid Braman Management Company $12,708.50 for the use of the aircraft by check dated January 22, 1988. Respondents failed to reimburse Braman Management Company in advance for the costs of the transportation. Respondents also used aircraft owned by Braman Management Company from February 6, 1988 to February 23, 1988. Respondents paid Braman Management Company $10,000 for the use of the aircraft by check dated February 18, 1988. Respondents failed to reimburse Braman

-4-

Management Company in advance for the costs of the transportation that occurred between February 6-18, 1988. Respondents paid in advance for the use of the aircraft between February 18-23, 1988.

9. Respondents used aircraft owned by Randolph Williams, Inc. and/or L.R.W. Aircraft Sales, Inc., from November 16, 1987, to January 12, 1988. Neither Randolph Williams, Inc., nor L.R.W. Aircraft Sales, Inc., is licensed to offer commercial air services for travel. Respondents failed to reimburse Randolph Williams, Inc., and/or L.R.W. Aircraft Sales, Inc., in advance for the costs of the transportation.

10. 2 U.S.C. § 441a(a)(1)(A) limits to $1,000 per election the amount which any individual, partnership, or political committee which is not a multicandidate committee may contribute to a Federal candidate or his or her authorized committee.

11. Pursuant to 2 U.S.C. § 441a(a)(2)(A), no multicandidate political committee may make contributions to any Federal candidate and his or her authorized political committee with respect to any election for Federal office which, in the aggregate, exceed $5,000.

12. Pursuant to 2 U.S.C. § 441a(f), no political committee may knowingly accept contributions in excess of the limitations established at 2 U.S.C. § 441a(a).

13. Pursuant to 11 C.F.R. § 103.3(b), the treasurer of a political committee shall ascertain whether a contribution, when aggregated with other contributions from the same contributor, exceeds the contribution limitations of 2 U.S.C. § 441a(a). Contributions which exceed the contribution limitations on their

face, and contributions which do not exceed the contribution limitations on their face but which do exceed those limitations when aggregated with other contributions from the same contributor, may either be deposited into a campaign depository or returned to the contributor. If an excessive contribution is deposited, the treasurer may request that the contribution be reattributed in accordance with 11 C.F.R. § 110.1(k)(3).

14. A contribution is considered to be reattributed to another contributor if the treasurer asks the contributor whether the contribution is intended to be a joint contribution by more than one person, informs the contributor that he or she may request the return of the excessive portion of the contribution, and, within sixty days from the date that the contribution is received, the contributor provides the treasurer with a written reattribution of the contribution, signed by each contributor and indicating the amount to be attributed to each contributor if equal attribution is not intended. 11 C.F.R. § 110.1(k)(3)(ii)(A)-(B). If a reattribution is not obtained, then the contribution must be refunded within sixty days from the date of receipt. 11 C.F.R. § 103.3(b)(3). Prior to April 8, 1987, the Commission's regulations required reattributions to be made within a reasonable time.

15. A. Respondents accepted over $700,000 in excessive contributions. Of this amount, approximately $63,000 in contributions have not been refunded or reattributed; $311,274 in contributions were not timely refunded (including $42,843 in contributions which were paid to the U.S. Treasury); $3,450 in

contributions were not timely reattributed; and $334,274 in contributions were reattributed through signed, yet undated letters.

B.  Respondents contend that $54,105 in contributions were received by Victory '88 and were reported as attributed to Jack Kemp for President.  Victory '88 was a joint fundraising agent for several committees, including Jack Kemp for President.  These funds should not have been attributed to Jack Kemp for President but rather to Victory '88.

C.  Pursuant to 2 U.S.C. § 434(b) each treasurer of a political committee shall file reports of receipts and disbursements.  Each such report shall accurately disclose the total amount of all receipts, including transfers from other authorized committees of the same candidate and transfers from affiliated committees.  Respondents, however, have not amended their disclosure reports to reflect the proper attribution of $54,105 to Victory '88.

16.  When an individual, including a campaign staff member, pays for campaign-related expenses from his or her own funds, an in-kind contribution results.  11 C.F.R. § 100.7(a)(1).  Such contributions are considered to have been made at the time the funds are advanced and remain outstanding until the individual has been reimbursed by the committee.

17.  A staff member of Respondent Jack Kemp for President personally reimbursed three other staff members for their travel expenses incurred on behalf of Respondents.  The staff member personally paid $9,680.44 on behalf of Jack Kemp for President, or $8,680.44 in excess of the limitations of 2 U.S.C. § 441a(a)(1)(A).

18.  Pursuant to 2 U.S.C. §§ 441a(b)(1)(A) and 441a(c) and 26 U.S.C. § 9035(a), no candidate for the office of President of the United States, who is eligible under Section 9033 of Title 26 to receive payments from the Secretary of the Treasury, may make expenditures in any one state aggregating in excess of the greater of 16 cents multiplied by the voting age population of the state, or $200,000, as adjusted by changes in the Consumer Price Index. Except for expenditures exempted under 11 C.F.R. § 106.2, expenditures incurred by a candidate's authorized committee or committees for the purpose of influencing the nomination of that candidate for the office of President with respect to a particular state shall be allocated to that state.  11 C.F.R. § 106.2(a)(1).

19.  For the 1988 Presidential primary elections, the expenditure limitation for the State of Iowa was $775,217.60. Respondents exceeded this limitation by $103,728.63.

20.  For the 1988 Presidential primary elections, the expenditure limitation for the State of New Hampshire was $461,000.  Respondents exceeded this limitation by $66,076.67.

21.  Pursuant to 11 C.F.R. § 9034.6(b), if an authorized committee incurs expenditures for transportation made available to media personnel, and if reimbursement for such expenses is

received, the amount of reimbursement for each individual shall
not exceed either: the individual's pro rata share of the actual
cost of the transportation and services made available; or a
reasonable estimate of the individual's pro rata share of the
actual cost of the transportation and services made available.
The pro rata share is calculated by dividing the total number of
individuals to whom such transportation and services are made
available into the total cost of the transportation and services.

22.    Respondents provided travel services to members of the
media and were reimbursed by those members of the media. Rather
than billing the press the pro rata cost of actual transportation
services as required by the Commission's regulation, Respondents
billed the press 150 percent of first class airfare.  Thus,
Respondents failed to follow the prescribed method of calculating
the actual costs of the services they provided to members of the
media. Respondents contend that the amounts they billed the media
for travel services did not meet or exceed the costs the Committee
incurred.

23.    Pursuant to 26 U.S.C. § 9033(a) and 11 C.F.R.
§§ 9033.1(b)(5) and 9033.11, Presidential candidates seeking
Federal funds must agree to keep and furnish to the Commission all
documentation relating to disbursements and receipts including any
books, records and other information that the Commission may
request (including bank records for all accounts), and all
documentation required to be maintained.

24.    Respondents failed to keep and furnish documents requested
by the Commission, including documents pertaining to the

candidate's activities in New Hampshire between December 26, 1987, and January 3, 1988 and documents pertaining to certain staff members present in Iowa and New Hampshire from December, 1987 through February, 1988. Respondents contend that they do not possess the requested documents because the events were not campaign-related. Specifically, Respondents contend that the candidate's appearance in New Hampshire was not campaign-related but rather a family vacation. However, a copy of the itinerary for the vacation showed attendance at a campaign-related luncheon, a meeting with the press, a radio interview, an awards ceremony and a tour of a local factory. Regarding the employees present in Iowa and New Hampshire, Respondents contend that any expenditures incurred were not authorized.

V.  1.  Respondents accepted $7,230 in contributions from corporations, in violation of 2 U.S.C. § 441b(a).

2.  Respondents accepted in-kind contributions from Braman Management Company and Randolph Williams, Inc., and/or L.R.W. Aircraft Sales, Inc., in the form of air transportation, the cost of which was not reimbursed in advance, in violation of 2 U.S.C. § 441b(a).

3.  Respondents accepted over $700,000 in contributions that exceeded the limitations of 2 U.S.C. § 441a(a) in violation of 2 U.S.C. § 441a(f).

4.  Respondents accepted in-kind contributions from a staff member which exceeded the limitation of 2 U.S.C. § 441a(a)(1)(A) by $8,680.44 in violation of 2 U.S.C. § 441a(f).

5.  Respondents exceeded the primary campaign expenditure

-10-

limitations for the states of Iowa and New Hampshire by a total of $103,728.63 and $66,076.67, respectively, in violation of 2 U.S.C. § 441a(b)(1)(A) and 26 U.S.C. § 9035(a).

6. Respondents failed to follow the prescribed method of calculating the actual costs of services they provided to members of the media, in violation of 11 C.F.R. § 9034.6(b).

7. Respondents failed to keep and furnish documents requested by the Commission in violation of 26 U.S.C. § 9033(a).

8. Respondents' disclosure reports inaccurately reflect the circumstances surrounding the receipt and transfer of contributions attributable to Victory '88 in violation of 2 U.S.C. § 434(b).

VI. 1. Respondents will refund excessive contributions totaling $63,000. Such contributions will be refunded either directly to the original contributors or to the U. S. Treasury. Respondents will make these refunds within 120 days of the effective date of this agreement, and will provide evidence to the Commission that all the refunds required under this agreement have been made within the required time frame.

2. Respondents will pay a civil penalty to the Federal Election Commission in the amount of one hundred thousand dollars ($100,000), pursuant to 2 U.S.C. § 437g(a)(5)(A), such penalty to be paid as follows:

a. one initial payment of $20,000 due within 30 days of the effective date of this agreement;

b. the remaining $80,000 of the civil penalty shall be paid within 120 days of the effective date of this agreement; and

c.  in the event that any payment required pursuant to this
agreement is not made within the time provided for within this
agreement, the Commission may, at its discretion, accelerate all
remaining payments and refunds, and cause the entire amount to
become due or payable upon ten days written notice to the
Respondents.

3. Respondents will amend their disclosure reports to
accurately reflect the proper attribution of $54,105 in
contributions to Victory '88.  The amendments shall be filed
within 30 days of the effective date of this agreement.

VII.  The Commission, on request of anyone filing a complaint
under 2 U.S.C. § 437g(a)(1) concerning the matters at issue herein
or on its own motion, may review compliance with this agreement.
If the Commission believes that this agreement or any requirement
thereof has been violated, it may institute a civil action for
relief in the United States District Court for the District of
Columbia.

VIII.  This agreement shall become effective as of the date that
all parties hereto have executed same and the Commission has
approved the entire agreement.

IX.  This Conciliation Agreement constitutes the entire
agreement between the parties on the matters raised herein, and no
other statement, promise, or agreement, either written or oral,

-12-

made by either party or by agents of either party, that is not
contained in this written agreement shall be enforceable.

FOR THE COMMISSION:

Lawrence M. Noble
General Counsel

Date   5-17-94

FOR THE RESPONDENTS:

Scott B. Mackenzie
Treasurer

Date   5/3/94

RECEIVED
FEDERAL ELECTION
COMMISSION
OFFICE OF GENERAL
COUNSEL

MAY 5   2 02 PM '94

## BEFORE THE FEDERAL ELECTION COMMISSION

In the Matter of                          )
                                          )
Victory '88                               )
and Scott B. Mackenzie,                   )        MUR 3360
as treasurer                              )
                                          )
Kemp/Dannemeyer Committee                 )
and Scott B. Mackenzie,                   )
as treasurer                              )

### CONCILIATION AGREEMENT

This matter was initiated by the Federal Election
Commission ("Commission"), pursuant to information
ascertained in the normal course of carrying out its
supervisory responsibilities. The Commission found reason to
believe that Victory '88 and Scott B. Mackenzie, as
treasurer (collectively referred to as "Victory 88"),
violated 2 U.S.C. § 432(c); 2 U.S.C. § 434(b); 2 U.S.C.
§ 441a(f); 2 U.S.C. § 441b(a); and 11 C.F.R. § 9034.8(c)(8).
The Commission also found reason to believe that the
Kemp/Dannemeyer Committee and Scott B. Mackenzie as
treasurer (collectively referred to as the Kemp/Dannemeyer
Committee"), violated 11 C.F.R. §§ 9034.8(c)(3) and (8).
Victory '88 and the Kemp/Danneymeyer Committee are
collectively referred to as "Respondents."

NOW, THEREFORE, the Commission and the Respondents,
having participated in informal methods of conciliation,
prior to a finding of probable cause to believe, do hereby
agree as follows:

-2-

I. The Commission has jurisdiction over the Respondents and the subject matter of this proceeding, and this agreement has the effect of an agreement entered pursuant to 2 U.S.C. § 437g(a)(4)(A)(i).

II. Respondents have had a reasonable opportunity to demonstrate that no action should be taken in this matter.

III. Respondents enter voluntarily into this agreement with the Commission.

IV. The pertinent facts in this matter are as follows:

1. Victory '88 is a political committee within the meaning of 2 U.S.C. § 431(4). It is also a joint fundraising representative under 11 C.F.R. § 102.17(a) and 11 C.F.R. § 9034(b)(1) (1988 ed.) for Jack Kemp for President, Citizens for Jack Kemp, and Campaign for a New Majority f/k/a Campaign for Prosperity, all of which are also political committees within the meaning of 2 U.S.C. § 431(4).

2. The Kemp/Dannemeyer Committee is a political committee within the meaning of 2 U.S.C. § 431(4) and is a joint fundraising representative under 11 C.F.R. § 102.17(a) and 11 C.F.R. § 9034(b)(1) (1988 ed.) for Dannemeyer for Congress and Victory '88, both of which are also political committees within the meaning of 2 U.S.C. § 431(4). In addition, Victory '88 is itself a joint fundraising representative under 11 C.F.R. § 102.17(a) and 11 C.F.R. § 9034(b)(1) for Jack Kemp for President, Citizens for Jack Kemp, and Campaign for a New Majority f/k/a Campaign for Prosperity, all of which are also political committee within the meaning of 2 U.S.C. § 431(4).

-3-

3. Scott B. Mackenzie is the treasurer of Victory '88 and the Kemp/Dannemeyer Committee.

4. Pursuant to 2 U.S.C. § 441b(a), it is prohibited for political committees knowingly to accept contributions from corporations.

5. Pursuant to 2 U.S.C. § 431(8)(A) and 11 C.F.R. § 100.7(a), 26 U.S.C. § 9032(4) and 11 C.F.R. § 9032.4, a contribution includes any gift, subscription, loan, advance, or deposit of money or anything of value made for purposes of influencing a federal election. "Anything of value" includes in-kind contributions. 11 C.F.R. § 100.7(a)(1)(iii).

6. Pursuant to 11 C.F.R. § 103.3(b), the treasurer of a political committee is responsible for examining all contributions received for evidence of illegality. Contributions that present genuine questions as to whether they were made by corporations may, within 10 days of receipt, either be deposited into a campaign depository or returned to the contributor. 11 C.F.R. § 103.3(b)(1). Pursuant to Section 103.3(b)(1), if any such contribution is deposited, the treasurer shall make his or her best efforts to determine the legality of the contribution. The treasurer shall make at least one written or oral request for evidence of the legality of the contribution. Such evidence includes, but is not limited to, a written statement from the contributor explaining why the contribution is legal, or a written statement by the treasurer, memorializing an oral communication explaining why the contribution is legal. If the contribution cannot be determined to be legal, the treasurer shall, within 30

-4-

days of receipt of the contribution, refund the contribution.
Prior to April 7, 1987, evidence of the legality of the
contribution was to be obtained, or a refund made, within a
reasonable time.

7.  Between January 14, 1987, and May 18, 1988, Victory '88
received contributions from corporations, totaling $6,000.

8.  In January, 1988, Victory '88 sponsored a "Super Bowl
Brunch" at a Hilton Hotel in San Diego, California, in connection
with Jack Kemp's 1988 Presidential campaign.  Hilton Hotels
Corporation reduced the amount due for brunch tickets from $16,500
to $10,880.  The reduction in the amount of the bill was a "thing
of value," and Victory '88 thus received an in-kind contribution
from Hilton Hotels Corporation in the amount of $5,620.
Victory '88 contends that a portion of the price reduction was for
brunch tickets the Committee had been allotted by Hilton but had
not used.

9.  Pursuant to 2 U.S.C. § 441a(f), no political committee,
including a fundraising representative, may knowingly accept
contributions in excess of the limitations established at 2 U.S.C.
§ 441a(a).

10.  Pursuant to 11 C.F.R. § 103.3(b), the treasurer of a
political committee shall ascertain whether a contribution, when
aggregated with other contributions from the same contributor,
exceeds the limitations of 2 U.S.C. § 441a(a).  Contributions
which exceed the contribution limitations on their face, and
contributions which do not exceed the contribution limitations on
their face but which do exceed those limitations when aggregated

-5-

with other contributions from the same contributor, may either be
deposited in a campaign depository or returned to the contributor.
If an excessive contribution is deposited, the treasurer may
request that the contribution be reattributed in accordance with
11 C.F.R. § 110.1(k)(3).

11.   A contribution is considered to be reattributed to another
contributor if the treasurer asks the contributor whether the
contribution is intended to be a joint contribution by more than
one person, informs the contributor that he or she may request the
return of the excessive portion of the contribution, and, within
sixty days from the date that the contribution is received, the
contributor provides the treasurer with a written reattribution of
the contribution, signed by each contributor and indicating the
amount to be attributed to each contributor if equal attribution
is not intended.   11 C.F.R. § 110.1(k)(3)(ii)(A)-(B).   If a
reattribution is not obtained, then the contribution must be
refunded within sixty days from the date of receipt.   11 C.F.R.
§ 103.3(b)(3).   Prior to April 8, 1987, reattributions were to be
received or refunds made within a reasonable time.

12.   Victory '88 accepted excessive contributions from
individuals totaling $51,110.   Of that amount, Victory '88
obtained reattributions for $9,000, but there is no evidence they
did so on a timely basis.

13.   Pursuant to 2 U.S.C. § 432(c), the treasurer of a
political committee must keep an account of all contributions
received by or on behalf of such political committee, the name and
address of any person who makes a contribution in excess of $50,

-6-

and the identification of any person who makes a contribution or contributions aggregating more than $200 during the calendar year.

14.    Pursuant to 2 U.S.C. § 434(b)(3)(A), a political committee must disclose on its reports filed with the Commission the identification of all persons who make contributions within a calendar year which in the aggregate exceed $200. The term "identification" means the name, the mailing address, and the occupation of such individual, as well as his or her employer in the case of individuals, and in any other case it means the full name and address. 2 U.S.C. § 431(13); 11 C.F.R. § 104.8(a).

15.    Victory '88 received a $7,825.91 contribution from the Republican Party of Indianapolis, but failed to maintain any record of the contribution and reported it to the Commission as unitemized contributions from individuals.

16.    Between November 5, 1987 and March 31, 1988, Victory '88 received $253,040 in contributions which they did not itemize on their disclosure reports to the Commission. Later in 1988, Victory '88 subsequently itemized these contributions in amended disclosure reports. Victory '88 contends that they amended these reports on their own initiative.

17.    On October 16, 1987, at the Disneyland Hotel in Anaheim, California, the Kemp/Dannemeyer Committee held a joint fundraising event.

18.    The Commission's regulations require that a joint fundraising notice shall be included with every solicitation for contributions, and that it contain the names of all committees participating in the joint fundraising activity, the allocation

-7-

formula to be used for distributing joint fundraising proceeds, a statement informing contributors that, notwithstanding the stated allocation formula, they may designate their contributions for a particular participant, and a statement informing contributors that the allocation formula may change if a contributor makes a contribution which would exceed the amount that the contributor may give to any participant. 11 C.F.R. § 9034.8(c)(3); 11 C.F.R. § 102.17(c)(2).

19. The initial invitation to the October 16, 1987 Anaheim fundraiser stated that contributions were to be divided between Jack Kemp for President and Dannemeyer for Congress. It did not state that contributions would be allocated to Victory '88. It also did not indicate the allocation formula that would be be used and it did not inform contributors that they could designate their contributions, or that the allocation formula might change if a contribution exceeded the amount that the contributor could give to any participant.

20. Respondents sent a follow up letter, dated October 27, 1987, 11 days after the event, that indicated that the contributions for the Anaheim event were to be divided 50-50 between Victory '88 and Dannemeyer for Congress, but did not not inform contributors of the identities of the committees represented by Victory '88, or of the allocation formula used by Victory '88. 32.

21. Pursuant to 11 C.F.R. § 9034.8(c)(8), after the gross proceeds of a joint fundraising activity are allocated among participant committees, the joint fundraising representative shall

-8-

calculate each participant's share of expenses based upon the percentage of total receipts each has been allocated. To calculate each participant's net proceeds, the joint fundraising representative shall subtract the participant's share of expenses from the amount each participant has been allocated from gross proceeds.

22. The Kemp/Dannemeyer Committee disbursed $16,000 to Jack Kemp for President and $20,214.87 to Dannemeyer for Congress. However, the correct allocation of proceeds was $15,314.67 to Jack Kemp for President and $17,438.85 to Dannemeyer for Congress. Thus, Respondents distributed $685.33 in excess to Jack Kemp for President and $2,776.02 in excess to Dannemeyer for Congress.

23. Victory '88 misallocated its net proceeds resulting in improper distributions to Jack Kemp for President, McMaster for Senate, Campaign for a New Majority f/k/a Campaign for Prosperity and Citizens for Jack Kemp.

V. 1. Victory '88 accepted $6,000 in contributions from corporations in violation of 2 U.S.C. § 441b(a).

2. Victory '88 accepted an in-kind contribution from Hilton Hotels Corporation in violation of 2 U.S.C. § 441b(a).

3. Victory '88 accepted contributions from individuals that exceeded the limitation of 2 U.S.C. § 441a(a)(1)(A) by an aggregate of $51,100, in violation of 2 U.S.C. § 441a(f).

4. Victory '88 failed to keep records of a $7,825.91 contribution from the Republican Party of Indianapolis in violation of 2 U.S.C. § 432(c), and reported the contribution as unitemized contributions in violation of 2 U.S.C. § 434(b).

-9-

5. Victory '88 failed to itemize $253,040 in contributions received between November 5, 1987, and March 31, 1988, in violation of 2 U.S.C. § 434(b).

6. Victory '88 made inaccurate distributions of net proceeds to their participating committees in violation of 11 C.F.R. § 9034.8(c)(8).

7. The Kemp/Dannemeyer Committee failed to include the proper notifications for a solicitation to prospective contributors to a joint fundraising event in connection with their invitations to the October 16, 1987 Anaheim fundraiser, in violation of 11 C.F.R. § 9034.8(c)(3).

8. The Kemp/Dannemeyer Committee incorrectly allocated net proceeds to Jack Kemp for President and Dannemeyer for Congress, in violation of 11 C.F.R. § 9034.8(c)(8).

VI. 1. Respondents will refund outstanding excessive and prohibited contributions totaling $48,000. Such contributions will be refunded either directly to the original contributors or to the U. S. Treasury. Respondents will produce evidence to the Commission showing they have made all refunds required under this agreement.

2. Respondents will pay a civil penalty to the Federal Election Commission in the amount of twenty thousand dollars ($20,000), pursuant to 2 U.S.C. § 437g(a)(5)(A).

VII. The Commission, on request of anyone filing a complaint under 2 U.S.C. § 437g(a)(1) concerning the matters at issue herein or on its own motion, may review compliance with this agreement. If the Commission believes that this agreement or any requirement

-10-

thereof has been violated, it may institute a civil action for
relief in the United States District Court for the District of
Columbia.

VIII.  This agreement shall become effective as of the date that
all parties hereto have executed same and the Commission has
approved the entire agreement.

IX.  Respondents shall have no more than 30 days from the date
this agreement becomes effective to comply with and implement the
requirements contained in this agreement and to so notify the
Commission.

X.  This Conciliation Agreement constitutes the entire
agreement between the parties on the matters raised herein, and no
other statement, promise, or agreement, either written or oral,
made by either party or by agents of either party, that is not
contained in this written agreement shall be enforceable.

FOR THE COMMISSION:

Lawrence M. Noble                    5-17-94
General Counsel                      Date

FOR THE RESPONDENTS:

Scott B. Mackenzie,                  5/3/94
Treasurer                            Date

**BEFORE THE FEDERAL ELECTION COMMISSION**

In the Matter of                          )
                                          )   MUR 2415
Reagan-Bush '84 (General                  )
Election Committee)                        )
Scott B. Mackenzie, as treasurer          )

**CONCILIATION AGREEMENT**

This matter was initiated by the Federal Election Commission ("Commission"), pursuant to information ascertained in the normal course of carrying out its supervisory responsibilities. The Commission found probable cause to believe that Reagan-Bush '84 (General Election Committee) and its treasurer ("Respondents") violated 26 U.S.C. § 9003(a) and 11 C.F.R. § 9003.5.

NOW, THEREFORE, the Commission and the Respondents, having duly entered into conciliation pursuant to 2 U.S.C. § 437g(a)(4)(A)(i), do hereby agree as follows:

I.   The Commission has jurisdiction over the Respondents and the subject matter of this proceeding.

II.   Respondents have had a reasonable opportunity to demonstrate that no action should be taken in this matter.

III.   Respondents enter voluntarily into this agreement with the Commission.

IV.   The pertinent facts in this matter are as follows:

1.   Reagan-Bush '84 (General Election Committee) is a political committee within the meaning of 2 U.S.C. § 431(4).

-2-

2. Reagan-Bush '84 (General Election Committee) was the principal campaign committee of Ronald Reagan and George Bush during the 1984 presidential election campaign.

3. Scott B. Mackenzie is the treasurer of Reagan-Bush '84 (General Election Committee).

4. In 1984 Reagan-Bush '84 (General Election Committee) entered into contracts for voter identification and get-out-the-vote services with thirty-nine vendors in twenty-seven States. Some of these vendors were commercial organizations; some were State or local party committees. Certain of the contracts provided that the cost of the voter identification and get-out-the-vote services would be shared with Senatorial and/or Congressional candidate committees, and/or with State party committees or the Republican National Committee.

5. 26 U.S.C. § 9002(11)(A)(ii) defines "qualified campaign expenses" to include expenses incurred by the authorized committee of the candidate of a political party for the Office of President or Vice-President to further the election of either or both such candidates to such offices.

6. 11 C.F.R. § 9003.5(a) places on each candidate the burden of proving that disbursements are qualified campaign expenses.

7. 26 U.S.C. § 9002(11) provides that, if the authorized committee of a candidate also incurs expenses to further the election of one or more other individuals to Federal, State or local office, such expenses which do not specifically further the

-3-

election of another individual shall be considered to further the election of the candidates for President and Vice-President in proportions to be determined by the Commission's regulations.

8. During the 1983-84 election cycle, 11 C.F.R. § 9002(11)(b)(3) provided that any expenditure incurred by a candidate or an authorized committee of the candidate to further the election of any other individual to a Federal, State or local office would be a qualified campaign expense to the extent that such expenditure was to further the candidate's own campaign for election. Expenditures incurred specifically to further the election of other individuals were not to be considered qualified campaign expenses.

9. 11 C.F.R. § 106.1(a) provides that expenditures made on behalf of more than one candidate are to be attributed to each candidate in proportion "to the benefit reasonably expected to be derived."

10. 11 C.F.R. § 9003.5(c) requires candidates to retain records with respect to each disbursement and receipt for a period of three years and to present such records to the Commission upon request.

11. 26 U.S.C. § 9007(a) requires the Commission to conduct "a thorough examination and audit of the qualified campaign expenses of the candidates of each political party for President and Vice-President."

12. The Commission conducted an examination and audit of the books and records of Reagan-Bush '84 (General Election Committee) pursuant to 26 U.S.C. § 9007.

-4-

13.  Part of the examination and audit involved confirmation that the costs of the voter identification and get-out-the-vote programs shared with other committees had been properly allocated.  For this purpose, the Interim Audit Report recommended that the Committee furnish additional documentation which would verify that these programs' allocated costs were qualified campaign expenses.

14.  The Committee did not furnish the additional documentation with regard to the allocation of the costs of the voter identification and get-out-the-vote programs.

V.)  By failing to retain and furnish some of the additional documentation requested, Reagan-Bush '84 (General Election Committee) and Scott B. Mackenzie, as treasurer, violated 11 C.F.R. § 9003.5(c).

VI.  Reagan-Bush '84 will pay a civil penalty to the Federal Election Commission in the amount of Two Thousand Five Hundred Dollars ($2,500.00), pursuant to 2 U.S.C. § 437g(a)(5)(A).

VII.  The Commission, on request of anyone filing a complaint under 2 U.S.C. § 437g(a)(1) concerning the matters at issue herein or on its own motion, may review compliance with this agreement.  If the Commission believes that this agreement or any requirement thereof has been violated, it may institute a civil action for relief in the United States District Court for the District of Columbia.

-5-

VIII.   This agreement shall become effective as of the date that all parties hereto have executed same and the Commission has approved the entire agreement.

IX.   Reagan-Bush '84 shall have no more than thirty (30) days from the date this agreement becomes effective to comply with and implement the requirements contained in this agreement and to so notify the Commission.

X.   This Conciliation Agreement constitutes the entire agreement between the parties on the matters raised herein, and no other statement, promise, or agreement, either written or oral, made by either party or by agents of either party, that is not contained in this written agreement shall be enforceable.

FOR THE COMMISSION:

Lawrence M. Noble
General Counsel

Date   4/26/90

FOR THE RESPONDENTS:

Scott B. Mackenzie
Treasurer

Date   4/12/90

OGC 6336

# PIPER & MARBURY

1200 NINETEENTH STREET, N.W.
WASHINGTON, D.C. 20036
202-861-3900
TELECOPIER 202-223-2085
CABLE PIPERMAR WSH
TELEX 904246

**CLOSED**

JOHN J. DUFFY
DIRECT DIAL NUMBER
202-861-3936

1100 CHARLES CENTER SOUTH
36 SOUTH CHARLES STREET
BALTIMORE, MARYLAND 21201
301-539-2530

**May 25, 1990**

90 MAY 25  PH 4: 14
RECEIVED
FEDERAL ELECTION COMMISSION
OFFICE ... ... COUNSEL

<u>**Hand Delivered**</u>

Anne Weissenborn, Esq.
Federal Election Commission
Office of General Counsel
999 E Street, N.W., 6th Floor
Washington, D.C.  20463

　　　　　Re:　MUR 2415
　　　　　　　Reagan-Bush '84 (General Election Committee)
　　　　　　　and Scott B. Mackenzie, as treasurer

Dear Anne:

　　　　　I enclose, on behalf of Reagan-Bush '84 (General
Election Committee) and Scott B. Mackenzie, as treasurer, this
firm's check in the amount of $2,500 as payment of the civil
penalty in the above-referenced MUR.

　　　　　　　　　　Sincerely,

　　　　　　　　　　John J. Duffy

JJD:dp
Enclosure