

# Final Audit Report of the Commission on the Conservative Majority Fund
(July 9, 2012 - December 31, 2012)

## Why the Audit Was Done

Federal law permits the Commission to conduct audits and field investigations of any political committee that is required to file reports under the Federal Election Campaign Act (the Act). The Commission generally conducts such audits when a committee appears not to have met the threshold requirements for substantial compliance with the Act.[1] The audit determines whether the committee complied with the limitations, prohibitions and disclosure requirements of the Act.

## Future Action

The Commission may initiate an enforcement action, at a later time, with respect to any of the matters discussed in this report.

## About the Committee (p. 2)

The Conservative Majority Fund is a non-connected committee, headquartered in Arlington, Virginia. For more information, see the chart on Committee Organization, p. 2.

## Financial Activity (p. 2)

- **Receipts**
  - o Contributions from Individuals — $ 2,814,766
  - **Total Receipts** — **$ 2,814,766**

- **Disbursements**
  - o Operating Expenditures — $ 1,125,320
  - o Independent Expenditures — 1,620,530
  - **Total Disbursements** — **$ 2,745,850**

## Commission Findings (p. 3)

- Misstatement of Financial Activity (Finding 1)
- Disclosure of Occupation and Name of Employer (Finding 2)
- Reporting of Apparent Independent Expenditures (Finding 3)
- Reporting of Debts and Obligations (Finding 4)
- Recordkeeping for Communications (Finding 5)

---

[1]  52 U.S.C. §30111(b).

# Final Audit Report of the Commission on the Conservative Majority Fund

(July 9, 2012 - December 31, 2012)



# Table of Contents

**Page**

## Part I.  Background
    Authority for Audit                                                  1
    Scope of Audit                                                       1
    Audit Hearing                                                       1

## Part II.  Overview of Committee
    Committee Organization                                  2
    Overview of Financial Activity                        2

## Part III.  Summaries
    Commission Findings                                     3

## Part IV.  Commission Findings
    Finding 1.  Misstatement of Financial Activity              6
    Finding 2.  Disclosure of Occupation and Name of Employer     8
    Finding 3.  Reporting of Apparent Independent Expenditures    11
    Finding 4.  Reporting of Debts and Obligations              19
    Finding 5.  Recordkeeping for Communications               22

# Part I
# Background

## Authority for Audit

This report is based on an audit of the Conservative Majority Fund (CMF), undertaken by the Audit Division of the Federal Election Commission (the Commission) in accordance with the Federal Election Campaign Act of 1971, as amended (the Act).  The Audit Division conducted the audit pursuant to 52 U.S.C. §30111(b), which permits the Commission to conduct audits and field investigations of any political committee that is required to file a report under 52 U.S.C. §30104.  Prior to conducting any audit under this subsection, the Commission must perform an internal review of reports filed by selected committees to determine if the reports filed by a particular committee meet the threshold requirements for substantial compliance with the Act.  52 U.S.C. §30111(b).

## Scope of Audit

Following Commission-approved procedures, the Audit staff evaluated various risk factors and as a result, this audit examined:
1. the disclosure of contributions received;
2. the disclosure of individual contributors' occupation and name of employer;
3. the disclosure of debts and obligations;
4. the consistency between reported figures and bank records;
5. the completeness of disbursement records;
6. the disclosure of independent expenditures; and
7. other committee operations necessary to the review.

## Audit Hearing

CMF requested a hearing before the Commission.  The request was granted and the hearing was held on September 14, 2017.  At the hearing, CMF addressed one issue, Reporting of Apparent Independent Expenditures.  (For more detail, see Finding 3, p.11).

# Part II
# Overview of Committee

## Committee Organization

| Important Dates | |
|---|---|
| • Date of Registration | July 9, 2012 |
| • Audit Coverage | July 9, 2012 - December 31, 2012 |
| **Headquarters** | Arlington, Virginia |
| **Bank Information** | |
| • Bank Depositories | One |
| • Bank Accounts | One Checking Account |
| **Treasurer** | |
| • Treasurer When Audit Was Conducted | Scott Mackenzie |
| • Treasurer During Period Covered by Audit | Scott Mackenzie July 9, 2012 - December 31, 2012 |
| **Management Information** | |
| • Attended Commission Campaign Finance Seminar | Yes |
| • Who Handled Accounting and Recordkeeping Tasks | Treasurer |

## Overview of Financial Activity
### (Audited Amounts)

| | |
|---|---|
| **Cash-on-hand @ July 9, 2012** | **$ 0** |
| **Receipts** | |
| ○ Contributions from Individuals | 2,814,766 |
| **Total Receipts** | **$ 2,814,766** |
| | |
| **Disbursements** | |
| ○ Operating Expenditures | 1,125,320 |
| ○ Independent Expenditures | 1,620,530[2] |
| **Total Disbursements** | **$ 2,745,850** |
| **Cash-on-hand @ December 31, 2012** | **$ 68,916** |

---

[2] This amount, as well as the amount for operating expenditures, has been revised as a result of the Commission's final consideration of Finding 3.

# Part III
# Summaries

## Commission Findings

### Finding 1.  Misstatement of Financial Activity

The Audit staff's comparison of CMF's financial activity with its bank records revealed a material misstatement of disbursements in calendar year 2012.  CMF misstated its disbursements by $2,163,830.  In response to the Interim Audit Report recommendation, the CMF Treasurer stated that CMF did not agree that it had misstated its disbursements by $2,163,830, and it had amended its 2012 disclosure reports to correct some of the errors for incorrect dates and names.  However, no amended reports were filed.  In response to the Draft Final Audit Report, CMF stood by its Interim Audit Report response, and acknowledged that amended reports were not filed.  Absent the filing of amended reports, CMF disbursements remained misstated by $2,163,830.

The Commission approved a finding that in 2012, CMF misstated its disbursements by $2,163,830.
(For more detail, see p. 6.)

### Finding 2.  Disclosure of Occupation and Name of Employer

During audit fieldwork, a review of all contributions from individuals requiring itemization indicated that 527 contributions totaling $86,745 lacked adequate disclosure of the contributor's occupation and name of employer.  CMF did not demonstrate "best efforts" to obtain, maintain and submit this information.  In response to the Interim Audit Report recommendation, the CMF Treasurer stated that CMF had amended its disclosure reports to correct the errors.  However, no amended reports were filed.  In response to the Draft Final Audit Report, CMF stood by its Interim Audit Report response, and acknowledged that amended reports were not filed.  Absent the filing of amended reports, the amount of contributions lacking adequate disclosure of occupation and name of employer remained as $86,745.

The Commission approved a finding that CMF failed to disclose occupation and name of employer information for 527 contributions from individuals totaling $86,745.
(For more detail, see p. 8.)

### Finding 3.  Reporting of Apparent Independent Expenditures

During audit fieldwork, the Audit staff reviewed disbursements to verify the independent expenditures that CMF reported on Schedule E (Itemized Independent Expenditures) were accurately and completely disclosed.

The Audit staff identified disbursements totaling $469,136 which were not reported as apparent independent expenditures. Also independent expenditures totaling $185,663 were disclosed with an incorrect vendor name.

With respect to the filing of 24/48-hour reports required for certain independent expenditures, CMF did not file 24-hour reports totaling $90,260 in a timely manner and did not file 24/48-hour reports for apparent independent expenditures totaling $469,136 noted above.

In response to the Interim Audit Report recommendation, the CMF Treasurer stated that the actual amount of independent expenditures was $914,856 and CMF has filed new and amended 24/48-hour reports for independent expenditures totaling $764,082. After reviewing additional vendor invoices that were provided, the Audit staff accepted that expenditures totaling $195,839 were not independent expenditures, and reduced the apparent independent expenditures not reported to $273,297 ($469,136 - $195,839). Also, CMF's response mentioned that it had filed amended reports to correct the reporting of the 51 independent expenditures totaling $185,663 disclosed with the incorrect vendor name. However, even though the CMF Treasurer said that amended reports were filed, as of the date of this report, CMF did not file any amended disclosure reports concerning the independent expenditures. In response to the Draft Final Audit Report, CMF stood by its Interim Audit Report response, and acknowledged that amended reports were not filed. Absent evidence that the expenditures in question did not require reporting as independent expenditures and did not require 24/48-hour reports, the Audit staff considered the expenditures totaling $273,297 to be independent expenditures, and CMF did not comply with the recommendation to correct the disclosure for 51 independent expenditures totaling $185,663.

The Commission approved a finding that CMF did not properly disclose apparent independent expenditures totaling $273,297 on Schedule E; and failed to correct the vendor name for independent expenditures totaling $185,663 disclosed on Schedule E. In addition, the Commission approved a finding that CMF failed to file 24/48-hour reports for apparent independent expenditures totaling $273,297; and that 24-hour reports totaling $90,260 were filed untimely.
(For more detail, see p. 11.)

## Finding 4.  Reporting of Debts and Obligations

During audit fieldwork, the Audit staff identified debts totaling $67,800 that were not disclosed on Schedule D (Debts and Obligations) as required. CMF contended that it was not liable for a portion of the expenses, as they were incurred by another committee. In response to the Interim Audit Report recommendation, the CMF Treasurer provided a check copy (front only) written by a 527 organization for payment of $93,990 along with ten invoices billed to the 527 organization, and concluded that all debts and obligations owed have been properly reported. The Audit staff did not consider this adequate documentation to demonstrate that the debts totaling $67,800 did not require disclosure by CMF. In response to the Draft Final Audit Report, CMF stood by its Interim Audit Report response. CMF did not provide documentation to support whether or not CMF

received the services on the invoices.  Absent further documentation, the amount of debts required to be disclosed on Schedule D remained as $67,800.

The Commission approved a finding that CMF failed to disclose debts and obligations totaling $67,800.
(For more detail, see p. 19.)

## Finding 5.  Recordkeeping for Communications

During audit fieldwork, the Audit staff reviewed disbursements to verify the accuracy of the information and proper classification of transactions disclosed on reports.  The Audit staff identified $304,399 for which sufficient records were not provided.  Without a copy of the invoices and the associated communications, the Audit staff was unable to determine how CMF should have reported these disbursements.  In response to the Interim Audit Report recommendation, the CMF Treasurer provided two media vendor invoices, four television advertisements, and stated that CMF believed that all documentation needed by the Audit staff has been provided.  In response to the Draft Final Audit Report, CMF stood by its Interim Audit Report response. The Audit staff concluded that the records provided by CMF demonstrated that disbursements totaling $224,768 were operating expenditures and disbursements totaling $79,631 were insufficiently documented.  In addition, disbursements totaling $38,302, which were originally included in the apparent independent expenditure finding, are not sufficiently documented.  Absent further documentation, the Audit staff considered the remaining disbursements totaling $117,933 ($79,631 + $38,302) to be insufficiently documented.

The Commission approved a finding that CMF did not provide the necessary records pertaining to disbursements totaling $117,933.
(For more detail, see p. 22.)

# Part IV
# Commission Findings

## Finding 1.  Misstatement of Financial Activity

### Summary
The Audit staff's comparison of CMF's financial activity with its bank records revealed a material misstatement of disbursements in calendar year 2012.  CMF misstated its disbursements by $2,163,830.  In response to the Interim Audit Report recommendation, the CMF Treasurer stated that CMF did not agree that it had misstated its disbursements by $2,163,830, and it had amended its 2012 disclosure reports to correct some of the errors for incorrect dates and names.  However, no amended reports were filed.  In response to the Draft Final Audit Report, CMF stood by its Interim Audit Report response, and acknowledged that amended reports were not filed.  Absent the filing of amended reports, CMF disbursements remained misstated by $2,163,830.

The Commission approved a finding that in 2012, CMF misstated its disbursements by $2,163,830.

### Legal Standard
**Contents of Reports.**  Each report must disclose:
- the amount of cash-on-hand at the beginning and end of the reporting period;
- the total amount of receipts for the reporting period and for the calendar year;
- the total amount of disbursements for the reporting period and for the calendar year; and
- certain transactions that require itemization on Schedule A (Itemized Receipts) or Schedule B (Itemized Disbursements).  52 U.S.C. §30104(b)(1), (2), (3), (4), and (5).

### Facts and Analysis

#### A. Facts
During audit fieldwork, the Audit staff reconciled CMF's reported financial activity with its bank records for calendar year 2012.  The reconciliation determined that CMF misstated disbursements for 2012.  The following chart outlines the discrepancies between CMF's disclosure reports and its bank records.  The succeeding paragraphs explain why the discrepancies occurred.

| 2012 Committee Activity | | | |
|---|---|---|---|
| | Reported | Bank Records | Discrepancy |
| Beginning Cash Balance @ July 9, 2012 | $0 | $0 | $0 |
| Receipts | $2,814,767 | $2,816,253 | ($1,486) Understated |
| Disbursements | $2,745,851 | $2,747,337 | ($1,486) Understated |
| Ending Cash Balance @ December 31, 2012 | $68,916 | $68,916 | $0 |

CMF understated its disbursements by $1,486 in 2012. However, when evaluating the identified errors, regardless of whether the errors were positive or negative (absolute value), the Audit staff discovered that CMF misstated its disbursements by $2,163,830 as follows:

The misstatement of disbursements resulted from the following differences:
- Expenditures under-reported or not reported[3]                $1,081,176
- Expenditures over-reported or not supported by bank payments          1,081,172
- Bank charges not reported                                                      1,482
  **Sum of Reporting Adjustments**                        **$2,163,830**

Although the chart demonstrated that overall CMF had only understated its disbursements by $1,486 in 2012, the Audit staff found that CMF did not properly report the majority of its disbursements. The disbursements were reported in such a manner that, during the period from CMF's inception through October 23, 2012, the Audit staff was unable to match vendor payments to any disclosed disbursement. The continued over-reporting and under-reporting on its disclosure reports resulted in CMF over-reporting expenditures of $1,081,172 and under-reporting expenditures and bank charges of $1,082,658.

## B. Interim Audit Report & Audit Division Recommendation
At the exit conference, the Audit staff provided schedules of the misstated activity and discussed the reporting errors that caused the misstatement. The CMF Treasurer had no additional comments.

The Interim Audit Report recommended that CMF amend its reports to correct the misstatements for 2012 as noted above.

## C. Committee Response to Interim Audit Report
In response to the Interim Audit Report recommendation, the CMF Treasurer stated that CMF strongly disagreed that it had misstated its disbursements by $2,163,830. Also, the CMF Treasurer stated that "[t]he discrepancy of $1,486 was a simple case of bank

---

[3] This amount includes two expenditures totaling $79,631 for which documentation was insufficient to make a determination pertaining to how these disbursements should be reported. See Recordkeeping for Communication Finding, p.22.

charges mistakenly being reported as contra-receipts (not-sufficient-funds checks or credit card chargebacks, that reduce receipts) instead of as bank service charges." CMF did agree that some payee names and some dates were reported incorrectly; therefore, the CMF Treasurer said amended 2012 disclosure reports were filed to correct the payee names, incorrect dates, and the reporting of the bank service charges only (see Finding 3 – Reporting of Apparent Independent Expenditures). However, as of the date of this report, the Audit staff determined that no amended reports were filed by CMF to correct the public record. Absent the filing of amended reports, CMF disbursements remained misstated by $2,163,830.

**D.  Draft Final Audit Report**
The Draft Final Audit Report reiterated that CMF did not file amended reports to correct the misstatement of financial activity.

**E.  Committee Response to the Draft Final Audit Report**
In response to the Draft Final Audit Report, the CMF Treasurer stated that CMF stood by its response to the Interim Audit Report, and acknowledged that amended reports were not filed. The CMF Treasurer added that the disclosure reports will be amended.

**F.  Audit Hearing**
CMF did not address this finding during the Audit Hearing.

**Commission Conclusion**
On October 25, 2017, the Commission considered the Audit Division Recommendation Memorandum in which the Audit staff recommended that the Commission adopt a finding that in 2012, CMF misstated its disbursements by $2,163,830.

The Commission approved the Audit staff's recommendation.

## Finding 2.  Disclosure of Occupation and Name of Employer

### Summary
During audit fieldwork, a review of all contributions from individuals requiring itemization indicated that 527 contributions totaling $86,745 lacked adequate disclosure of the contributor's occupation and name of employer. CMF did not demonstrate "best efforts" to obtain, maintain and submit this information. In response to the Interim Audit Report recommendation, the CMF Treasurer stated that CMF had amended its disclosure reports to correct the errors. However, no amended reports were filed. In response to the Draft Final Audit Report, CMF stood by its Interim Audit Report response, and acknowledged that amended reports were not filed. Absent the filing of amended reports, the amount of contributions lacking adequate disclosure of occupation and name of employer remained as $86,745.

The Commission approved a finding that CMF failed to disclose occupation and name of employer information for 527 contributions from individuals totaling $86,745.

## Legal Standard

**A. Required Information for Contributions from Individuals.** For each itemized contribution from an individual, the committee must provide the following information:

- the contributor's full name and address (including zip code);
- the contributor's occupation and the name of his or her employer;
- the date of receipt (the date the committee received the contribution);
- the amount of the contribution; and
- the calendar year-to-date total of all contributions from the same individual. 52 U.S.C. §30104(b)(3)(A) and 11 CFR §§ 100.12 and 104.3(a)(4)(i).

**B. Best Efforts Ensure Compliance.** When the treasurer of a political committee shows that the committee used best efforts (see below) to obtain, maintain, and submit the information required by the Act, the committee's reports and records will be considered in compliance with the Act. 52 U.S.C. §30102(i) and 11 CFR §104.7(a).

**C. Definition of Best Efforts.** The treasurer and the committee will be considered to have used "best efforts" if the committee satisfied all of the following criteria.

- All written solicitations for contributions included:
  - a clear request for the contributor's full name, mailing address, occupation, and name of employer; and
  - the statement that such reporting is required by Federal law.
  - Note: The request and statement must appear in a clear and conspicuous manner on any response material included in a solicitation.
- Within 30 days of receipt of the contribution, the treasurer made at least one effort to obtain the missing information, in either a written request or a documented oral request.
- The treasurer reported any contributor information that, although not initially provided by the contributor, was obtained in a follow-up communication or was contained in the committee's records or in prior reports that the committee filed during the same two-year election cycle. 11 CFR §104.7(b).

## Facts and Analysis

### A. Facts

A review of all contributions from individuals requiring itemization indicated that 527 contributions totaling $86,745, or 30% of total contributions from individuals required to be itemized by CMF, lacked disclosure of the contributor's occupation and name of employer. For most of these entries, the contributor's occupation and name of employer information (455 of 527) were blank on the Schedule A (Itemized Receipts) filed with the Commission.

The Audit staff reviewed the receipt records provided by CMF to determine if it had utilized "best efforts" to obtain, maintain and submit the missing information.

- CMF did not provide documentation showing it made follow-up best efforts requests for 48 contributions totaling $9,340 ($86,745 - $77,405).

- CMF had the required information for 479 contributions totaling $77,405; however, this information was not disclosed on its disclosure reports.

In response to the audit, CMF submitted written procedures of "best efforts" requirements: (i) within thirty days of the receipt of the contribution, a letter would be sent, clearly asking for the missing information, without soliciting a contribution; (ii) contributors would be informed of the requirements of federal law for the reporting of such information; and (iii) a pre-addressed return envelope, a fax number and an email address would be provided to the contributor. The Treasurer stated that upon receipt of the information, CMF would amend its reports to provide the new information. Although occupation and name of employer information was obtained for the majority of its contributors, CMF did not provide confirmation that these follow up letters were sent to contributors.

**B. Interim Audit Report & Audit Division Recommendation**
At the exit conference, the Audit staff provided schedules and discussed the omission of the contributor's occupation and name of employer. The CMF Treasurer commented that he had obtained a lot of the missing occupation and name of employer information. In response to the exit conference, CMF provided documentation detailing the contributor's occupation and name of employer information for $45,369 of the errors, however amended disclosure reports were not filed.[4] This amount was included in the $77,405 noted above.

The Interim Audit Report recommended that CMF establish "best efforts" by amending its reports to disclose the missing information relating to the 479 contributions totaling $77,405.

**C. Committee Response to Interim Audit Report**
In response to the Interim Audit Report recommendation, the CMF Treasurer stated that CMF had obtained occupation and name of employer information for all but 30 of its contributors and restated its "best efforts" procedures. The response also included a listing of the 30 contributors for whom CMF was unable to obtain the missing occupation and name of employer information. In addition, 478 "best efforts" letters were provided. Further, the response mentioned that CMF had amended its disclosure reports to correct the majority of the errors. However, as of the date of this report, the Audit staff determined that no amended reports were filed by CMF to correct the public record. Absent the filing of amended reports, the amount of contributions lacking adequate disclosure of occupation and name of employer remained as $86,745.

---

[4] CMF's database contained the occupation and name of employer information for an additional 203 contributions totaling $32,036.

**D.  Draft Final Audit Report**
The Draft Final Audit Report reiterated that absent the filing of amended reports, the amount of contributions lacking adequate disclosure of occupation and name of employer remains as $86,745.

**E.  Committee Response to the Draft Final Audit Report**
In response to the Draft Final Audit Report, the CMF Treasurer stated that CMF stood by its response to the Interim Audit Report, and acknowledged that amended reports were not filed.  The CMF Treasurer added that the disclosure reports will be amended.

**F.  Audit Hearing**
CMF did not address this finding during the Audit Hearing.

**Commission Conclusion**
On October 25, 2017, the Commission considered the Audit Division Recommendation Memorandum in which the Audit staff recommended that the Commission adopt a finding that CMF failed to disclose occupation and name of employer information for 527 contributions from individuals totaling $86,745.

The Commission approved the Audit staff's recommendation.

## Finding 3.  Reporting of Apparent Independent Expenditures

### Summary
During audit fieldwork, the Audit staff reviewed disbursements to verify the independent expenditures that CMF reported on Schedule E (Itemized Independent Expenditures) were accurately and completely disclosed.

The Audit staff identified disbursements totaling $469,136 which were not reported as apparent independent expenditures.  Also independent expenditures totaling $185,663 were disclosed with an incorrect vendor name.

With respect to the filing of 24/48-hour reports required for certain independent expenditures, CMF did not file 24-hour reports totaling $90,260 in a timely manner and did not file 24/48-hour reports for apparent independent expenditures totaling $469,136 noted above.

In response to the Interim Audit Report recommendation, the CMF Treasurer stated that the actual amount of independent expenditures was $914,856 and CMF has filed new and amended 24/48-hour reports for independent expenditures totaling $764,082.  After reviewing additional vendor invoices that were provided, the Audit staff accepted that expenditures totaling $195,839 were not independent expenditures, and reduced the apparent independent expenditures not reported to $273,297 ($469,136 - $195,839).

Also, CMF's response mentioned that it had filed amended reports to correct the reporting of the 51 independent expenditures totaling $185,663 disclosed with the incorrect vendor name. However, even though the CMF Treasurer said that amended reports were filed, as of the date of this report, CMF did not file any amended disclosure reports concerning the independent expenditures. In response to the Draft Final Audit Report, CMF stood by its Interim Audit Report response, and acknowledged that amended reports were not filed. Absent evidence that the expenditures in question did not require reporting as independent expenditures and did not require 24/48-hour reports, the Audit staff considered the expenditures totaling $273,297 to be independent expenditures, and CMF did not comply with the recommendation to correct the disclosure for 51 independent expenditures totaling $185,663.

The Commission approved a finding that CMF did not properly disclose apparent independent expenditures totaling $273,297 on Schedule E; and failed to correct the vendor name for independent expenditures totaling $185,663 disclosed on Schedule E. In addition, the Commission approved a finding that CMF failed to file 24/48-hour reports for apparent independent expenditures totaling $273,297; and that 24-hour reports totaling $90,260 were filed untimely.

## Legal Standard

A. **Definition of Independent Expenditures.** The term "independent expenditure" means an expenditure by a person for a communication expressly advocating the election or defeat of a clearly identified candidate that is not made in coordination with any candidate or authorized committee or agent of a candidate. 11 CFR §100.16.

B. **Disclosure Requirements – General Guidelines.** An independent expenditure shall be reported on Schedule E if, when added to other independent expenditures made to the same payee during the same calendar year, it exceeds $200. Independent expenditures made (i.e., publicly disseminated) prior to payment should be disclosed as memo entries on Schedule E and as a debt on Schedule D. Independent expenditures of $200 or less need not be itemized, though the committee must report the total of those expenditures on line (b) of Schedule E. 11 CFR §§104.3(b)(3)(vii), 104.4(a) and 104.11.

C. **Last-Minute Independent Expenditure Reports (24-Hour Reports).** Any independent expenditures aggregating $1,000 or more, with respect to any given election, and made after the 20th day but more than 24 hours before the day of an election, must be reported and the report must be received by the Commission within 24 hours after the expenditure is made. A 24-hour report is required each time additional independent expenditures aggregate $1,000 or more. The date that a communication is publicly disseminated serves as the date that the committee must use to determine whether the total amount of independent expenditures has, in the aggregate, reached or exceeded the threshold reporting amount of $1,000. 11 CFR §§104.4(f) and 104.5(g)(2).

**D. Independent Expenditure Reports (48-Hour Reports).** Any independent expenditures aggregating $10,000 or more with respect to any given election, at any time during a calendar year, up to and including the 20th day before an election, must be disclosed within 48 hours each time the expenditures aggregate $10,000 or more. The reports must be received by the Commission within 48 hours after the expenditure is made. The date that a communication is publicly disseminated serves as the date that the committee must use to determine whether the total amount of independent expenditures has, in the aggregate, reached or exceeded the threshold reporting amount of $10,000. 11 CFR §§104.4(f) and 104.5(g)(1).

**E. Definition of Expressly Advocating.** The term "expressly advocating" means any communication that;
- Uses phrases such as "vote for the President," "re-elect your Congressman," "defeat" accompanied by a picture of one or more candidate(s), "reject the incumbent," or communications of campaign slogan(s) or individual word(s), which in context can have no other reasonable meaning than to urge the election or defeat of one or more clearly identified candidate(s), such as posters, bumper stickers, advertisements; or
- When taken as a whole and with limited reference to external events, such as the proximity to the election, could only be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified candidate(s) because:
  - the electoral portion of the communication is unmistakable, unambiguous, and suggestive of only one meaning; and
  - reasonable minds could not differ as to whether it encourages actions to elect or defeat one or more clearly identified candidate(s) or encourages some other kind of reaction. 11 CFR §100.22(a) and (b).

**F. Formal Requirements Regarding Reports and Statements.** Each political committee shall maintain records with respect to the matters required to be reported which shall provide in sufficient detail the necessary information and data from which the filed reports may be verified, explained, clarified, and check for accuracy and completeness. 11 CFR §104.14(b)(1).

## Facts and Analysis

### A. Reporting of Apparent Independent Expenditures

#### 1. Facts
During audit fieldwork, the Audit staff reviewed disbursements to ensure the proper reporting of independent expenditures. The Audit staff identified the following:

- Apparent independent expenditures not reported totaling $469,136.
- Vendor name incorrectly reported on Schedule E totaling $185,663.

**Background Information**
The Audit staff was unable to match vendor invoices or payments to any disbursements disclosed on either Schedule B (Itemized Disbursements) or Schedule E. The Audit staff asked CMF to explain how it classified communications and how it reported the associated disbursements, as well as, if any documentation was available to verify the reported amounts. CMF stated that portions of some disbursements were reported as independent expenditures and the remaining portions as operating expenditures. However, CMF did not explain its methodology for determining how the disbursements were disclosed.

Absent documentation of how disbursements were disclosed, the Audit staff used the following approach to determine the amount[5] that should have been reported as apparent independent expenditures:

- Communications such as the telephone calls, follow-up letters, and television advertisements containing express advocacy of a clearly identified candidate were considered to have most likely disseminated before the date of the general election. 11 CFR §100.22(a)

- Based on communications that the Audit staff determined were disseminated before the November 6, 2012 general election, any associated costs were considered independent expenditures.

- Based on communications that the Audit staff determined were disseminated after the general election, any associated costs were considered operating expenditures.[6]

**a. Apparent Independent Expenditures (Copy of Invoice and Communication Made Available)**
The Audit staff determined that CMF made apparent independent expenditures totaling $1,816,369. However, CMF only reported independent expenditures totaling $1,347,233. Therefore, the Audit staff calculated an under-reported

---

[5] The Audit staff originally included in its calculation of the total costs attributed to independent expenditures a variety of other types of cost described on the invoices, such as, postage of "fulfillment letters"; costs associated with credit card processing connected with "fulfillment letters" and with "acquisition and processing"; check debiting for "acquisition and processing"; "rental lists"; "prospecting"; "lockbox services," and costs associated with creating and sending "premiums" such as a flag and bumper sticker. These costs described on the invoices are not defined in terms of how they are related to the communications, but the descriptions might raise questions whether some of them should be considered costs for the communications. See 11 C.F.R. § 100.16. Upon further review after CMF's response to the Interim Audit Report, the Audit staff deducted costs associated with credit card processing connected with "fulfillment letters" and acquisition/processing, "lockbox services", and flags since these are not directly associated with producing and distributing the communications.

[6] The Audit staff used the range of dates listed on each invoice to estimate the date on which CMF's vendor completed the services. The Audit staff treated the last day of the date range as the date of completion for all invoices, except for those invoices in which the date range occurred partly before and partly after the general election date. In that case, the Audit staff chose to pro-rate the cost of the service according to the proportion of the date range occurring before and after the general election.

amount of apparent independent expenditures totaling $469,136, for which CMF provided the associated communications which included phone scripts and call dates, advertisements, and solicitation letters. This amount included $328,250 that CMF had not paid and for which CMF should have disclosed memo entries on Schedule E when the communications were disseminated. The corresponding debt owed[7] also should have been disclosed on Schedule D (Debts and Obligations). The phone calls and television advertisements contained language expressly advocating the election or defeat of a clearly identified candidate, as defined under 11 CFR §100.22(a), while the follow up letters contained language advocating the election or defeat of a clearly identified candidate, as defined under 11 CFR §100.22(b) .[8]

b. **Independent Expenditures Reported on Schedule E (Independent Expenditure Schedule) – Disclosure Errors**
CMF disclosed 51 independent expenditures totaling $185,663 with an incorrect vendor name. These expenditures were disclosed as paid to the media vendor. However, CMF did not make direct payments to this vendor. The media vendor's services were billed to CMF through invoices from another vendor, and CMF made direct payments to that vendor instead of the media vendor.

**2.  Interim Audit Report & Audit Division Recommendation**
At the exit conference, the Audit staff presented schedules of apparent independent expenditure reporting errors. In response to the exit conference, the CMF Treasurer provided an email addressing $301,972 of the expenses billed but not paid in section A. 1 (a) above. The email showed that June 2012 expenses totaling $92,411 that were billed to CMF were actually incurred by another committee and should have been paid by that committee.[9] Other than the email provided by CMF, the CMF Treasurer did not provide any other documentation to support that the other committee is liable for $92,411.

The Interim Audit Report recommended that CMF:
- Provide documentation and evidence that apparent independent expenditures totaling $469,136 did not require reporting as independent expenditures. Absent such evidence, CMF should have amended its reports to disclose these disbursements as independent expenditures on Schedule E and submit revised procedures for reporting independent expenditures.

---

[7]  Only $67,800 of the $328,250 would be required to be disclosed as debt, since CMF disclosed debt owed to this vendor totaling $260,450 on its 2012 year-end report. See Finding 4 - Reporting of Debts and Obligations, p.19.

[8]  CMF indicated that the two telephone scripts, two follow-up letters, and three television advertisements in the Audit staff's possession represent the entire universe of communications that were made during the audit period. However, invoices indicated there were two additional television advertisements, see Finding 5 - Recordkeeping for Communications, p. 22. Based on the content of the communications, one telephone script, one follow-up letter, and two television advertisements contained express advocacy.

[9]  The other committee that CMF contends is liable for the $92,411 debt is not registered with the Commission.

- Amend its reports to correct the vendor name for the 51 independent expenditures totaling $185,663.

### 3. Committee Response to the Interim Audit Report

In response to the Interim Audit Report recommendation, the CMF Treasurer stated that CMF believed that the actual amount of independent expenditures was $914,856 and that this amount was reflected on the amended disclosure reports. CMF provided an attachment that explained how it determined whether an expenditure was an operating expenditure or an independent expenditure, along with 20 additional vendor invoices.

CMF considered the following costs as independent expenditures: all costs associated with the media vendor ($629,730), 20% of all outbound phone calls ($153,256) since approximately one minute of an average five minute call contained a taped anti-Obama message, 50% of all rental list costs ($50,223) since the lists were used for outbound calls which had a dual purpose of delivering a political message and soliciting a contribution, and all bumper sticker costs incurred before the general election ($2,087), since the costs contained a political message. Costs totaling $92,411 were considered to be costs associated with a 527 organization[10] (see Finding 4 - Reporting of Debts and Obligations), and all other costs[11] were considered to be either fundraising or administrative in nature. CMF did not provide any new phone scripts.[12]

The Audit staff maintained the script used for the telephone calls, the follow-up letters sent, and the media television advertisements provided by CMF and made before the general election contained express advocacy, making the costs for these and all other related costs independent expenditures. CMF's statement that some of the costs were fundraising only does not take into account that fundraising letters with express advocacy language are not excluded from the regulation definition at 11 CFR §100.16.[13] Also, CMF's response mentioned that it had filed amended reports to correct the reporting of the 51 independent expenditures totaling $185,663 disclosed with the incorrect vendor name. However, as of the date of this report, CMF did not file any amended disclosure reports concerning the independent expenditures.

After reviewing additional vendor invoices that were provided by CMF, the Audit staff reduced the apparent independent expenditure total by $195,839. The Audit staff accepted that legal and accounting expenditures totaling $64,160 were not independent expenditures. Also, the Audit staff accepted that costs relating to the purchase and mailing of American flags ($13,122), costs relating to lock box services

---

[10] See footnote 16.

[11] See footnote 5.

[12] CMF provided one more television advertisement, bringing the total provided by CMF to four. The CMF Treasurer stated this television advertisement is an independent expenditure. However the Audit staff did not consider this particular television advertisement to be an independent expenditure because it did not contain express advocacy. And the cost is not a part of this finding.

[13] See the Final Audit Report of the Commission on the Legacy Committee Political Action Committee, Finding 2 (2008 election cycle).

($4,650), and credit card processing and fulfillment charges ($75,605) were not apparent independent expenditures. In total, the Audit staff removed disbursements of $157,537 from its apparent independent expenditures costs and now considers these to be operating expenditures. Further, costs totaling $38,302 were removed from the apparent independent expenditure total and moved to the recordkeeping finding because the documentation provided for these expenditures was not sufficient to determine how these expenditures should have been reported (See Finding 5 – Recordkeeping for Communications).

In total, the Audit staff reduced the amount of apparent independent expenditures to $1,620,530 ($1,816,369 - $195,839). As previously stated, CMF reported independent expenditures in the amount of $1,347,233. Therefore, CMF did not demonstrated that apparent independent expenditures totaling $273,297 ($1,620,530 - $1,347,233) did not require reporting as independent expenditures. Absent evidence that the expenditures in question did not require reporting as independent expenditures, the Audit staff considered these expenditures to be independent expenditures.

**4.  Draft Final Audit Report**
The Draft Final Audit Report reiterated that CMF did not file amended reports to disclose expenditures totaling $273,297 as independent expenditures, nor did CMF correct the reporting of the 51 independent expenditures totaling $185,663 disclosed with the incorrect vendor name.

**5.  Committee Response to the Draft Final Audit Report**
In response to the Draft Final Audit Report, the CMF Treasurer restated that CMF stood by its response to the Interim Audit Report, that the expenditures were properly reported as operating expenditures, and acknowledged that amended reports were not filed. The CMF Treasurer added that the disclosure reports will be amended.

**6.  Audit Hearing**
At the audit hearing, the CMF Treasurer described how the telephone calls that CMF made had a dual purpose of providing a political message and soliciting a contribution, and stated that the costs of telephone calls should be allowed to be allocated as such. The CMF Treasurer also referred to the October 2014 Journal of Accountancy article that mentioned how not-for-profit committees could allocate joint costs using a rational and systematic allocation methodology. The CMF Treasurer concluded that he acted in good faith and in accordance with the American Institute of Certified Public Accountants by allocating joint costs in a reasonable manner and applying those costs consistently throughout the audit period. Therefore, the difference between the Audit staff's determination of apparent independent expenditures and CMF's allocated determination of independent expenditures should not result in a fine.

**Commission Conclusion**

On October 25, 2017, the Commission considered the Audit Division Recommendation Memorandum in which the Audit staff recommended that the Commission adopt a finding that CMF did not properly disclose apparent independent expenditures totaling $273,297 on Schedule E; and failed to correct the vendor name for independent expenditures totaling $185,663 disclosed on Schedule E.

The Commission approved the Audit staff's recommendation.

## B.  Failure to File 24/48-Hour Reports for Independent Expenditures

### 1.  Facts

During audit fieldwork, the Audit staff reviewed disbursements to determine whether 24/48-hour reports were properly filed.[14]  The Audit staff determined that CMF filed untimely 24-hour reports for 13 independent expenditures totaling $90,260.  For these expenditures, 24-hour reports were filed 13 to 27 days after the dissemination date. As noted above, the Audit staff also identified apparent independent expenditures totaling $469,136 which may also require filing of 24/48-hour reports.

### 2.  Interim Audit Report & Audit Division Recommendation

At the exit conference, the Audit staff presented schedules of untimely and possible 24/48-hour reports that were not filed.  The CMF Treasurer had no additional comments.

Absent documentation and evidence that apparent independent expenditures totaling $469,136 did not require reporting as independent expenditures (per section A.1.(a) above), the Interim Audit Report recommended that CMF provide documentation to support the date of public dissemination for the communications to determine whether a filing of a 24/48-hour report was required.  The Interim Audit Report also recommended that CMF provide documentation to demonstrate that the 24-hour reports totaling $90,260 were filed timely.

### 3.  Committee Response to the Interim Audit Report

In response to the Interim Audit Report recommendation, the CMF Treasurer stated that the actual amount of independent expenditures was $914,856 and CMF has filed new and amended 24/48-hour reports for independent expenditures totaling $764,082.

The CMF Treasurer did not specifically address the 24-hour reports totaling $90,260 that were filed untimely.  The Audit staff restated that CMF under-reported the reduced apparent independent expenditures totaling $273,297.  The Audit staff was not able to verify if the 24/48-hour reports filings CMF made addressed these apparent independent expenditures.  Absent evidence that the expenditures totaling $273,297 (as determined in section A.3. above) did not require reporting as independent expenditures, the Audit staff considered these expenditures may have required filing of 24/48-hour reports.

---

[14]  See footnote 6.

**4. Draft Final Audit Report**
The Draft Final Audit Report reiterated that the Audit staff considers that apparent independent expenditures totaling $273,297 may have required filing of 24/48-hour reports, and that CMF filed untimely 24-hour reports for 13 independent expenditures totaling $90,260.

**5. Committee Response to the Draft Final Audit Report**
In response to the Draft Final Audit Report, the CMF Treasurer stated that CMF stood by its response to the Interim Audit Report, and acknowledged that amended reports were not filed. The CMF Treasurer added that the disclosure reports will be amended.

**6. Audit Hearing**
At the audit hearing, the CMF Treasurer described how the telephone calls that CMF made had a dual purpose of providing a political message and soliciting a contribution, and stated that the costs of telephone calls should be allowed to be allocated as such. The CMF Treasurer also referred to the October 2014 Journal of Accountancy article that mentioned how not-for-profit committees could allocate joint costs using a rational and systematic allocation methodology. The CMF Treasurer concluded that he acted in good faith and in accordance with the American Institute of Certified Public Accountants by allocating joint costs in a reasonable manner and applying those costs consistently throughout the audit period. Therefore, the difference between the Audit staff's determination of apparent independent expenditures and CMF's allocated determination of independent expenditures should not result in a fine.

**Commission Conclusion**
On October 25, 2017, the Commission considered the Audit Division Recommendation Memorandum in which the Audit staff recommended that the Commission adopt a finding that CMF failed to file 24/48-hour reports for apparent independent expenditures totaling $273,297; and that 24-hour reports totaling $90,260 were filed untimely.

The Commission approved the Audit staff's recommendation.

## Finding 4.  Reporting of Debts and Obligations

**Summary**
During audit fieldwork, the Audit staff identified debts totaling $67,800 that were not disclosed on Schedule D (Debts and Obligations) as required. CMF contended that it was not liable for a portion of the expenses, as they were incurred by another committee. In response to the Interim Audit Report recommendation, the CMF Treasurer provided a check copy (front only) written by a 527 organization for payment of $93,990 along with ten invoices billed to the 527 organization, and concluded that all debts and obligations

owed have been properly reported. The Audit staff did not consider this adequate documentation to demonstrate that the debts totaling $67,800 did not require disclosure by CMF. In response to the Draft Final Audit Report, CMF stood by its Interim Audit Report response. CMF did not provide documentation to support whether or not CMF received the services on the invoices. Absent further documentation, the amount of debts required to be disclosed on Schedule D remained as $67,800.

The Commission approved a finding that CMF failed to disclose debts and obligations totaling $67,800.

## Legal Standard

**A. Continuous Reporting Required.** A political committee must disclose the amount and nature of outstanding debts and obligations until those debts are extinguished. 52 U.S.C. §30104(b)(8) and 11 CFR §§104.3(d) and104.11(a).

**B. Itemizing Debts and Obligations.**
- A debt of $500 or less must be reported once it has been outstanding 60 days from the date incurred (the date of the transaction); the committee reports it on the next regularly scheduled report.
- A debt exceeding $500 must be disclosed in the report that covers the date on which the debt was incurred. 11 CFR §104.11(b).

**C. Reporting Disputed Debts.** A political committee shall report a disputed debt in accordance with 11 CFR 104.3(d) and 104.11 if the creditor has provided something of value to the political committee. Until the dispute is resolved, the political committee shall disclose on the appropriate reports any amounts paid to the creditor, any amount the political committee admits it owes and the amount the creditor claims is owed. The political committee may also note on the appropriate reports that the disclosure of the disputed debt does not constitute an admission of liability or a waiver of any claims the political committee may have against the creditor. 11 CFR §116.10(a).

## Facts and Analysis

### A. Facts

The Audit staff reviewed invoices and disclosure reports for proper reporting of debts and obligations. During the election cycle, CMF over-reported debt owed to one vendor except for the 2012 Year-End Report, which did not include $67,800[15] owed to the vendor. This vendor provided media services for CMF.

---

[15] The Audit staff identified payments owed to this vendor totaling $328,250. See Finding 3 – Reporting of Apparent Independent Expenditures, p. 11. Only $67,800 of the $328,250 would be required to be disclosed as debt, since CMF disclosed debt owed to this vendor totaling $260,450 on its 2012 year-end report. CMF contended that invoices totaling $92,411 of the $328,250 billed were incurred by another committee.

**B. Interim Audit Report & Audit Division Recommendation**

At the exit conference, the Audit staff provided a schedule and discussed the debt reporting matter with the CMF Treasurer. In response to the exit conference, the CMF Treasurer provided an email showing that June 2012 expenses totaling $92,411 that were billed to CMF were actually incurred by another committee and should have been paid by that committee. However, no further documentation or explanation was provided to associate these expenses with another committee. The Audit staff was not able to verify that the other committee is actually liable for the debt. As a result, the debt that CMF did not report on its Schedule D remained as $67,800.

The Interim Audit Report recommended that CMF provide documentation demonstrating that these expenditures did not require reporting on Schedule D and documentation to support that the expenses totaling $92,411 were billed erroneously to CMF. Absent such documentation, it was further recommended that CMF amend its reports to disclose the unreported debts totaling $67,800.

**C. Committee Response to Interim Audit Report**

In response to the Interim Audit Report recommendation, the CMF Treasurer stated that CMF's executive director was also the Treasurer of a 527 organization[16] and that ten invoices should have been billed to the 527 organization in July 2012 when the 527 organization was terminating[17] and CMF was just beginning. The CMF Treasurer maintained the vendor mistakenly billed the ten invoices to CMF instead of the 527 organization. A check copy (front only) written by the 527 organization for payment of the ten invoices totaling $93,990[18] was provided, and CMF concluded that all debts and obligations owed to the vendor were properly reported.

In a conference held after the Interim Audit Report response, the CMF Treasurer stated that he had requested the front and back of the check copy written by the 527 organization and would request the 527 organization's bank statements in an attempt to demonstrate that the 527 organization received the benefit of the services provided on the ten invoices. Subsequent to the conference, CMF provided ten more invoices. The invoices were identical to the invoices previously provided totaling $93,990, except that the new invoices now contained the 527 organization's name and address instead of CMF's name and address.

---

[16] Entities organized under section 527 of the tax code are considered "political organizations," defined generally as a party, committee or association that is organized and operated primarily for the purpose of influencing the selection, nomination or appointment of any individual to any federal, state or local public office, or office in a political organization. All political committees that register and file reports with the FEC are 527 organizations, but not all 527 organizations are required to file with the FEC. Some file reports with the Internal Revenue Service (IRS).

[17] IRS records indicated that the 527 organization dissolved on August 29, 2012.

[18] The CMF Treasurer stated that only $92,411 of the $93,990 billed was incurred by the 527 organization. And that the difference of $1,579 ($93,990 - $92,411) was a CMF media expense that would be considered to be an in-kind contribution from the 527 organization, with the excessive portion of $579 ($1,579 - $1,000) payable as a refund.

The Audit staff maintained the invoices provided by CMF and correctly billed to CMF contained the same descriptions, the same costs, and used the same calendar dates of service for billing purposes as services on the invoices CMF claimed should have been billed to the 527 organization. If CMF continues to contend it did not receive the service on the invoices in question and that the $92,411 is the debt of the 527 organization, then CMF could report it as disputable debt per 11 CFR §116.10(a).

The Audit staff concluded that although the amount of the check copy provided agreed with the total of the 10 invoices in question, CMF had not demonstrated that this check was successfully negotiated and that the $92,411 billed to CMF was not incurred by CMF. Absent further documentation, such as a bank statement supporting the check in question was negotiated or a statement from the vendor that the 10 invoices in question should have been billed to the 527 organization or documentation that CMF did not receive the services noted on the invoices, the debt CMF did not report on Schedule D remains as $67,800.

### D.  Draft Final Audit Report
The Draft Final Audit Report reiterated that CMF has not reported debt totaling $67,800 on Schedule D.

### E.  Committee Response to the Draft Final Audit Report
In response to the Draft Final Audit Report, the CMF Treasurer stated that CMF stood by its response to the Interim Audit Report, and acknowledged that amended reports were not filed. The CMF Treasurer added that the disclosure reports will be amended.

### F.  Audit Hearing
CMF did not address this finding during the Audit Hearing.

### Commission Conclusion
On October 25, 2017, the Commission considered the Audit Division Recommendation Memorandum in which the Audit staff recommended that the Commission adopt a finding that CMF failed to disclose debts and obligations totaling $67,800.

The Commission approved the Audit staff's recommendation.

## Finding 5.  Recordkeeping for Communications

### Summary
During audit fieldwork, the Audit staff reviewed disbursements to verify the accuracy of the information and proper classification of transactions disclosed on reports. The Audit staff identified $304,399 for which sufficient records were not provided. Without a copy of the invoices and the associated communications, the Audit staff was unable to determine how CMF should have reported these disbursements. In response to the Interim Audit Report recommendation, the CMF Treasurer provided two media vendor invoices, four television advertisements, and stated that CMF believed that all

documentation needed by the Audit staff has been provided.  In response to the Draft Final Audit Report, CMF stood by its Interim Audit Report response. The Audit staff concluded that the records provided by CMF demonstrated that disbursements totaling $224,768 were operating expenditures and disbursements totaling $79,631 were insufficiently documented.  In addition, disbursements totaling $38,302, which were originally included in the apparent independent expenditure finding, were not sufficiently documented.  Absent further documentation, the Audit staff considered the remaining disbursements totaling $117,933 ($79,631 + $38,302) to be insufficiently documented.

The Commission approved a finding that CMF did not provide the necessary records pertaining to disbursements totaling $117,933.

## Legal Standard

A. **Formal Requirements Regarding Reports and Statements.**  Each political committee shall maintain records with respect to the matters required to be reported which shall provide in sufficient detail the necessary information and data from which the filed reports may be verified, explained, clarified, and check for accuracy and completeness.  11 CFR §104.14(b)(1).

B. **Preserving Records and Copies of Reports.**  The treasurer of a political committee must preserve all records and copies of reports for 3 years after the report is filed.  52 U.S.C. §30102(d).

## Facts and Analysis

### A. Facts

During audit fieldwork, the Audit staff reviewed disbursements to verify the accuracy of the information reported on the disclosure reports.

The Audit staff's analysis resulted in the following:

i.   **Disbursements – No Invoices or Copies of Communications Provided ($79,631)**
CMF made two disbursements to a media vendor totaling $79,631[19] for which documentation was insufficient to make a determination of how these disbursements should be reported.  Available documentation included the disbursement database, canceled check copies, and bank statements.  Without a copy of the invoices and the associated communications, the Audit staff was unable to determine how CMF should have reported these disbursements.  The Audit staff requested the invoices, payment documentation, and copies of the communications.

---

[19] This amount is a part of the expenditures not reported which is addressed in Finding 1 – Misstatement of Financial Activity, p. 6.

ii. **Disbursements – Invoices Provided – Incomplete Copies of Communication Provided ($224,768)**
Disbursements totaling $224,768 for television advertisements were paid to one media vendor. The invoices provided by CMF indicated there was an additional television advertisement not provided to the Audit staff. Without a copy of the communication, the Audit staff was unable to verify CMF's reporting of these costs. The Audit staff requested copies of the associated communication.

## B.  Interim Audit Report & Audit Division Recommendation

At the exit conference, the Audit staff presented a schedule of the disbursements for which further records were necessary. The CMF Treasurer did not provide any comments.

The Interim Audit Report recommended that CMF provide the necessary records so the Audit staff could determine the proper reporting for the disbursements totaling $304,399 ($79,631 + $224,768) on the recommended amendments. Such records should have included copies of invoices, along with identification of the associated communication, and if the communication had already been provided, information associating each communication with an invoice(s).

## C.  Committee Response to Interim Audit Report

In response to the Interim Audit Report recommendation, the CMF Treasurer provided the two missing invoices for the disbursements for which no invoices or copies of communications were provided ($79,631). Although the two invoices were provided, the invoices did not indicate what advertisements were run and CMF did not provide a copy of the relative communications. Therefore, the Audit staff still considered the disbursements for which originally no invoices or copies of communications were provided ($79,631) to be insufficiently documented.

Also, the CMF Treasurer provided four television advertisements for the disbursements for which invoices were provided but the Audit staff questioned whether there was an additional television advertisement ($224,768). Of the four television advertisements provided, three advertisements had already been provided to the Audit staff during audit fieldwork. CMF did not provide the fifth advertisement implied in an invoice.[20] The CMF Treasurer stated that the media vendor had confirmed that there was only one Obama-care television advertisement, even though the invoices indicated that there was an Obama-care advertisement and a Repeal Obamacare advertisement. Therefore, according to the CMF Treasurer, there were only four television advertisements, and CMF had provided all four of the advertisements. After review of the television advertisements provided, the Audit staff deemed expenditures totaling $224,768 as operating expenditures, and that the costs for all of the television advertisements have been sufficiently documented.

In addition, the Audit staff moved to this finding expenditures totaling $38,302 that it had previously considered to be apparent independent expenditures (See Finding 3 –

---

[20] See Footnote 8.

Reporting of Apparent Independent Expenditures). The expenditures included web related expenses totaling $28,901, interactive voice response telephone call costs of $9,276, a sample premium charge of $25, and a prospecting-other charge of $100. Although invoices had been provided for these expenditures, the documentation was not sufficient to determine how these expenditures should have been reported.

The Audit staff concluded that CMF has provided documentation for disbursements totaling $224,768 that demonstrated that the disbursements were operating expenditures and should have been reported as operating expenditures. The Audit staff considered the remaining disbursements totaling $117,933 ($79,631 + $38,302) to be insufficiently documented.

**D. Draft Final Audit Report**
The Draft Final Audit Report restated that disbursements totaling $117,933 were insufficiently documented.

**E. Committee Response to the Draft Final Audit Report**
In response to the Draft Final Audit Report, the CMF Treasurer stated that CMF stood by its response to the Interim Audit Report.

**F. Audit Hearing**
CMF did not address this finding during the Audit Hearing.

**Commission Conclusion**
On October 25, 2017, the Commission considered the Audit Division Recommendation Memorandum in which the Audit staff recommended that the Commission adopt a finding that CMF did not provide the necessary records pertaining to disbursements totaling $117,933.

The Commission approved the Audit staff's recommendation.